**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**
**KANSAS CITY DIVISION**

| | | |
|---|---|---|
| **BEAU CHARBONNEAU,** | ) | |
| On Behalf of Himself and All Others | ) | JURY TRIAL DEMANDED |
| Similarly Situated, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case no.: |
| | ) | |
| **MORTGAGE LENDERS OF AMERICA,** | ) | |
| **L.L.C.** | ) | |
| | ) | |
| Defendant. | ) | |

**PLAINTIFF'S ORIGINAL COMPLAINT**
**Collective Action under §216(b) of FLSA and Rule 23 Class Action**

Plaintiff Beau Charbonneau, on behalf of himself and all others similarly situated, by and through counsel, for his Complaint against Defendant Mortgage Lenders of America, L.L.C. ("MLOA" or "Defendant") states as follows:

**PRELIMINARY STATEMENT**

1.   Plaintiff Beau Charbonneau is a former Team Lead and Loan Officer for MLOA. In both roles, he sold mortgages to individual customers primarily over the telephone and through the internet.   MLOA misclassified him and other Team Leads as exempt employees and did not pay them overtime for all hours worked over 40 per week.

2.   When he worked as a Loan Officer, MLOA classified him and other Loan Officers as non-exempt, hourly employees, but MLOA failed to pay Loan Officers for all hours worked including overtime.

3.   MLOA employs over 300 lending professionals and is headquartered in Overland Park, Kansas.

4.     This is a collective action brought by Individual and Representative Plaintiff Beau
       Charbonneau on his own behalf and on behalf of the proposed classes and any
       subclasses. There are two FLSA classes:  (1) Plaintiff and the putative class members
       who are or were employed by MLOA as "Team Leads," "Team Leaders," and in
       similar job titles, and were denied overtime compensation as required by federal wage
       and hour laws, and (2) Plaintiff and the putative class members who are or were
       employed by MLOA as "Loan Officers," "Mortgage Loan Officers," "Entry Level
       Loan Officers," and other mortgage origination employees in similar job titles, and
       were denied minimum wage and/or overtime compensation as required by federal wage
       and hour laws. These employees are similarly situated under the Fair Labor Standards
       Act ("FLSA"), 29 U.S.C. § 216(b).

5.     The FLSA Team Lead Collective is made up of all persons who are, have been, or will
       be employed by Defendant as "Team Leads," "Team Leaders," and in similar job titles
       (collectively as "Team Leads"), within the United States at any time within the last
       three years through the date of final disposition of this action (the "Collective Period").

6.     During the Collective Period, Defendant misclassified Team Leads and failed to pay
       them overtime compensation as required by federal and state law. Plaintiff seeks relief
       for the FLSA Team Lead Collective under the FLSA to remedy Defendant's failure to
       pay all wages due including appropriate overtime compensation, maintain and
       distribute accurate time records, and injunctive relief.

7.     Likewise, the FLSA Loan Officer Collective is made up of all persons who are, have
       been, or will be employed by Defendant as "Loan Officers," "Mortgage Loan
       Officers," "Entry Level Loan Officers," and other mortgage origination employees in

similar job titles within the United States at any time within the Collective Period.

8.    MLOA's policy and practice is to deny earned wages including minimum wage and/or overtime pay to its Loan Officers. In particular, MLOA requires these employees to perform work in excess of forty (40) hours per week but fails to pay them minimum wages and/or overtime for all hours worked.

9.    MLOA's deliberate illegal treatment of its Team Leads and Loan Officers, which denies them minimum wage and/or overtime compensation results in MLOA willfully violating the FLSA.

10.   Individual and Representative Plaintiff Beau Charbonneau, pursuant to Fed. R. Civ. P. 23, also asserts class claims for violations of Kansas common law and Kansas wage laws, K.S.A. §§ 44-301, *et seq.* ("Kansas Wage Payment Act" or "KWPA").

## PARTIES

11.   Plaintiff Beau Charbonneau currently resides in Lenexa, Kansas. During the applicable three-year FLSA statute of limitations, MLOA employed Plaintiff Charbonneau as a Team Lead from approximately early 2014 through November 2016, and then as a Loan Officer from approximately November 2016 through November 2017.  MLOA employed Plaintiff at Defendant's offices located in Overland Park, Kansas. Plaintiff's Consent to become a Party Plaintiff pursuant to 29 U.S.C. § 216(b) is filed as an Exhibit to this Complaint.

