## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

BEAU CHARBONNEAU,                           )
on behalf of himself and all others         )
similarly situated,                          )
                                             )
                        Plaintiff,           )
                                             )
v.                                           )
                                             )         Case No. 18-2062-CM-KGS
                                             )
MORTGAGE LENDERS OF AMERICA                  )
L.L.C.,                                       )
                                             )
                        Defendant.           )
_____)

## MEMORANDUM AND ORDER

Plaintiff Beau Charbonneau brings this putative collective action under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq.*, claiming that his former employer—defendant Mortgage Lenders of America L.L.C.—misclassified a certain employment position ("team lead") as an exempt position. Plaintiff also claims that defendant requires non-exempt employees (specifically, loan officers) to perform work off the clock, without pay. Plaintiff has worked for defendant in both capacities—as a team lead and as a loan officer. This matter is before the court on plaintiff's Motion for Conditional Class Certification of Class Claims Under § 216(b) of the FLSA (Doc. 36). Plaintiff seeks conditional certification of two separate FLSA classes: team leads and loan officers. For the following reasons, the court grants the motion.

### I. Legal Standards

Conditional certification of a class under the FLSA requires compliance with the FLSA collective action mechanism, which states: "An action to recover the liability prescribed in either of the preceding sentences may be maintained . . . by any one or more employees for and in behalf of himself

or themselves and other employees similarly situated."  29 U.S.C. § 216(b).  Whether an employee

may maintain a § 216(b) collective action, then, depends on whether he or she is "similarly situated" to

other members of the putative class.  Although § 216(b) does not define the term "similarly situated,"

the Tenth Circuit has endorsed the ad hoc method of determination.  *Thiessen v. Gen. Elec. Capital*

*Corp.*, 267 F.3d 1095, 1105 (10th Cir. 2001).

 Under the ad hoc method, "a court typically makes an initial 'notice stage' determination of

whether plaintiffs are 'similarly situated.'"  *Id.* at 1102 (citation omitted).  This initial determination

"'require[s] nothing more than substantial allegations that the putative class members were together the

victims of a single decision, policy, or plan.'"  *Id.* (citation omitted); *see also Hadley v. Wintrust*

*Mortg. Corp.*, No. 10-2574-EFM, 2011 WL 4600623, at *2 (D. Kan. Oct. 3, 2011); *Shockey v.*

*Huhtamaki, Inc.*, 730 F. Supp. 2d 1298, 1300 (D. Kan. 2010).  This standard is a lenient one.  *Williams*

*v. Sprint/United Mgmt. Co.*, 222 F.R.D. 483, 485 (D. Kan. 2004).

 "Because the court has minimal evidence, [the notice stage] determination . . . typically results

in 'conditional certification' of a representative class."  *Mooney v. Aramco Servs. Co.*, 54 F.3d 1207,

1214 (5th Cir. 1995).  The "similarly situated" standard is considerably less stringent than Rule

23(b)(3) class action standards.  *Grayson v. K-Mart Corp.*, 79 F.3d 1086, 1096 (11th Cir. 1996).

Ordinarily, the court makes the determination fairly early in the litigation, before the parties complete

discovery.  *Brown v. Money Tree Mortg., Inc.*, 222 F.R.D. 676, 679 (D. Kan. 2004).  And in making

the determination, the court does not reach the merits of the plaintiff's claims.  *Renfro v. Spartan*

*Computer Servs., Inc.*, 243 F.R.D. 431, 435 (D. Kan. 2007); *Hoffman v. Sbarro, Inc.*, 982 F. Supp. 249,

262 (S.D.N.Y. 1997) (citation omitted).  But a plaintiff must provide more than speculative allegations.

*Stubbs v. McDonald's Corp.*, 227 F.R.D. 661, 666 (D. Kan. 2004).  And "conclusory and general

allegations" are insufficient.  *Blancarte v. Provider Plus, Inc.*, No. 11-2567-JAR, 2012 WL 4442641, at *4 (D. Kan. Sept. 26, 2012).

The court must therefore determine whether plaintiff has offered substantial allegations that members of each putative class are similarly situated.

## II. Plaintiff's Allegations

### A. *Misclassification of Team Leads as Exempt*

Defendant classifies its team leads as exempt, thereby denying them overtime compensation. Plaintiff claims that the primary duty of team leads is to sell mortgages.  They regularly work over forty hours a week.  Defendant is aware of team leads' excess hours because defendant directs its customers to contact team leads on their personal cell phones and sees the team leads' loan production results.

Defendant does not pay team leads at least $455 per week on a salary basis.  Instead, team leads receive a $1,000 recoverable monthly draw.  Team leads receive a monthly amount equal to $175 times the number of members on each lead's team.  Defendant then nets out the monthly amount from the $1,000 recoverable draw.  Because of this pay structure, plaintiff argues, team leads do not qualify for a white collar FLSA exemption.

