# EXHIBIT 1

# ORIGINATOR COMPENSATION AGREEMENT

THIS AGREEMENT is made and entered into this **7th** day of January, 2008 by and between MORTGAGE LENDERS OF AMERICA, LLC., a Kansas Limited Liability Company (Hereinafter referred to as ("MLOA"), and **Beau Charbonneau**, (Hereinafter referred to as "Originator").

In consideration of the mutual covenants, agreements, conditions, and promised contained herein, the parties hereto agree as follows:

1. GENERAL TERMS AND POLICY

    1.1   Originator shall be a commissioned employee of MLOA. Originator shall solicit business and loans exclusively for the benefit of MLOA and shall not accept compensation, fees, awards, benefits or consideration from any other source without the express written approval of MLOA.

    1.2   All loan applications shall be completed by and transmitted to MLOA by Originator in accordance with the policies and guidelines established by MLOA.

    1.3   MLOA at its sole discretion shall identify MLOA approved computer hardware and software systems. Originator shall not use any computer system other than the MLOA approved computer system for loan origination, disclosures and the exporting of loan files without prior written approval from MLOA.

    1.4   All loans shall be processed by, and according to, the policies and guidelines established by MLOA. MLOA may at its sole discretion change said policies and guidelines from time to time. The authority to accept, reject, approve, commit, and/or assign any loan rests solely with MLOA.

    1.5   Originator shall obtain written approval from the management of MLOA prior to transferring any file outside MLOA.

    1.6   Originator shall abide by all regulations required whether federal, state or local, including but not limited to the Equal Credit Opportunity Act, the Federal Home Loan Bank Board's Non-discrimination regulations, Real Estate Settlement Procedures Act and all applicable FHA, VA, GNMA, and FHLMC regulations.

2. COMPENSATION

    2.1 The commission earned on funded loans shall be based upon the schedule outlined in Exhibit "A". Originator understands that the Daily Price Sheet shall be modified from time to time by MLOA or the applicable investor in its sole discretion.

    2.2 All compensation shall be subject to the standard withholding requirements such as federal state and local income tax, social security, and major medical contributions.

    2.3 Commissions shall be payable monthly on the 15th of the month for loans that fund during the previous month. See exhibit "A" for more details.

    2.4 An hourly wage equal to minimum wage for the applicable period shall be paid twice monthly (15th and last day of month). See exhibit "A" for more details.

3. TERMINATION OF EMPLOYMENT

    3.1   Commissions shall be paid on loans originated by Originator that fund prior to the termination date. Commissions shall be paid after the deduction of any amounts due MLOA and deductions for any un-returned company owned equipment. No commissions shall be paid on any loans, which fund after termination. This paragraph may be amended on a case-by-case written agreement between MLOA and Originator

3.2 All equipment provided and owned by MLOA, including equipment leased from MLOA, will be returned to MLOA at termination of employment.

3.3 In the event Originator is terminated for cause (fraud, violation of the terms of this agreement, disregard for company policies, etc.), all forthcoming commissions shall be forfeited.

3.4 MLOA shall hold back an amount equal to $1500 from the Originators final commission check to cover lagging expenses. MLOA shall not hold said funds for more than 90 days following the date of resignation/termination. Originator hereby authorizes MLOA to deduct any amounts from Originators final check to cover any and all outstanding expenses (advances, draws, hourly wages paid, credit report charges, appraisal bills, etc).

3.5 In the event that there are outstanding expenses, advances, draws, hourly wages paid or carryover expenses upon termination that exceed those covered under 3.4 above, Originator agrees to reimburse MLOA for said expenses within 10 days and to indemnify and hold MLOA harmless from any related claims.

3.6.1 All non-public information regarding MLOA shall be treated with confidentiality by Originator and not disclosed by Originator to third parties (other than as necessary in the ordinary course of business) without the prior written consent of Management. The confidentiality obligations of the Originator shall survive any termination of the Originator.

