**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS**

| | |
|---|---|
| BEAU CHARBONNEAU, on behalf of himself and others similarly situated,<br><br>  Plaintiff,<br><br>  v.<br><br>MORTGAGE LENDERS OF AMERICA, LLC, et al.,<br><br>  Defendants. | Case No. 18-2062-HLT-ADM |

**MEMORANDUM AND ORDER**

This matter comes before the court on defendants Mortgage Lenders of America, LLC ("MLOA"), Bradley Ives, and Philip Kneibert's Motion for Leave to Amend Answers. (ECF 163.) By way of this motion, defendants seek to amend their answers to plaintiff Beau Charbonneau's ("Charbonneau") Third Amended Complaint to add an additional defense that the collective-action plaintiffs are exempt from overtime under the "retail sales exemption" of the Fair Labor Standards Act ("FLSA"), Section 7(i). Defendants seek to assert this defense belatedly because the Department of Labor ("DOL") changed its interpretive regulations relating to Section 7(i) on May 19, 2020, to formally withdraw the partial list of establishments that do not qualify for the retail sales exemption. Because of this, defendants argue they now have a "new good faith defense" that plaintiffs qualify for the retail sales exemption.

For the reasons discussed below, defendants' motion is denied. The deadline set forth in the scheduling order for motions to amend the pleadings expired almost one year ago. Defendants have not met the good-cause standard for amending the pleadings after that deadline because the DOL's change to the interpretive regulations was not a change in the governing law. Furthermore,

defendants' undue delay in seeking to assert this defense would prejudice plaintiffs at this late stage of the litigation. And, defendants have not articulated any reason why their proposed amendment is not futile under the Supreme Court's decision in *Mitchell* and its progeny. Thus, the court sees no legitimate reason to allow defendants to belatedly amend the pleadings—only to put plaintiffs to significant time and expense, and to delay the ultimate resolution of this case—all to assert a defense that will be futile.

## I.   BACKGROUND

MLOA provides online mortgage lending services. MLOA employed Charbonneau as a Team Lead and Loan Officer, originating loans for individual customers. In both positions, Charbonneau received commission payments. Charbonneau filed this lawsuit against MLOA in February of 2018. His complaint alleges, on behalf of himself and others similarly situated, that defendants failed to pay Team Leads and Loan Officers overtime compensation and failed to pay Loan Officers minimum wage for all hours worked in violation of the FLSA, the Kansas Wage Payment Act ("KWPA"), and Kansas common law. He brought this case as a putative FLSA collective action as to the FLSA claims and as a putative Rule 23 class action as to the KWPA and common law claims.

The court convened the initial scheduling conference on June 13, 2018, and issued a scheduling order targeted at an initial round of discovery and early mediation pending the court's ruling on plaintiff's then-anticipated motion for conditional certification of the collective action. (ECF 34.) On December 6, 2018, the court granted conditional certification of two separate FLSA collective classes (ECF 45), and the FLSA opt-in plaintiffs subsequently filed their consents (ECF 52-55, 58, 61-62, 64-65, 67-69, 71, 74, 76, 81-82). On April 18, 2019, the court reconvened a Phase II scheduling conference and entered a scheduling order that set the remaining case

management deadlines. (ECF 77.) Among other things, the schedule set a deadline for motions to amend the pleadings of August 7, 2019 (*id.* at 2),[1] which the court later extended to August 16, 2019 (ECF 90). Charbonneau filed the operative Third Amended Complaint on August 22, 2019, adding defendants Bradley Ives and Philip Kneibert. (ECF 93.) Defendants then filed their answers to the Third Amended Complaint. (ECF 94 & 104.)

In December of 2019, the parties moved for an approximately three-month extension of all remaining pretrial deadlines because of complications associated with ESI productions. (ECF 106.) The court granted the motion in part and denied it in part. Specifically, the court set the following key deadlines: plaintiff's motion for Rule 23 class certification by February 21, 2020; substantial completion of fact discovery by March 6; expert disclosures by March 6 and April 3; completion of all discovery by April 17; final pretrial conference on May 1; and dispositive motions and motions to decertify any class by May 7. (ECF 110.) Plaintiffs filed their motion for Rule 23 class certification and defendants filed a motion for partial summary judgment on plaintiffs' KWPA and common law claims.