12.   Defendant Mortgage Lenders of America, L.L.C. is a Kansas limited liability company with its principal office located at 10975 El Monte St., Overland Park, Kansas 66211. MLOA does business in this judicial district and nationwide thru the internet and other media.

3

## JURISDICTION AND VENUE

13.   This Court has original federal question jurisdiction under 28 U.S.C. § 1331 for the claims brought under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq.*

14.   This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367 since it is part of the same case and controversy as the FLSA claim. The state and federal claims derive from a common nucleus of operative fact, the state law claims will not substantially dominate over the FLSA claim, and exercising supplemental jurisdiction would be in the interests of judicial economy, convenience, fairness, and comity.

15.   The United States District Court for the District of Kansas has personal jurisdiction because MLOA conducts business within this District.

16.   Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b), inasmuch as Defendant has offices, conducts business, and can be found in the District of Kansas, and the causes of action set forth herein have arisen and occurred in part in the District of Kansas. Venue is also proper under 29 U.S.C. §1132(e)(2) because Defendant has substantial business contacts within the state of Kansas.  Finally, venue is also proper in this Court because Plaintiff entered into a Loan Officer Agreement with Defendant which places venue in this Court.

## FACTUAL ALLEGATIONS

17.   MLOA is "one of America's favorite online mortgage lenders."  MLOA "employs over 300 lending professionals . . . " *See https://www.mortgagelendersofamerica.com/about-us*.

18.   At all relevant times, Defendant has been, and continues to be, an "employer" engaged

in the interstate "commerce" and/or in the production of "goods" for "commerce" within the meaning of the FLSA, 29 U.S.C. § 203.

19.     At all relevant times, Defendant has employed, and/or continues to employ, "employee[s]," including Plaintiff and all similarly situated employees.

20.     At all relevant times, Defendant has had gross operating revenues in excess of $500,000.00 which is the threshold test for the "enterprise" requirement under the FLSA.

<u>TEAM LEADS</u>

21.     Defendant employed Plaintiff and other employees as Team Leads.

22.     Defendant classifies Plaintiff and other Team Leads as exempt employees and does not pay them overtime compensation.

23.     The primary duty of Team Leads is to sell mortgages.

24.     Team Leads regularly work in excess of forty (40) hours in a workweek.

25.     Defendant knows and/or should know Team Leads regularly perform after-hours and weekend work, resulting in workweeks in excess of forty (40) hours, because Defendant directs its customers to contact these employees on their personal cell phones and also observes their loan production results.

26.     Defendant failed to pay Plaintiff and the other Team Leads at least $455 per week on a salary basis.

27.     Instead, Defendant paid Plaintiff and the other Team Leads a monthly $1,000 recoverable draw.

28.     In addition, Defendant paid Plaintiff and the other Team Leads a monthly amount equal to $175 times the number of Loan Officers MLOA assigned to the Team Leaders'

team.  MLOA then netted out this monthly amount from the $1,000 recoverable draw.

29.     Accordingly, Defendant failed to pay Plaintiff and the other Team Leads at least $455 per week on a salary basis so Plaintiff and the other Team Leads do not qualify for any "white collar" FLSA exemption.

30.     Defendant also paid Plaintiff and other Team Leads commissions on their sales of mortgage related products.

31.     In addition, Defendant paid Plaintiff and the other Team Leads commissions on the sales of Loan Officers Defendant assigned to the Team Leads' team.

32.     Defendant uniformly applied this payment structure to Plaintiff and other Team Leads.

33.     Furthermore, Plaintiff and other Team Leads did not regularly supervise the work of two or more employees.

34.     Plaintiff and other Team Leads did not exercise discretion and independent judgment as to matters of significance.

35.     Plaintiff and other Team Leads did not perform office work related to MLOA's general business operations or its customers.

36.     Plaintiff and other Team Leads had no advance knowledge in a field of science or learning which required specialized instruction that was required to perform the job.

37.     MLOA does not require Plaintiff and other Team Leads to have a college degree to obtain a Team Lead job.

38.     All Team Leads are similarly situated in that they share common job duties and descriptions, MLOA treated them as exempt employees, and they all performed work without overtime compensation.

39.     Defendant did not keep accurate records of the hours Plaintiff and other Team Leads

worked.

40. Because Defendant did not pay Plaintiff and other Team Leads for all the hours they worked including overtime hours, Defendant's wage statements did not accurately reflect all hours Plaintiff and other Team Leads worked.