Team leads also get commissions from their own sales and the sales of the loan officers assigned to their teams.  But defendant withholds certain fees from the team leads' wages.  Plaintiff claims that this compensation structure is uniformly applied.

According to plaintiff, team leads do not regularly supervise and manage the work of their team members.  They offer encouragement, assistance, and support, but they primarily spend their time selling loans.  Team leads do not exercise discretion and independent judgment on significant matters. They implement and follow federal guidelines and defendant's policies and procedures.

Team leads share common job duties and descriptions.  Defendant has presented evidence that the duties are different than what plaintiff represents, but defendant's evidence still suggests that team leads share common duties—whatever those duties ultimately are shown to be.  As noted above, team leads are classified as exempt employees and perform work without overtime compensation.  And defendant does not maintain accurate records of team leads' hours or require them to report all overtime.

### B.  Failure to Pay Loan Officers for All Hours Worked

The primary duty of loan officers is to sell mortgage loans.  Loan officers regularly work over forty hours a week, and defendant is aware of these excess hours because defendant directs its customers to contact loan officers on their personal cell phones and sees the loan production results.

Defendant classifies loan officers as hourly, non-exempt employees.  Loan officers are paid under the same or similar compensation agreements.  These agreements require a minimum wage and overtime payments and use a draw against commission.  Defendant recaptures any minimum wage paid to loan officers from their paid commissions.

Defendant does not allow its loan officers to report all of their after-hours work, although loan officers typically check and respond to work emails and calls early in the morning, into the evening, and on weekends.  Defendant knows about these practices because it allows loan officers to put their cell phone numbers on their business cards and requires them to include their number on email.  Defendant instructs loan officers during training how to set their cell phones to receive work emails outside the office.

Defendant has also deducted meal periods from loan officers' work time—regardless of whether the loan officers stopped working to eat.  And defendant also deducts fees from loan officers' wages.

### III. Analysis

The issue before the court is whether plaintiff has met his light burden of showing that members of each putative class are similarly situated.  Plaintiff asks the court to conditionally certify two collective classes:

(1)     All persons who are, have been, or will be employed by Defendant as "Team Leads," "Team Leaders," and other individuals with similar job titles within the United States at any time during the last three years through the entry of judgment in this case ("FLSA Team Lead Collective"), and

(2)     All persons who are, have been, or will be employed by Defendant as "Loan Officers," "Mortgage Loan Officers," "Entry Level Loan Officers," and other individuals who originated loan products with similar job titles within the United States at any time during the last three years through the entry of judgment in this case ("FLSA Loan Officer Collective").

For each of these groups, the court has allegations and evidence before it that the putative plaintiffs' job duties and descriptions are similar, as well as the policies impacting their pay.  The putative plaintiffs work at the same location.  Plaintiff has also presented allegations and evidence showing that members of the putative class regularly work early in the morning, in the evenings, and on weekends and that defendant is aware of these practices (and even expects them to do so), but does not pay them for all—and, in some cases, any—of the extra hours.  That is all that is required in the notice stage. *See Renfro*, 243 F.R.D. at 433–34 ("Generally, where putative class members are employed in similar positions, the allegation that defendants engaged in a pattern or practice of not paying overtime is sufficient to allege that plaintiffs were together the victims of a single decision, policy or plan."); *Barnwell v. Corr. Corp. of Am.*, No. 08-2151-JWL, 2008 WL 5157476, at *4 (D.

Kan. 2008) (granting conditional certification in an off-the-clock case); *Leuthold v. Destination Am., Inc.*, 224 F.R.D. 462, 465 (N.D. Cal. 2004) (conditionally certifying class despite different job duties and terms of employment).  Individual differences in damages are not to be considered when ruling on conditional certification and "will not defeat [conditional] class certification . . . unless that issue creates a conflict which goes to the heart of the lawsuit."  *Brown*, 222 F.R.D. at 682; *see also Reab v. Elec. Arts, Inc.*, 214 F.R.D. 623, 628 (D. Colo. 2002) (same).

Many of defendant's arguments focus on the potential variations in plaintiff's claims.  But it is only during the second stage analysis that a court reviews "the disparate factual and employment settings of the individual plaintiffs; the various defenses available to defendant which appear to be individual to each plaintiff; fairness and procedural considerations; and whether plaintiffs made any required filings before instituting suit."  *Brown*, 222 F.R.D. at 679.  Any manageability issues will be addressed at that time.  *See*, *e.g., Thiebes v. Wal-Mart Stores, Inc.*, 2002 WL 479840, at *1 (D. Or. Jan. 9, 2002) (bifurcating trial and determining first whether Wal-Mart had a pattern or practice of not paying overtime); *Gjurovich v. Emmanuel's Marketplace, Inc.*, 282 F. Supp. 2d 91, 96 n.1 (S.D.N.Y. 2003) (noting that if discovery revealed that the meat cutter was not similarly situated with other employees within different sections of the grocery store, the court may "divide the class into subgroups, if appropriate."); *see also Vaszlavik v. Storage Tech. Corp.*, 175 F.R.D. 672, 681 (D. Colo. 1997) ("[I]f plaintiffs prevail in the liability phase, I will revisit whether the class should be decertified for the remedial phase or whether appropriate subclasses can be crafted.").