3.6.2 Upon termination Originator shall not solicit, contact or communicate directly or indirectly with any customer, lead or contact of MLOA without written consent of MLOA Management.

3.7 Originator agrees that, during such time as such Originator is an Originator of MLOA, such Originator will not, directly or indirectly, without the express written consent of MLOA:

A: Own or have an interest in or act as an officer, director, partner, principal, employee, agent, representative, consultant, member, or independent contractor of or have an equity involvement with or a committed future equity involvement with another company whose business is or includes the origination and/or funding of residential mortgage loans or in any way assist in any business which may be a competitor of MLOA, Or

B: Entice or induce or in any manner influence any person who is or shall be in the employ or service of MLOA to leave such employ or service for the purpose of engaging in a business which may be a competitor of MLOA.

3.8 Originator agrees that, for a period of one (1) year following the termination of such Originators employment with MLOA, such Originator will not, directly or indirectly, without the express written consent of a MLOA, entice or induce, or in any manner influence, any person who is or shall be in the employ or service of MLOA to leave such employ or service for the purpose of engaging in a business which may be a competitor of MLOA.

3.9 Equitable Remedies. Originator has carefully read and considered the provisions of Sections 3.5, 3.6 and 3.7 of this Agreement and, having done so, agrees that the restrictions set forth therein (including, but not limited to, the time period of restriction and geographic areas of restrictions) are fair and reasonable, and are reasonably required for the protection of the interests of MLOA. Originator represents that his experience, capabilities, and personal assets are such that this Agreement does not deprive him from either earning a livelihood in the unrestricted business activities which remain open to him or from otherwise adequately and appropriately supporting himself and his family. In the event that any of the provisions of Sections 3.5, 3.6 and 3.7 shall be held to be invalid or unenforceable, the remaining provisions shall nevertheless continue to be valid and enforceable as though the invalid or unenforceable parts had not been included therein. In the event that any provisions of Sections 3.5, 3.6 and 3.7 relating to time period and/or areas of restriction shall be declared by a court of competent jurisdiction to exceed the maximum time periods or areas such court deems reasonable and enforceable, said time periods and/or areas of restriction shall be deemed to become and thereafter be the maximum period of time and/or areas which such

court deems reasonable and enforceable. Originator acknowledges and agrees that a breach by him of the provisions of this Agreement will cause MLOA irreparable injury and damage. Originator, therefore, expressly agrees that MLOA shall be entitled to injunctive or other equitable relief to prevent a breach of this Agreement, or any part thereof, by Originator, or by Originator's partners, agents, representatives, servants, employers, employees, and/or any and all persons directly or indirectly acting for or with him, and to secure its enforcement, in addition to any other remedy to which MLOA might be entitled. Originator and MLOA expressly waive the posting of any bond or surety required prior to the issuance of an injunction hereunder. However, in the event that the court refuses to honor the waiver of bond hereunder, Originator and MLOA hereby expressly agree to a bond in the amount of $1,000.00. Any and all of MLOA's remedies for the breach of this Agreement shall be cumulative, and the pursuit of one remedy shall not be deemed to exclude any and all other remedies with respect to the subject matter hereof.

4. ADMINISTRATION OF AGREEMENT

   4.1 MLOA shall interpret and construe all terms and provisions of this agreement.

   4.2 MLOA shall adopt rules and regulations considered necessary or desirable to administer and carry out the purposes of this Agreement which rules and regulations Originator agrees to follow.