On April 21, the parties filed a joint motion to continue various case management deadlines because of disruptions associated with the COVID pandemic, because this case had been recently reassigned to a different district judge, and because the court's ruling on the then-pending motions could impact remaining case management deadlines. (ECF 154.) The court granted the parties'

---

[1] The chart on page 2 of the scheduling order states that the deadline was August 7, 2019, but page 6 mistakenly states that the deadline was April 9, 2020. (ECF 163 ¶ 8, at 2.) The latter date is incorrect. The Report of Parties' Planning Meeting requested August 7, 2019, as the deadline for motions to amend and, as court recalls, this was the date the court and the parties discussed during the scheduling conference. As such, the correct deadline was August 7, 2019. This was reflected in subsequent court filings. (ECF 89, 90 (recognizing the scheduling order set a deadline of August 7, 2019, for the parties to file any motions to amend their pleadings).)

joint motion to continue and vacated the pretrial conference deadlines and the May 7 motions deadline. (ECF 155.)

On June 1, plaintiffs filed a motion for partial summary judgment on the FLSA exemptions that defendants had previously asserted as defenses in this action. (ECF 161.) Defendants filed their response on June 26, and plaintiffs filed their reply on July 14. Thus, this motion is now ripe for the court to decide. Meanwhile, on June 20, the court granted defendants' motion for partial summary judgment on plaintiffs' KWPA and common law claims and, as a result, denied plaintiffs' motion for Rule 23 class certification as moot. (ECF 172.) Thus, the current procedural posture of the case is as follows: (1) discovery was (or should have been) complete by April 17; (2) defendants already filed and the court already decided defendants' summary judgment motion; (3) the only claims remaining are plaintiffs' FLSA collective action claims; and (4) plaintiffs' motion for summary judgment on defendants' asserted FLSA exemption defenses is ripe.

Against this backdrop, the court turns to the timing of the present motion. Defendants filed the current motion to amend on June 9—nearly ten months after the deadline for motions to amend the pleadings, nearly two months after the April 17 close of all discovery, and approximately one week after plaintiffs filed a motion for partial summary judgment on defendants' other asserted FLSA exemption defenses. By way of the instant motion, defendants seek leave to amend their answers to add a defense under Section 7(i) of the FLSA. That section exempts retail or service establishments from paying overtime if "(1) the regular rate of pay of such employee is in excess of one and one-half times the minimum [wage], and (2) more than half his compensation for a representative period (not less than one month) represents commissions on goods or services." 29 U.S.C. § 207(i). In 1961, the DOL first promulgated two interpretive rules listing establishments that it viewed were lacking a retail concept and establishments that "may be recognized as retail."

4

*See* Partial List of Establishments Lacking "Retail Concept," 26 Fed. Reg. 8355 (Sept. 2, 1961) (codified at 29 C.F.R. § 779.317); Partial List of Establishments Whose Sale or Service May Be Recognized as Retail, 26 Fed. Reg. 8356 (Sept. 2, 1961) (codified at 29 C.F.R. § 779.320). In the most recent version of 29 C.F.R. § 779.317, the DOL listed "loan offices," "finance companies," and "credit companies, including small loan and personal loan companies" as establishments lacking a retail concept. On May 19, 2020, the DOL withdrew both interpretive rules. *See* Partial Lists of Establishments that Lack or May Have a "Retail Concept" Under the Fair Labor Standards Act, 85 Fed. Reg. 29867-70 (May 19, 2020) [hereinafter Withdrawal Rule] (removing and reserving 29 C.F.R. §§ 779.317, 779.320).