41. Defendant did not provide Plaintiff and the other Team Leads with paychecks and/or accurate paychecks.

42. Defendant did not pay Plaintiff and other Team Leads for all of their overtime hours. Accordingly, Defendant did not provide Plaintiff and other Team Leads with all compensation owed to them, including their unpaid overtime, at the time they separated from the company.

<u>LOAN OFFICERS</u>

43. Defendant uniformly classified Plaintiff and other Loan Officers as hourly, non-exempt employees who are entitled to minimum wage and overtime compensation.

44. Defendant paid Plaintiff and other Loan Officers on a draw against commission basis.

45. Under this uniform payment plan, Defendant recaptured any minimum wage paid to Plaintiff and other Loan Officers from their paid commissions.

46. Defendant, however, failed to pay Plaintiff and Loan Officers for all of their work hours including both straight time and overtime.

47. By way of example, after Plaintiff left his Team Lead position in approximately November 2016, Plaintiff began working for Defendant as a Loan Officer.

48. Defendant did not pay Plaintiff for all of his work hours including overtime compensation despite the fact that he routinely worked over eight hours per day and more than 40 hours per week. Defendant also offset any minimum wage payments to

Plaintiff from his commissions.

49. Defendant uniformly applied its payment structure to all Loan Officers.

50. Defendant suffered and permitted Plaintiff and other Loan Officers to work more than forty hours per week without minimum wage and/or overtime compensation for all hours worked. For example, Plaintiff and other Loan Officers regularly worked at least five days a week. They usually began work in the morning. In addition, Plaintiff and other Loan Officers regularly worked into the evenings and on the weekends, causing their hours worked to exceed forty in a week on a regular basis.

51. For example, while a Loan Officer, Plaintiff's schedule fluctuated from day-to-day.  His regular schedule had him working in the office Mondays through Fridays, generally from 10 am until 6 pm.  Additionally, Plaintiff began checking and responding to work emails and calls each morning at approximately 7 am and continuing until he arrived at the office, and he continued taking calls after leaving the office each night until 9 pm and returning emails until 10 pm. Plaintiff also worked nearly every weekend, generally spending 2 ½ hours each weekend day in the office taking leads and also performing additional hours of work sending and receiving business-related emails, texts, and/or phone calls. As such, during this time period, Plaintiff's regular schedule had him working an average of 55 hours per week.

52. Defendant knew Plaintiff and other Loan Officers worked more than forty hours in a week because Defendant expected Plaintiff and Loan Officers to be available to receive phone calls and answer emails – from customers, realtors and from Defendant's management employees – in the evenings and on weekends.

53. As another example, Defendant allowed Plaintiff and the other Loan Officers to

provide their cell phone number on their business cards such that customers contacted them before and after regular office hours.

54.     Further, Defendant required Plaintiff and other Loan Officers to provide their cell phone number on their email signature line such that customers contacted them before and after regular office hours.

55.     In addition, Defendant provided Plaintiff and other Loan Officers with VPN remote computer access such that they could access Defendant's computer system outside of the office.

56.     Finally, Defendant caused one hour to be deducted from Loan Officers' work time Monday through Friday for a meal period regardless of whether or not the Loan Officers actually stopped working for a one-hour meal period.

57.     Defendant uniformly denied Plaintiff and other Loan Officers pay for all of the work they performed including both straight time and overtime compensation.

58.     In reality, Plaintiff and other Loan Officers are and were non-exempt sales employees who are and were entitled to compensation for all time worked including overtime.

59.     Defendant's Loan Officer Compensation Schedule, which is a part of its written Loan Officer Agreement, even contractually promises to pay each of its Loan Officers, including Plaintiff, an agreed hourly rate plus overtime premiums for all hours worked in excess of forty (40) in workweek.

60.     Defendant is in the business of selling mortgage related products.

61.     Plaintiff and the other Loan Officers had the same primary duty of selling loan products.

62.     Plaintiff and other Loan Officers did not customarily and regularly make sales at their

customers' home or place of business.

63. Instead, Plaintiff and other Loan Officers regularly made sales over the phone, via the internet, and/or in person at Defendant's offices.

64. Plaintiff and other Loan Officers did not regularly supervise the work of two or more employees.

65. Plaintiff and other Loan Officers did not exercise discretion and independent judgment as to matters of significance.