Defendant also claims that plaintiff Charbonneau is not an adequate representative for either putative class.  Adequate representation is a requirement for Rule 23 class certification, but it is not expressly required for FLSA conditional certification.  *See Brown*, 222 F.R.D. at 682.  The adequacy of a class representative is not necessarily irrelevant, however.  *Id.*  Defendant claims that plaintiff

Charbonneau has a conflict of interest with other putative class members.  Because plaintiff Charbonneau served both as a team lead and as a loan officer at different times, defendant claims that plaintiff Charbonneau edited loan officers' time entries (i.e., for meal periods) when he served as team lead.  These time entry edits are part of what plaintiff Charbonneau claims to be actionable conduct.  In addition, defendant claims that certain current and former loan officers have accused plaintiff Charbonneau of inappropriate conduct, which would further cause a conflict of interest.

The court is not persuaded by defendant's arguments.  Plaintiff Charbonneau stated in a declaration that defendant was the cause of meal periods being deducted from loan officers' paychecks. In other words, if he made the changes, those changes were at the direction of defendant.  The court also does not find the other potential conflicts relevant—at least at this stage of conditional certification.  *See McGlon v. Sprint Corp.*, No. 16-2099-JAR, 2016 WL 7103949, at *7 (D. Kan. Dec. 6, 2016) (noting that the Rule 23 requirements are more stringent than those of the FLSA).

The court concludes that the above-cited evidence is sufficient to conditionally certify a class. The court notes that several courts (including this court) have found that conditional certification of loan officers (or employees with similar titles) as a class is appropriate.  *See, e.g., McCaffrey v. Mortg. Sources Corp.*, No. 08-2660-KHV, 2009 WL 2778085, at *4 (D. Kan. Aug. 27, 2009); *Gieseke v. First Horizon Home Loan Corp.*, 408 F. Supp. 2d 1164, 1168–69 (D. Kan. 2006); *Geer v. Challenge Fin. Investors Corp.*, 2005 WL 2648054, at *2–*5 (D. Kan. Oct. 17, 2005).  In the event that discovery reveals that this is not a proper case for collective action, defendant may move to decertify the class at the close of discovery.

## IV. Notice

In light of the court's decision, notice must be sent to potential class members.  Defendant objects on several bases to the process plaintiff proposes: (1) plaintiff asks for defendant to compile

and produce employee information within ten days but defendant asks for thirty; (2) plaintiff requests a ninety-day opt-in period but defendant seeks sixty; (3) plaintiff requests phone numbers to text putative collective action members but defendant maintains that email and U.S. mail is sufficient; (4) plaintiff asks to post the notice in the workplace, but defendant claims it is unnecessary; and (5) plaintiff wants to send a thirty-day reminder notice, but again defendant believes it unnecessary.

First, the court grants defendant's request for thirty days to compile and produce information. This time frame is reasonable given that some putative class members no longer work for defendant. Second, a sixty-day opt-in period is sufficient.  Plaintiff has not demonstrated that a longer period is necessary.  Third, at this time, defendant need not provide telephone numbers for plaintiff to text putative class members.  The court believes that adding this method of contact is unnecessary and duplicative when plaintiff will already be able to contact the putative class members by email (personal or work email, if personal is not available) and mail.  Fourth, plaintiff also has not shown why it is necessary to post in the workplace.  Posting will not reach a wider audience than mailing will, and the addresses for defendant's current employees are presumed to be accurate.  *See Koehler v. Freightquote.com*, 93 F. Supp. 3d 1257, 1266 (D. Kan. 2015).  Finally, a thirty-day reminder is unnecessary, at least until and unless plaintiff shows that the original notice was ineffective.  The purpose of notice is to make putative class members aware of the lawsuit and their right to participate—not to encourage them to participate.  *See Wolfram v. PHH Corp.*, No. 11:12-cv-599, 2012 WL 6676778, at *4 (S.D. Ohio Dec. 21, 2012); *Smallwood v. Ill. Bell Tel. Co.*, 710 F. Supp. 2d 746, 753–54 (N.D. Ill. 2010).  The court does not believe that a reminder notice is warranted at this time.

**IT IS THEREFORE ORDERED** that Plaintiff's Motion for Conditional Class Certification Under § 216(b) of the FLSA (Doc. 36) is granted.

**IT IS FURTHER ORDERED** that plaintiff shall modify the proposed notice as specified above before distributing it.

Dated this 6th day of December, 2018, at Kansas City, Kansas.

<u>**s/ Carlos Murguia**</u>
**CARLOS MURGUIA**
**United States District Judge**