   4.3 MLOA shall make amendments or modifications to this Agreement upon 24 hours notice without Originators consent.

5. VENUE

   5.1 This Agreement shall be governed by and construed in accordance with the laws of the State of Kansas without regard for any conflict of laws rules or policies. Any action or proceeding seeking to enforce any term or provision of this Agreement or based on any right arising out of or relating to the Agreement must be brought in the Circuit Court of Johnson County, Kansas or, alternatively, in the United States District Court for the Eastern District of Kansas to the exclusion of any other jurisdiction and venue. The parties hereto consent to the jurisdiction and venue of such courts. In the event that any legal action is brought in any other court or jurisdiction, such action shall be dismissed or transferred to the Circuit Court of Johnson County, Kansas or the United States District Court for the Eastern District of Kansas. In the event MLOA brings suit against Originator as a result of this agreement, Originator agrees to pay to MLOA all costs MLOA incurs in connection with that litigation, including, but not limited, to reasonable attorneys fees.

   5.2 In the event that any term or provision of this Agreement is determined to be unenforceable by a court of competent jurisdiction, then such determination shall not affect the remaining terms and provisions which shall remain in full force and effect.

This Agreement contains the entire agreement and understanding by and between MLOA and Originator with respect to the employment referred to herein and no representations, promises, agreements or understandings, written or oral, not herein contained shall be of any force or effect. No change or modification hereof shall be valid or binding unless the same is in writing and signed by the party intending to be bound. No waiver of any provision of this Agreement shall be valid unless said waiver is sought to be enforced; moreover, no valid waiver of any provision of this Agreement at any time shall be deemed a waiver of any other provision of this Agreement at such time or it will be deemed to be a valid waiver of such provision at any other time.

IN WITNESS WHEREOF, the parties hereto have executed this Agreements of the date and year first above written.

_____ (Originator)    MORTGAGE LENDERS OF AMERICA
ORIGINATOR                                    BY: _____ (MLOA)

## Exhibit A

## Commission Schedule

**Fee Income**: Fee Income shall be defined as the fees generated by the spread between the price and fees charged and collected from the borrower (as reflected on the HUD-1) and the price and fees received from/paid to the subject investor subject to all required margin/fees outlined below.

### Minimum Wage/Overtime:

Retail Loan Officers will be paid minimum wage of $5.85 per hour for hours worked, and will be eligible for overtime pay. Loan Officers will use PC Timeclock to track their hours. It is the Loan Officers responsibility to let the accounting manager know of any missed punches. On the 15th and the end of the month loan officers will be paid for the hours worked during the applicable payroll cycles.

Any overtime worked during the month will be added to the check received on the 15th. The overtime will be calculated using actual commission earnings for the prior month. If no commissions were earned during the month the rate will be $8.775/hr ($5.85 X 1.5).

**Commissions will be paid out on the 15th of each month. Any hourly wages paid during prior months will be deducted from commission earnings.**

Below is an example of payout on check for 15th:

| | |
|---|---|
| Total Commissions | $2000.00 |
| Less Monthly Wages Paid (173 Hrs. @ $5.85) | (1012.05) |
| Less Overtime Paid | (28.90)  (2000/173hr =11.5607/2=5.78035*5) |
| Gross Commissions | 959.05 |

### Commissions

| GFI (above MLA margin & fees) | Split to LO |
|---|---|
| 0-7,499 | 30% |
| 7,500-14,999 | 50% |
| 15,000-19,999 | 55% |
| 20,000+ | 60% |

Minimum GFI: $1500
Fees: $450 (standard) required on all loans.
Margins:
- Pricing to LO will be as shown by using SRP Calc and confirmed by MLA Secondary Marketing.
- Pricing to LO for all non-subprime products that are not listed in SRP Calc will reflect the required margins as listed below (standard margins):
    - Fixed: .50
    - ARM: .625
    - Jumbo: .375
    - Gov: .75
    - Subprime: 1.000
- Subprime products not listed in SRP Calc require a minimum margin of one point (1.000).
- Loans funded by Originator between **1/15/08 and 4/15/08** will be paid at the top tier as noted above (60%).

### Advances

Between **1/15/08 and 4/15/08**, an amount of $3,000 in total may be paid to Originator as an advance payment of commissions earned. The amount of the advance paid will be netted against future commissions. Originator should request any advances needed.

_____
Signature

1/23/08
Date