Because the DOL withdrew 29 C.F.R. § 779.317 on May 19, defendants argue they may now assert in good faith that they qualify for the Section 7(i) exemption. In response, plaintiffs argue the DOL's withdrawal of this interpretive rule had no effect on the exemption. Plaintiffs point out that the statute remains the same, and many courts have previously held that loan companies like MLOA do not qualify as retail or service establishments under Section 7(i). Plaintiffs therefore ask the court to deny defendants' leave to amend their answers.

## II.   ANALYSIS

Before applying the legal standards governing leave to amend, the court turns first to an overview of the Section 7(i) exemption and its history.

### A.   The Section 7(i) Exemption

The FLSA generally requires employers to pay overtime, *i.e.* one and one-half the employee's normal wage rate, for each hour the employee works over forty in a work week. 29 U.S.C. § 207(a)(1). The FLSA also sets forth certain exemptions to this requirement, including Section 7(i). Under Section 7(i), a "retail or service establishment" is not required to pay an

5

employee overtime if "(1) the regular rate of pay of such employee is in excess of one and one-half times the minimum [wage], and (2) more than half his compensation for a representative period (not less than one month) represents commissions on goods or services." 29 U.S.C. § 207(i). To establish that the exemption applies, an employer must show that it is a "retail or service establishment." *See Chessin v. Keystone Resort Mgmt., Inc.*, 184 F.3d 1188, 1192 (10th Cir. 1999) ("[A]n employer bears the burden of proving both the nature of the 'establishment' it operates and the applicability of an FLSA exemption . . . .").

Section 7(i) does not include a definition for the term "retail or service establishment." However, when Congress enacted Section 7(i) in 1961, a separate FLSA provision—29 U.S.C. § 213(a)(2)—wholly exempted certain retail or service establishments from the statute's coverage. *See* Fair Labor Standards Amendments of 1961, Pub. L. 87-30, § 6, 75 Stat. 65, 71 (1961) (setting forth amendments to 29 U.S.C. § 213). Section 13(a)(2) defined a "retail or service establishment" to mean "an establishment 75 per centum of whose annual dollar volume of sales of goods or services (or both) is not for resale and is recognized as retail sales or services in the particular industry." *Id.* Congress repealed Section 13(a)(2) in 1989, but most courts have determined that the identical term in Section 7(i) has the same meaning. The Eighth Circuit explained:

> When Congress passed § 207(i) in 1961, it specifically stated that the term "retail or service establishment" was to have the same meaning in that section as it did in § 213(a)(2). *See* 29 C.F.R. § 779.411 (1992). Thus, any construction of the term as defined in § 213(a)(2) became a part of the definition of the term as found in § 207(i). Nothing in the 1990 amendments changed § 207(i). The term "retail or service establishment" still remains, and there is no expression of congressional intent that it should be construed any differently. Absent specific congressional intent, we will not conclude that Congress retained the term "retail or service establishment" in § 207(i) yet at the same time discarded thirty years of established meaning.

*Reich v. Delcorp, Inc.*, 3 F.3d 1181, 1183 (8th Cir. 1993); *see also Gieg v. DDR, Inc.*, 407 F.3d 1038, 1050 (9th Cir. 2005) (applying Section 13(a)(2)'s definition of "retail or service establishment" and the accompanying regulations to the Section 7(i) exemption); *Diggs v. Ovation Credit Servs., Inc.*, --- F.Supp.3d ----, 2020 WL 1492793, at *4-*5 (M.D. Fla. Mar. 27, 2020) (same). The DOL also interprets the term "retail or service establishment" in Section 7(i) to have the definition set forth in Section 13(a)(2). *See* 29 C.F.R. § 779.411.