66. Plaintiff and other Loan Officers did not perform office work related to MLOA's general business operations or its customers.

67. Plaintiff and other Loan Officers had no advance knowledge in a field of science or learning which required specialized instruction that was required to perform the job.

68. MLOA does not require Plaintiff and other Loan Officers to have a college degree to obtain a Loan Officer job.

69. All Loan Officers are similarly situated in that they share common job duties and descriptions, MLOA treated them as non-exempt employees at relevant times, and they all performed work without payment for minimum wage and/or overtime compensation.

70. Defendant did not keep accurate records of the hours Plaintiff and other Loan Officers worked. Because Defendant did not pay Plaintiff and other Loan Officers for all the hours they worked including overtime hours, Defendant's wage statements did not accurately reflect all hours Plaintiff and other Loan Officers worked.

71. Defendant did not provide Plaintiff and the other Loan Officers with paychecks and/or accurate paychecks.

72.     Defendant did not pay Plaintiff and other Loan Officers for all of their minimum wage, gap time, and/or overtime hours. Accordingly, Defendant did not provide Plaintiffs and other Loan Officers with all compensation owed to them, including their unpaid overtime, at the time they separated from the company.

73.     Defendant is aware of wage and hour laws, as evidenced by the fact that they provide minimum wage and overtime compensation to other employees who are not Team Leads or Loan Officers.

74.     Moreover, it is common industry knowledge that courts and the United States Department of Labor have found mortgage loan officers to be non-exempt entitled to be paid minimum wage and/or overtime compensation for all hours worked.

75.     Defendant's conduct, as set forth in this Complaint, was willful and in bad faith, and has caused significant damages to Plaintiff, and other Loan Officers and Team Leads.

FLSA Team Lead Collective

76.     Plaintiff brings Count I on behalf of himself and other similarly situated employees as authorized under the FLSA, 29 U.S.C. § 216(b). The similarly situated employees are:

> All persons who are, have been, or will be employed by Defendant as "Team Lead" "Team Leaders," and other individuals with similar job titles within the United States at any time during the last three years through the entry of judgment in this case ("FLSA Team Lead Collective").

> Plaintiffs will subclass the FLSA Team Lead Collective as necessary for certification and/or litigation purposes.

77.     Defendant's misclassification of Team Leads as exempt employees and not paying them overtime for work hours over 40 per week is a uniform policy, decision, and/or plan that applies to all Team Leads.

78.     Accordingly, Plaintiff and the FLSA Team Lead Collective were subject to Defendant's policy, decision, and/or plan of failing to pay appropriate overtime compensation.

79.     Defendant's unlawful FLSA conduct has been widespread, repeated, and consistent.

80.     Upon information and belief, Defendant knew that Plaintiff and the FLSA Team Lead Collective performed work that required overtime pay. Defendant suffered and permitted them to work long hours and weekends without the proper pay, Plaintiff and/or those similarly situated complained to Defendant about these practices, and it is common industry knowledge that loan officers are non-exempt employees who must be paid for all hours worked. Defendant operated under a scheme to deprive these employees of overtime compensation by failing to properly compensate them for all hours worked.

81.     Defendant's conduct, as set forth in this Complaint, was willful and in bad faith, and has caused significant damages to Plaintiff and the FLSA Team Lead Collective.

82.     Defendant is liable under the FLSA for failing to properly compensate Plaintiff and the FLSA Team Lead Collective, and as such, notice should be sent to the FLSA Team Lead Collective. There are numerous similarly situated, current and former employees of Defendant who have been denied overtime pay in violation of the FLSA who would benefit from the issuance of a Court supervised notice of the present lawsuit and the opportunity to join. Those similarly situated employees are known to Defendant and are readily identifiable through Defendant's records.

FLSA Loan Officer Collective

83.     Plaintiff brings Count II on behalf of himself and other similarly situated

employees as authorized under the FLSA, 29 U.S.C. § 216(b). The similarly situated employees are:

> All persons who are, have been, or will be employed by Defendant as "Loan Officers," "Mortgage Loan Officers," "Entry Level Loan Officers," and other individuals who originated loan products with similar job titles within the United States at any time during the last three years through the entry of judgment in this case ("FLSA Loan Officer Collective").

Plaintiffs will subclass the FLSA Collective as necessary for certification and/or litigation purposes.

84. Upon information and belief, Defendant suffered and permitted Plaintiff and the FLSA Loan Officer Collective to work more than forty hours per week without payment for all minimum wage and/or overtime compensation.