In 1959, the Supreme Court concluded that a personal loan company and "other financial institutions" including banks, insurance companies, and credit companies were not "retail or service establishments" within the meaning of Section 13(a)(2) because "there is no concept of retail selling or servicing in these industries." *Mitchell v. Kentucky Finance Co.*, 359 U.S. 290, 295 (1959). When the DOL first issued 29 C.F.R. § 779.317 in 1961, it cited *Mitchell* as its authority for including "credit companies, including small loan and personal loan companies" on the list of establishments the agency believed lacked a "retail concept." In construing the Section 7(i) exemption since, courts have cited *Mitchell* in determining that employers selling financial products, including personal loans, are not retail or service establishments eligible for the exemption. *See, e.g.*, *In re Wells Fargo Home Mortg. Overtime Pay Litig.*, No. C 06-01770 MHP, 2008 WL 2441930, at *3-*6 (N.D. Cal. June 13, 2008) (finding exemption did not apply to bank that provides a variety of financial products and services, including mortgages); *Pontius v. Delta Fin. Corp.*, No. 04-1737, 2007 WL 1496692, at *4-*6 (W.D. Pa. Mar. 20, 2007) (same, mortgage lender), *report and recommendation adopted*, No. CIV.A. 04-1737, 2007 WL 1412034 (W.D. Pa. May 10, 2007); *Barnett v. Wash. Mut. Bank, FA*, No. C 03-00753 CRB, 2004 WL 1753400, at *4-*6 (N.D. Cal. Aug. 5, 2004) (same, where plaintiffs were call center employees that sold mortgages and home equity loans); *Casas v. Conseco Fin. Corp.*, No. CIV.00-1512(JRT/SRN), 2002 WL

507059, at *3-*5 (D. Minn. Mar. 31, 2002) (same, where plaintiffs were loan originators for lending products such as home improvement loans, home equity loans, and manufactured and mobile home mortgages).

### B. Defendants' Motion to Amend

Defendants now seek leave to amend their answers to add a Section 7(i) defense. Where, as here, the scheduling order deadline to file a motion to amend the pleadings has passed, the party seeking leave to amend must (1) demonstrate good cause for modifying the scheduling order under FED. R. CIV. P. 16(b)(4), and (2) satisfy the standards for amendment under FED. R. CIV. P 15(a). *Gorsuch, Ltd., B.C. v. Wells Fargo Nat. Bank Ass'n*, 771 F.3d 1230, 1240 (10th Cir. 2014). Whether to grant a motion to amend is within the court's sound discretion. *See id.*

#### 1. Defendants Have Not Shown Good Cause Under Rule 16

A scheduling order "may be modified only for good cause and with the judge's consent." FED. R. CIV. P. 16(b)(4). To establish good cause, the moving party must show that it could not have met the motion to amend deadline despite "diligent efforts." *Husky Ventures, Inc. v. B55 Invs., Ltd.*, 911 F.3d 1000, 1020 (10th Cir. 2018). Because Rule 16 requires diligence, if a party knows of "the underlying conduct but simply failed to raise [its] claims, . . . the claims are barred." *Gorsuch*, 771 F.3d at 1240. On the other hand, "Rule 16's good cause requirement may be satisfied . . . if a [party] learns new information through discovery or if the underlying law has changed." *Id.*

Defendants argue that they could not have complied with the motion to amend deadline because the DOL did not withdraw 29 C.F.R. § 779.317 until May 19, 2020. Thus, defendants contend that they did not have a good-faith basis to assert a Section 7(i) defense prior to that date. In response, plaintiffs contend that defendants do not demonstrate good cause under Rule 16

8

because there has been no real change in the law. Plaintiffs argue that courts have long concluded that loan companies are not retail or service establishments based on the statute itself and congressional intent, not the DOL's interpretive regulations. Plaintiffs further argue that courts did not afford any deference to 29 C.F.R. § 779.317 and its withdrawal has no impact on whether a business qualifies as a retail or service establishment under Section 7(i).