85. Defendant's failure to pay for all work hours including those hours over 40 per week is a uniform policy, decision, and/or plan that applies to all Loan Officers.

86. Accordingly, Plaintiff and the FLSA Loan Officer Collective were subject to Defendant's policy, decision, and/or plan of failing to pay for all time worked including appropriate overtime compensation.

87. Defendant's unlawful FLSA conduct has been widespread, repeated. and consistent.

88. Upon information and belief, Defendant knew that Plaintiff and the FLSA Loan Officer Collective performed work that required pay for all time worked including overtime. Defendant required them to work long hours and weekends without the proper pay, Plaintiff and/or those similarly situated complained to Defendant about these practices, and it is common industry knowledge that loan officers are non-exempt employees who must be paid for all hours worked. Defendant operated under a scheme to deprive these employees of overtime compensation by failing to properly compensate them for

all hours worked.

89.     Defendant's conduct, as set forth in this Complaint, was willful and in bad faith, and

has caused significant damages to Plaintiff and the FLSA Loan Officer Collective.

90.     Defendant is liable under the FLSA for failing to properly compensate Plaintiff and the

FLSA Loan Officer Collective, and as such, notice should be sent to the FLSA

Loan Officer Collective. There are numerous similarly situated, current and former

employees of Defendant who have been denied overtime pay in violation of the FLSA

who would benefit from the issuance of a Court supervised notice of the present

lawsuit and the opportunity to join. Those similarly situated employees are known to

Defendant and are readily identifiable through Defendant's records.

<u>FLSA Loan Officer Classes</u>

91.     Plaintiff brings Count III, the KWPA claim, as a Rule 23 class action on behalf of

himself and the following persons:

All persons who are, have been, or will be employed by Defendant as "Loan Officers,"
"Mortgage Loan Officers," "Entry Level Loan Officers," and other individuals who
originated loan products with similar job titles within the State of Kansas at any time
during the last three years through the entry of judgment in this case ("KWPA Loan
Officer Class").

92.     Plaintiff brings Counts IV, the Kansas unjust enrichment/quantum meruit claim, as a

Rule 23 class action on behalf of himself and the following persons:

All persons who are, have been, or will be employed by Defendant as "Loan Officers,"
"Mortgage Loan Officers," "Entry Level Loan Officers," and other individuals who
originated loan products with similar job titles within the State of Kansas at any time
during the last three years through the entry of judgment in this case ("Kansas Unjust
Enrichment Loan Officer Class").

93.     Plaintiff brings Counts V, the Kansas breach of contract claim, as a Rule 23 class

action on behalf of himself and the following persons:

All persons who are, have been, or will be employed by Defendant as "Loan Officers,"

"Mortgage Loan Officers," "Entry Level Loan Officers," and other individuals who originated loan products with similar job titles within the State of Kansas at any time during the last five years through the entry of judgment in this case ("Kansas Breach of Contract Loan Officer Class").

94.    Plaintiff's Rule 23 class claims satisfy the numerosity, commonality, typicality, adequacy, and superiority requirements of a class action pursuant to Fed. R. Civ. P. 23.

95.    Plaintiff's Rule 23 state law claims satisfy the numerosity requirement of a class action. The Rule 23 Class Members[1] identified above are so numerous that joinder of all members is impracticable.  Although the precise number of potential class members is unknown, and the facts for calculating that number are presently within the sole control of Defendant, upon information and belief, there are more than one hundred (100) Class members.

96.    Questions of law and fact common to the Rule 23 Class Members predominate over questions that may affect only individual members because Defendant has acted on grounds generally applicable to all Rule 23 Class Members.  Among the questions of law and fact common to Plaintiff and the Rule 23 Class Members are:

   a.   whether Defendant employed the Rule 23 Class Members within the meaning of state common law and wage laws;

   b.   whether Defendant contractually promised to pay Class Members overtime premiums in exchange for all work performed in excess of forty (40) hours in a workweek as a term and condition of their employment;

   c.   whether Defendant unlawfully failed to accurately record and pay for all overtime hours worked by the Rule 23 Class Members;

---

[1] Plaintiff refers to the "KWPA Loan Officer Class," the "Kansas Unjust Enrichment Class" and the "Kansas Breach of Contract Loan Officer Class" collectively as "Rule 23 Class Members."

    d.   whether Defendant has been unjustly enriched;

    e.   whether Defendant breached its contractual obligation to pay Class Members their agreed hourly rate and premium pay for all hours worked, including both straight time and overtime hours; and

    f.   whether Defendant is liable for all damages claimed hereunder, including but not limited to compensatory and statutory damages, interests, costs, and attorneys' fees.