The court agrees with plaintiffs. Defendants have not shown good cause for the belated amendment because there has been no change in the controlling law. Although the DOL recently withdrew 29 C.F.R. § 779.317, the definition of "retail or service establishment" remains the same. *Mitchell* and its progeny govern whether companies like MLOA qualify as a retail or service establishment, and that body of case law remains good law. In an attempt to argue otherwise, defendants rely heavily on the DOL's statement in the Withdrawal Rule that "[e]stablishments which had been listed as lacking a retail concept may now assert under part 779 that they have a retail concept and may be able to qualify as retail or service establishments." Withdrawal Rule, 85 Fed. Reg. 29868. But defendants admit that 29 C.F.R. § 779.317 was merely an interpretive rule. "Interpretive rules 'do not have the force and effect of law . . . .'" *Perez v. Mortg. Bankers Ass'n*, 575 U.S. 92, 97 (2015) (quoting *Shalala v. Guernsey Mem'l Hosp.*, 514 U.S. 87, 99 (1995)). Rather, they are "issued by an agency to advise the public of the agency's construction of the statutes and rules which it administers." *Shalala*, 514 U.S. at 99. The DOL's statement therefore simply opens up an avenue for an employer to make an assertion to the DOL. But it does not change the law that this court must apply.

Whether defendants may in good faith claim a Section 7(i) defense before the courts has never been dependent on the DOL's interpretive rules. Indeed, the DOL withdrew 29 C.F.R. § 779.317 in part because multiple courts had criticized the incomplete list and declined to accord

9

the rule any deference. *See* Withdrawal Rule, 85 Fed. Reg. 29868. The Seventh Circuit described the rule as an "incomplete, arbitrary, and essentially mindless catalog." *Alvarado v. Corp. Cleaning Servs., Inc.*, 782 F.3d 365, 371 (7th Cir. 2015); *see also Matrai v. DirecTV, LLC*, 168 F. Supp. 3d 1347, 1361 (D. Kan. 2016) (discussing *Alvarado* and stating that the rationale for 29 C.F.R. § 779.317 was "neither obvious nor stated"). The Ninth Circuit also criticized the rule, stating that the DOL's incomplete list "does not appear to flow from any cohesive criteria for retail and non-retail establishments." *Martin v. Refrigeration Sch., Inc.*, 968 F.2d 3, 7 n.2 (9th Cir. 1992). When the DOL withdrew the rule, it explained that it would rely on a "generally applicable analysis set forth in § 779.318 and elsewhere in part 779" to determine whether a business is a retail or service establishment going forward, rather than a static list. Withdrawal Rule, 85 Fed. Reg. 29868.

The DOL's withdrawal of 29 C.F.R. § 779.317 is not a true change in the law governing the Section 7(i) exemption. Therefore, the court cannot find that defendants had good cause to file their motion late. Defendants have offered no other explanation to justify the untimeliness of their motion. Because the court cannot find good cause to extend the scheduling order deadline, the court denies defendants' motion as untimely. *See Husky Ventures*, 911 F.3d at 1019 (stating that a court can deny a motion to amend for failure to show good cause within the meaning of Rule 16(b)(4)).

> **2.    Defendants Also Do Not Meet the Rule 15(a) Standards for Leave to Amend**

The court also denies defendants' motion for leave to amend under Rule 15(a) standards. When a party can no longer amend its pleading as a matter of course under Rule 15(a)(1), amendment is allowed "only with the opposing party's written consent or the court's leave." FED. R. CIV. P. 15(a)(2). "The court should freely give leave [to amend pleadings] when justice so

10

requires." *Id.* In freely allowing leave to amend, the court provides litigants with "the maximum opportunity for each claim to be decided on its merits rather than on procedural niceties." *Hardin v. Manitowoc–Forsythe Corp.*, 691 F.2d 449, 456 (10th Cir. 1982). A court may only withhold leave to amend for reasons such as "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of [the] amendment." *U.S. ex rel. Ritchie v. Lockheed Martin Corp.*, 558 F.3d 1161, 1166 (10th Cir. 2009) (alteration in original) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)).