97.   Plaintiff's claims under Kansas state law are typical of those of the classes' in that class members have been employed in the same or similar positions as Plaintiff and were subject to the same or similar unlawful practices as Plaintiff.

98.   The common questions set forth above predominate over any questions affecting only individual persons, and a class action is superior with respect to considerations of consistency, economy, efficiency, fairness, and equity to other available methods for the fair and efficient adjudication of the state law claims.

99.   A class action is appropriate for the fair and efficient adjudication of this controversy. Defendant acted or refused to act on grounds generally applicable to the entire class. The presentation of separate actions by individual class members could create a risk of inconsistent and varying adjudications, establish incompatible standards of conduct for Defendant, and/or substantially impair or impede the ability of the class members to protect their interests.  The damages suffered by individual class members may be relatively small, and the expense and burden of individual litigation make it virtually impossible for the members of the class action to individually seek redress for the wrongs done to them.

100. Plaintiff will fairly and adequately represent the interests of the Rule 23 Class Members, and has retained counsel that is experienced and competent in the fields of wage and hour law and class action litigation.  Plaintiff has no interest that is contrary to or in conflict with those members of this class and collective action.

## COUNT I
**Collective Action under §216(b) of the FAIR LABOR STANDARDS ACT**
**Overtime Claims**
FLSA Team Lead Collective

101. Plaintiff hereby incorporates by reference the foregoing paragraphs of this Complaint into this count.

102. The FLSA requires each covered employer such as Defendant to compensate all non-exempt employees at a rate of not less than one and one-half times the regular rate of pay for work performed in excess of forty hours per work week.

103. Plaintiff and the FLSA Team Lead Collective are entitled to be paid overtime compensation for all hours worked.

104. Defendant, pursuant to their policies and practices, failed and refused to pay overtime premiums to Plaintiff and the FLSA Team Lead Collective for all of their hours worked.

105. Defendant violated the FLSA, 29 U.S.C. § 201 *et seq*. by failing to compensate Plaintiff and the FLSA Team Lead Collective for all overtime compensation.

106. By failing to record, report, and/or preserve accurate records of hours worked by Plaintiff and the FLSA Team Lead Collective, Defendant failed to make, keep, and preserve records with respect to each of their employees sufficient to determine their wages, hours, and other conditions and practice of employment, in violation of the FLSA, 29 U.S.C. § 201 *et seq*.

107.    The foregoing conduct, as alleged herein, constitutes a willful violation of the FLSA within the meaning of 29 U.S.C. § 255(a).

108.    Plaintiff, on behalf of himself and the FLSA Team Lead Collective, seeks damages in the amount of all respective unpaid overtime compensations at a rate of one and one-half times the regular rate of pay for work performed in excess of forty hours in a work week, plus liquidated damages as provided by the FLSA, 29 U.S.C. § 216(b), interest, and such other legal and equitable relief as the Court deems just and proper.

109.    Plaintiff, on behalf of himself and the FLSA Team Lead Collectives seek recovery of all attorneys' fees, costs, and expenses of this action, to be paid by Defendant, as provided by the FLSA, 29 U.S.C. § 216(b).

<u>**COUNT II**</u>
**Collective Action under §216(b) of the FAIR LABOR STANDARDS
Act Minimum Wage and Overtime Claims**
FLSA Loan Officer Collective

110.    Plaintiff hereby incorporates by reference the foregoing paragraphs of this Complaint into this count.

111.    The FLSA requires each covered employer such as Defendant to compensate all non-exempt employees at a rate of not less than the applicable minimum wage for all hours worked up to forty hours per week and one and one-half times the regular rate of pay for work performed in excess of forty hours per work week.

112.    Plaintiff and the FLSA Loan Officer Collective are entitled to be paid minimum wage and/or overtime compensation for all hours worked.

113.    Defendant, pursuant to their policies and practices, failed and refused to pay minimum wage and/or overtime premiums to Plaintiff and the FLSA Loan Officer Collective for all of their hours worked.

114.    Defendant violated the FLSA, 29 U.S.C. § 201 *et seq.* by failing to compensate Plaintiff and the FLSA Loan Officer Collective for all minimum wage and/or overtime compensation.