### a. Undue Delay, Bad Faith, or Dilatory Motive

A court may deny leave to amend based on undue delay. While "[l]ateness does not of itself justify the denial of the amendment," a party that "delays in seeking an amendment is acting contrary to the spirit of the rule and runs the risk of the court denying permission because of the passage of time." *Minter v. Prime Equip. Co.*, 451 F.3d 1196, 1205 (10th Cir. 2006) (quoting *R.E.B., Inc. v. Ralston Purina Co.*, 525 F.2d 749, 751 (10th Cir. 1975); 6 CHARLES ALAN WRIGHT ET AL., FEDERAL PRACTICE AND PROCEDURE § 1488 (2d ed. 1990)). "[P]rotracted delay, with its attendant burdens on the opponent and the court, is itself a sufficient reason for the court to withhold permission to amend." *Id.* (quoting *Steir v. Girl Scouts of the USA*, 383 F.3d 7, 12 (1st Cir. 2004)). In evaluating what constitutes undue delay sufficient to deny a motion to amend, the district court must focus "primarily on the reasons for the delay." *Id.* at 1206. Denial is appropriate where the party seeking amendment "has no adequate explanation for the delay." *Frank v. U.S. West*, 3 F.3d 1357, 1365-66 (10th Cir. 1993); *see also Fed. Ins. Co. v. Gates Learjet Corp.*, 823 F.2d 383, 387 (10th Cir. 1987) (noting that courts have "denied leave to amend in situations where the moving party cannot demonstrate excusable neglect," including "where the moving party was

11

aware of the facts on which the amendment was based for some time prior to the filing of the motion to amend").

The parties' arguments here are similar to those discussed above with respect to the Rule 16 good-cause standard. Defendants argue there is no undue delay because they sought leave to amend soon after the DOL issued the Withdrawal Rule on May 19 and "open[ed] the door to the Defendants' good faith assertion of the retail sales exemption." (ECF 180, at 9.) In response, plaintiffs contend that defendants have no adequate explanation for their delay in seeking leave to amend because the law has not changed. Plaintiffs argue that defendants could have asserted a Section 7(i) defense at any time, although plaintiffs believe that such an assertion would be meritless under existing law.

Again, the court agrees with plaintiffs. As discussed above, the DOL's withdrawal of 29 C.F.R. § 779.317—an interpretive rule that courts had previously criticized—did not bar defendants from asserting the Section 7(i) exemption sooner. Courts have not blindly followed the DOL's positions on which particular establishments constitute "retail or service establishments" so as to foreclose any argument otherwise. *See, e.g.*, *Reich*, 3 F.3d at 1184-86 (concluding that a laundry can qualify as a retail or service establishment for purposes of Section 7(i), despite the DOL's position otherwise). And, employers similar to MLOA have previously made good-faith arguments that they qualify for the Section 7(i) exemption. *See, e.g.*, *Gatto v. Mortg. Specialists of Ill., Inc.*, 442 F. Supp. 2d 529, 537-42 (N.D. Ill. 2006) (distinguishing *Mitchell* and finding that a mortgage broker employer was a retail or service establishment); *Casas*, 2002 WL 507059, at *3-*6 (discussing, but ultimately rejecting, the finance company employer's argument that *Mitchell* should be reconsidered due to changes in the financial industry). The fact that the DOL recently withdrew the rule does not justify defendants' delay in asserting the Section

7(i) defense. Defendants have offered no other explanation for their delay. Therefore, the court denies defendants' motion based on undue delay in seeking to amend.

### b. Undue Prejudice

The most important factor in considering a motion to amend is "whether the amendment would prejudice the nonmoving party." *Minter*, 451 F.3d at 1207. "Courts typically find prejudice only when the amendment unfairly affects the [opposing parties] 'in terms of preparing their defense to the amendment.'" *Id*. at 1208 (quoting *Patton v. Guyer*, 443 F.2d 79, 86 (10th Cir. 1971)). "Most often, this occurs when the amended claims arise out of a subject matter different from what was set forth in the [original pleading] and raise significant new factual issues." *Id*.