115.    By failing to record, report, and/or preserve accurate records of hours worked by Plaintiff and the FLSA Loan Officer Collective, Defendant failed to make, keep, and preserve records with respect to each of their employees sufficient to determine their wages, hours, and other conditions and practice of employment, in violation of the FLSA, 29 U.S.C. § 201 *et seq.*

116.    The foregoing conduct, as alleged herein, constitutes a willful violation of the FLSA within the meaning of 29 U.S.C. § 255(a).

117.    Plaintiff, on behalf of himself and the FLSA Loan Officer Collective, seeks damages in the amount of all respective unpaid minimum wage and/or overtime compensations at a rate of one and one-half times the regular rate of pay for work performed in excess of forty hours in a work week, plus liquidated damages as provided by the FLSA, 29 U.S.C. § 216(b), interest, and such other legal and equitable relief as the Court deems just and proper.

118.    Plaintiff, on behalf of himself and the FLSA Loan Officer Collectives seek recovery of all attorneys' fees, costs, and expenses of this action, to be paid by Defendant, as provided by the FLSA, 29 U.S.C. § 216(b).

**COUNT III**
**Fed.R.Civ.P. 23 Class Action For Violation Of The KWPA**
KWPA Loan Officer Class

119.    Plaintiff, on behalf of himself and the KWPA Class Members, reasserts the allegations set forth in the above paragraphs.

120.   At all material times hereto, Plaintiff and the KWPA Class Members were employed by Defendant, who is located within the State of Kansas, and have been entitled to the rights, protections, and benefits provided under the Kansas Wage Payment Act.

121.   Pursuant to K.S.A. §§ 44-301 *et seq.*, Plaintiff brings Count III individually and on behalf of the KWPA Loan Officer Class Members for Defendant's unlawful withholding of straight time and overtime wages in violation of Kansas wage laws, K.S.A. §§ 44-301, *et seq.*, specifically K.S.A. § 44-314.

122.   The state law claim, if certified for class-wide treatment, may be pursued by all similarly situated persons who do not opt out of the Class.

123.   Defendant is subject to the pay requirements of K.S.A. § 44-314 because Defendant is an employer in the state of Kansas under K.S.A. §§ 44-313(a) and 44-323, and Plaintiff and the KWPA Class Members are employees under K.S.A. § 44-313(b).

124.   Pursuant to K.S.A § 44-314, Defendant is required to pay Plaintiff and the KWPA Loan Officer Class Members all wages due, including straight time and overtime wages, at the next regularly designated payday to be scheduled at least once each calendar month.

125.   By failing to accurately record, maintain records of, and pay for Plaintiff's and KWPA Class Members' actual hours worked, Defendant willfully reduced the total number of hours on Plaintiff's and KWPA Loan Officer Class Members' paychecks.   These unlawful policies and practices resulted in these Kansas employers' systematic, willful withholding of wages in violation of K.S.A. § 44-314.

126.   Defendant was obligated by the Fair Labor Standards Act, its own contractual promises, and Kansas common law to pay these wages due, but Defendant unlawfully

withheld these wages, thereby violating the KWPA.

127.   Defendant is liable to Plaintiff and the KWPA Loan Officer Class Members pursuant to K.S.A. §§ 44-315 and 44-323 for unpaid wages including straight time and overtime compensation, an additional equal amount as a penalty, plus interest, reasonable attorneys' fees, and costs of this action.

WHEREFORE, Plaintiff and all similarly situated employees demand judgment against Defendant and pray this Court:

a.   Certify the state law claim set forth in Count III above as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure;

b.   Designate Plaintiff Beau Charbonneau as the Class Representative of the KWPA Loan Officer Class and undersigned counsel as the attorneys representing the KWPA Loan Officer Class;

c.   Award Plaintiff and all similarly situated employees compensatory damages and up to an equal amount as a penalty, plus interest pursuant to K.S.A. §§ 44-315 and 44-323;

d.   Award Plaintiff and all similarly situated employees prejudgment and post-judgment interest as provided by law

e.   Award Plaintiff and all similarly situated employees attorneys' fees and costs; and

f.   Award Plaintiff and all similarly situated employees such other relief as this Court deems fair and equitable.