Plaintiffs argue that allowing defendants' proposed amendment would cause them undue prejudice. Discovery opened in June 2018. The First Amended Scheduling Order required the parties to substantially complete fact discovery by March 6, 2020, and to complete all discovery by April 17, 2020. (ECF 110 ¶¶ (b), (d).) During discovery, plaintiffs reportedly served written discovery directed to MLOA's exemption decisions; "engaged in exhaustive, time-consuming and very costly ESI discovery" targeting issues framed by the pleadings; and deposed seven current or former MLOA employees (including the individual defendants) and an MLOA corporate representative. (ECF 171, at 17-18.) Plaintiffs contend that if defendants are allowed to belatedly assert a Section 7(i) defense, they will need to "re-depos[e] several witnesses, identify[] additional search terms for ESI discovery, and issu[e] new document requests pertaining to the elements of the . . . exemption." (*Id.*) In reply, defendants argue that plaintiffs are exaggerating and that they really only need discovery on the dollar volume percentage of funded loans MLOA sold on the secondary market. Defendants believe this discovery can be completed through a brief set of interrogatories and/or document requests.

The court does not believe that plaintiffs are exaggerating the discovery they will require if defendants were permitted to assert the Section 7(i) exemption. Whether MLOA qualifies as a retail or service establishment turns on whether 75 percent of its "annual dollar volume of sales of goods or services (or of both) is not for resale" *and* whether it is "recognized as retail sales or services in the particular industry." *See Reich*, 3 F.3d at 1183. While the first element may be more amenable to discovery through limited written requests, the second element requires a more nuanced factual inquiry. *See Brennan v. Great Am. Disc. & Credit Co.*, 477 F.2d 292, 296 (5th Cir. 1973) (recognizing that "[d]etermination of whether a business fits the retail concept is not without difficulty"). Plaintiffs did not conduct any discovery on either element. Defendants are not entitled to belatedly assert this defense, and then unilaterally dictate the scope of discovery.

Moreover, the need for further discovery is only one consideration on the issue of undue prejudice. At this point, the case has been pending for approximately two-and-a-half years. It took the parties an inordinate length of time to complete discovery, and discovery has now been closed for over three months. Plaintiff's partial summary judgment motion on defendants' FLSA exemption defenses is fully briefed. If the court were to allow defendants to belatedly assert this defense, plaintiffs would be put not only to the time and expense of conducting discovery on this defense, but also an additional round of summary judgment briefing. In addition, further briefing will delay the trial setting and, hence, the ultimate resolution of this case. Thus, plaintiffs would be unduly prejudiced if defendants were allowed to amend their answers at this late stage of the litigation. *See, e.g.*, *Flores v. 2K Clevelander, LLC*, No. 1:16-CV-24083-UU, 2017 WL 5054565, at *4 (S.D. Fla. May 4, 2017) (finding plaintiff would be prejudiced by defendant amending its answer to plead the Section 7(i) defense where the case had progressed to dispositive motions and discovery was closed); *Wade v. Cycle Mart, L.P.*, No. A-14-CV-00427-ML, 2015 WL 4404876,

14

at *4 (W.D. Tex. July 17, 2015) (denying a defendant leave to amend where the plaintiff was prejudiced because she did not conduct discovery on the elements necessary to establish that the employer was a retail establishment under Section 7(i)).

### c.     Futility

"A proposed amendment is futile if the [pleading], as amended, would be subject to dismissal." *Jefferson Cty. Sch. Dist. No. R-1 v. Moody's Inv'r's Servs., Inc.*, 175 F.3d 848, 859 (10th Cir. 1999).  When a defendant moves to amend an answer to add an affirmative defense, "the appropriate standard for determining the viability of a defense lies within Fed. R. Civ. P. 12(f), which permits a party to move to strike 'an insufficient defense' from a pleading." *Layne Christensen Co. v. Bro-Tech Corp.*, No. 09-CV-2381-JWL-GLR, 2011 WL 3847076, at *6 (D. Kan. Aug. 29, 2011).  "A defense is insufficient if it cannot succeed, as a matter of law, under any circumstances." *Hayne v. Green Ford Sales, Inc.*, 263 F.R.D. 647, 648-49 (D. Kan. 2009).  A district court has discretion to strike a defense where the insufficiency is "clearly apparent" and "no factual issues exist that should be determined in a hearing on the merits." *Id.* at 649.  The party seeking to strike a defense has a demanding burden to establish adequate grounds under Rule 12(f). *Layne Christensen*, 2011 WL 3847076, at *6.  In determining whether striking a defense is warranted, the court should consider that "Rule 12(f) is intended to minimize delay, prejudice and confusion by narrowing the issues for discovery and trial." *Hayne*, 263 F.R.D. at 649.