## COUNT IV
### Fed.R.Civ.P. 23 Class Action for Unjust Enrichment/Quantum Meruit
Kansas Unjust Enrichment Loan Officer Class

128.   Plaintiff Beau Charbonneau, on behalf of himself and the Kansas Unjust Enrichment

Loan Officer Class, reasserts the allegations set forth in the above paragraphs.

129.   Plaintiff and the Kansas Unjust Enrichment Loan Officer Class conferred a benefit upon Defendant by working "off-the-clock" on their behalf without compensation.

130.   Defendant was aware that it was receiving the benefit of this unpaid work at the time the work was performed and accepted and retained that benefit without paying fair compensation for the same.

131.   Defendant's acceptance and retention of the benefit of the Kansas Unjust Enrichment Loan Officer Class Members' unpaid labor was inequitable and resulted in Defendant being unjustly enriched.

WHEREFORE, Plaintiff and the Kansas Unjust Enrichment Loan Officer Class demand judgment against Defendant and pray this Court:

a.   Certify the state law claim set forth in Count IV above as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure;

b.   Designate Plaintiff Beau Charbonneau as the Representative Plaintiff of the Kansas Unjust Enrichment Class Members and undersigned counsel as the attorneys representing the Kansas Unjust Enrichment Class Members;

c.   Order Defendant to disgorge the value of its ill-gained benefits to Plaintiff and all similarly situated employees;

d.   Award Plaintiff and all similarly situated employees prejudgment and post-judgment interest as provided by law; and

e.   Award Plaintiff and all similarly situated employees such other relief as this Court deems fair and equitable.

## COUNT V
### Fed.R.Civ.P. 23 Class Action for Breach of Contract
Kansas Breach of Contract Loan Officer Class

132.   Plaintiff Beau Charbonneau, on behalf of himself and the Kansas Breach of Contract Loan Officer Class, reasserts the allegations set forth in the above paragraphs.

133.   An employment compensation agreement existed between the Plaintiff and Defendant and a similar employment compensation agreement existed between each Kansas Breach of Contract Loan Officer Class member and Defendant, the terms and conditions of which included a requirement for employees to perform services for Defendant and an agreement by Defendant to pay Plaintiff and the other Kansas Breach of Contract Loan Officer Class members at an agreed hourly rate for all work performed, plus overtime premiums for all overtime work.

134.   The agreements were made between parties capable of contracting and contained mutual obligations and valid consideration.   Plaintiff and the Kansas Breach of Contract Loan Officer Class performed all conditions precedent, if any, required of them under their employment agreements.

135.   Defendant failed and refused to perform its obligations in accordance with the terms and conditions of the employment agreements by failing to compensate Plaintiff and the Kansas Breach of Contract Loan Officer Class for all time worked, including both straight and overtime hours.

136.   Plaintiff and the Kansas Breach of Contract Class Members were thereby damaged in an amount to be determined at trial.

WHEREFORE, Plaintiff and the Kansas Breach of Contract Loan Officer Class demand judgment against Defendant and pray this Court:

a.  Certify the state law claim set forth in Count V above as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure;

b.  Designate Plaintiff Beau Charbonneau as the Representative Plaintiff of the Kansas Breach of Contract Loan Officer Class and undersigned counsel as the attorneys representing the Kansas Breach of Contract Loan Officer Class;

c.  Order Defendant to pay all promised wages to Plaintiff and all similarly situated employees;

d.  Award Plaintiff and all similarly situated employees attorneys fees, expenses, prejudgment and post-judgment interest as provided by law; and

e.  Award Plaintiff and all similarly situated employees such other relief as this Court deems fair and equitable.

### Demand for Jury Trial

Plaintiff, individually and behalf of all other similarly situated, hereby demands a jury trial on all causes of action and claims with respect to which they have a right to jury trial pursuant to Federal Rule of Civil Procedure 38(b).

### DESIGNATION OF PLACE OF TRIAL

Plaintiff hereby designates the United States District Court of the District of Kansas at Kansas City as the place of trial.

Dated: February 5, 2018

Respectfully submitted,

**DAVIS GEORGE MOOK LLC**

By: /s/ *Tracey F. George*
    Brett A. Davis, Mo. Bar 43299
    Tracey F. George, Mo. Bar 52361

24

1600 Genessee, Ste. 328
Kansas City, MO 64102
Tel. (816) 569-2629
Fax (816) 447-3939
Email: brett@dgmlawyers.com
Email: tracey@dgmlawyers.com

**ATTORNEYS FOR PLAINTIFF**