Plaintiffs argue that defendants' proposed amendment is "unquestionably futile" because "as a matter of long-standing Congressional intent and confirmed by the Supreme Court, loan companies like MLOA are not 'retail or service establishments' within the meaning of [Section 7(i)]." (ECF 171, at 16.)  In contrast, defendants contend that their proposed amendment is not futile and, in arguing otherwise, plaintiffs are "rely[ing] on outdated case law regarding the proper

15

scope of interpretation of the FLSA's exemptions, misstatements about the deference owed to the DOL's regulations, and selective misstatements about the purpose of the DOL [Withdrawal] Rule." (ECF 180, at 10.)

Again, the court agrees with plaintiffs. The proposed amendment is futile. As discussed in detail above, courts confronted with the question of whether employers in the financial industry selling personal loans like MLOA are "retail or service establishments" have continually concluded that they are not—based on the Supreme Court's decision in *Mitchell* and its progeny. Defendants vaguely contend that they may now assert, in good faith, that they qualify for the Section 7(i) exemption. But defendants do not argue that the DOL's Withdrawal Rule somehow overrules prior controlling case law. Astoundingly, defendants do not address *Mitchell* at all. Defendants do not provide the court with any details as to why MLOA's business might be distinguishable from the employers discussed in *Mitchell* or subsequent analogous cases applying *Mitchell*. Perhaps most tellingly, defendants do not articulate *any* "good faith" reasons why they supposedly now qualify for Section 7(i) exemption.

### III.   CONCLUSION

The DOL's withdrawal of the interpretive regulation did not change the governing law that applies in this case. As such, defendants' motion to amend is untimely under the scheduling order, and they have not shown good cause for an extension of the deadline to allow the belated motion. Defendants also unduly delayed in moving to amend in that the underlying law has not changed. Thus, defendants could have moved to amend their answers earlier if they truly believed they had a good-faith argument that MLOA is a retail or service establishment. Plaintiffs would be unduly prejudiced by the belated amendment because discovery is closed and the parties have fully briefed dispositive motions (including plaintiffs' motion for partial summary judgment on FLSA

exemptions). This case is on the brink of being ready for trial. Allowing the belated amendment would unfairly put plaintiffs to significant time and expense re-doing discovery and dispositive motions—and all for no apparent reason because the defense defendants now seek to assert would be futile. *Mitchell* still dictates that companies like MLOA are not "retail or service establishments" as that term is used in the FLSA.

This case is now ready for a pretrial conference. Pursuant to Fed. R. Civ. P. 16(a), the court schedules a final pretrial conference for **August 19, 2020 at 10:00 a.m.** by phone (888-363-4749; access code 3977627) before the undersigned. The court may require the parties to appear in person if the court believes the pretrial order requires substantial work or that there are other issues such that the case would benefit from having the pretrial conference in person rather than by phone. The parties may also request to appear in person when they submit the proposed pretrial order. No later than **August 12, 2020**, defense counsel must submit the parties' proposed pretrial order in Word format as an attachment to an email sent to *ksd_mitchell_chambers@ksd.uscourts.gov*. The proposed pretrial order must not be filed with the clerk's office. It must be in the form available on the court's website:

*http://ksd.uscourts.gov/index.php/forms/?open=CivilForms*

**IT IS THEREFORE ORDERED** that defendants Mortgage Lenders of America, LLC, Bradley Ives, and Philip Kneibert's Motion for Leave to Amend Answers (ECF 163) is denied.

**IT IS SO ORDERED.**

Dated July 28, 2020, at Topeka, Kansas.

s/ Angel D. Mitchell
Angel D. Mitchell
U.S. Magistrate Judge

17