## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

**BEAU CHARBONNEAU, on behalf of himself and others similarly situated,**

**Plaintiff,**

**v.**

**MORTGAGE LENDERS OF AMERICA L.L.C., et al.,**

**Defendants.**

**Case No. 2:18-cv-02062-HLT-ADM**

## MEMORANDUM AND ORDER

Plaintiff Beau Charbonneau brings this putative collective action, on behalf of himself and all others similarly situated ("Plaintiffs"), under the Fair Labor Standards Act ("FLSA") against Defendants Mortgage Lenders of America, L.L.C. ("MLOA"), Philip Kneibert, and Bradley Ives. Plaintiffs allege that Defendants misclassified a certain employment position ("Team Lead") as exempt from the overtime requirements mandated by the FLSA. Defendants assert, as affirmative defenses, that the Team Leads[1] were exempt from the FLSA's overtime requirements under the executive, administrative, highly compensated, and combination exemptions. Plaintiffs now move for summary judgment on these defenses. Doc. 161. Because the uncontroverted evidence clearly establishes that no reasonable jury could conclude the Team Leads were paid on a salary or fee basis, the Court grants Plaintiffs' Motion.

---

[1]   Opt-in Plaintiffs that were employed as Team Leads during the relevant time period include: Andrew Adkins, Kristen Boomershine (Harbaugh), Wesley Ficken, Darrin Jackson, Mark Jenkins, Matthew Johnson, Michael Klema, Peter Legaspi, Anthony Lewis, Joseph Lewis, Erik Lorfing, Jason Markowsky, Michael Miller, Kimberly Murphy, Stephanie O'Farrell, Kelly Owens, Michael Ponick, Mitchell Reeder, April Richmond, Richard Sano, Amanda Scogin, David Vaughn, and Matthew Wildy. There are additional Opt-in Plaintiffs in this case that were not employed as Team Leads.

## I.      BACKGROUND[2]

Defendant MLOA[3] is a mortgage-lending company that employs over 300 lending professionals at its sole office in Overland Park, Kansas. MLOA's lending professionals sell mortgage loans over the phone and internet. MLOA's lending professionals include Loan Officers, Team Leads, and Directors. MLOA assigned its Loan Officers to different "teams," and each team had a Team Lead who reported to one of three "Directors," each of whom oversaw one of three respective MLOA divisions. Defendants MLOA, Kneibert, and Ives made the policy decision to classify its Team Leads as exempt from the FLSA's overtime requirements and did not pay them overtime compensation.

MLOA's Team Lead compensation structure was set forth in the terms of written, signed compensation schedules. Team Leads were compensated consistent with this agreement. MLOA paid its Team Leads twice a month: once on or about the fifteenth day of the month, and once at the end of the month.

There were four components to MLOA's Team Lead monthly compensation: (1) commissions on loans Team Leads personally produced; (2) a "Team Lead Override" payment consisting of a percentage of the Gross Commission Income ("GCI") on loans produced by Loan Officers on the Team Lead's team; (3) a monthly "Headcount Override" payment in the amount of $175 for each Loan Officer assigned to the Team Lead's team for the entirety of the prior month; and (4) a $1,000 monthly advance.

---

[2]  For purposes of summary judgment, the following facts are uncontroverted or recited in the light most favorable to Defendants as the nonmoving parties.

[3]  Defendant MLOA is currently known as Zillow Home Loans, LLC. In 2018, Zillow Group, Inc. acquired MLOA and, in connection with the acquisition, changed the corporate name of MLOA to Zillow Home Loans, LLC ("Zillow").

First, Team Leads' commissions were paid on a monthly basis for personally-produced loans that funded <u>during the previous month</u>. The "Time of Calculation and Payment of Commissions" Section to the Loan Originator Manager Compensation Schedule provides:

> Commissions (to the extent earned pursuant to the calculations set forth below and subject to applicable adjustments) shall be payable monthly on the fifteenth (15th) of the month for loans that fund during the previous month. Loans shall be considered funded when loan proceeds are disbursed at a loan closing and all applicable loan documents are in the possession of MLOA and have been duly executed. See also the Commission Conditions set forth below concerning the time that commissions are earned.

Doc. 170-4 at 1.

Second, "Team Lead Override" payments were additional commission payments based on the total loan sales generated <u>during the previous month</u> by the Loan Officers assigned to the Team Leads' respective teams. These payments were also made to Team Leads on a monthly basis. As set forth in the Team Leads' compensation schedule, "Manager will be paid monthly an amount each month equal to four percent (4%) of GCI for all loans funded in the immediately preceding month by Manager's Team." Thus, Team Leads were paid in August for loans that were sold in July.

Third, MLOA based the "Head Count Override" payment on the number of Loan Officers that were assigned to the Team Lead <u>for the entirety of the immediately preceding month</u>. Specifically, the Team Leads' compensation schedule provides that "[e]ach month, Manager will be paid an amount equal to $175 for each Loan Officer who is a member of Manager's Team for the entirety of the immediately preceding month." If a Loan Officer was assigned to a Team Lead's team for less than an entire month—for example, when Loan Officers were terminated, resigned, died, or were moved by MLOA to a different team—MLOA prorated (i.e. reduced) the $175 headcount payment accordingly. MLOA determined how many Loan Officers were assigned to

each Team Leads' respective team, but MLOA did not guarantee Team Leads a minimum number of Loan Officers on their respective teams, nor did MLOA guarantee that any Loan Officer would be assigned to any given team for a set or specific time. The number of Loan officers assigned to each team varied and was not equal. Some Team Leads had months or periods of time with no Loan Officers assigned to their teams.

Fourth, Team Leads were paid an advance of $1,000 of their total Head Count Override payment on the last check of each month. MLOA would then recapture the Team Leads' monthly $1,000 advance from the Head Count Override. The Head Count Override payment is thus calculated by multiplying the number of Loan Officers assigned to the team for the entire preceding month by $175 (or the prorated monetary amount) and then subtracting the $1,000 advance. Accordingly, when less than six (6) Loan Officers were assigned to a respective team, the Team Lead's headcount payment from MLOA was actually a negative number; for example, if a Team Lead had five (5) Loan Officers assigned to his team for an entire month, the headcount payment from MLOA in the following month equaled negative one hundred and twenty-five dollars (-$125), and when a Team Lead had no Loan Officers on his team for an entire month the headcount payment equaled negative one thousand dollars (-$1,000).

The following hypothetical is provided to better explain how the Headcount Override payment and monthly advance operate in practice. If a Team Lead had 16 Loan Officers assigned to his team for the entire month of July, he would be entitled to a Head Count Override payment of $2,800.[4] The Team Lead would automatically receive an initial advance of $1,000 from that total amount on his July 31 paycheck. The $1,800 remainder would then be received on his August 15 paycheck. Thus, the Team Lead was paid in August for work he performed in July.

---

[4]   Sixteen Loan Officers x $175.00 = $2,800.00.

However, MLOA's Head Count Override payment to Team Leads resulted in a positive number only when the Team Lead had six (6) or more Loan Officers assigned to his/her team for the entirety of the preceding month. Thus, if a Team Lead had only 5 Loan Officers assigned to his team for the entire month of July, he would be entitled to a Head Count Override payment of $875 for the month of August. The Team Lead would still receive the $1,000 advance on his July 31 paycheck. The $125 deficiency would then be recaptured from (or offset against) the Head Count Override payment in his August 15 paycheck. Several Team Leads received negative Head Count Override payments because they had no Loan Officers assigned to their teams for the entirety of the immediately preceding month.

MLOA compensated its Team Leads as set forth above until approximately April 2019 when, following its acquisition of MLOA, Zillow started paying the Team Leads a guaranteed salary of $455 or more per week and eliminated personal loan production/sales as a Team Lead job duty.

Plaintiffs allege that Defendants misclassified Team Leads as exempt employees for purposes of the FLSA and failed to pay them overtime for work hours over 40 per week.[5] Defendants assert, as affirmative defenses, that the Team Leads were exempt from the FLSA's overtime requirements under the executive, administrative, highly compensated, and/or combination exemptions. Plaintiffs now seek summary judgment on these purported exemption defenses.

---

[5]   The Third Amended Complaint, Doc. 93, stated seven claims against Defendants. The Court previously granted Defendants' summary-judgment motion on June 30, 2020, dismissing Counts III, IV, V, VI, and VII. Doc. 172. Plaintiff's remaining claims (Counts I and II) are collective actions brought under Section 216(b) of the FLSA. *See* Doc. 185 at 12-13.

## II.     STANDARD

Summary judgment is appropriate if there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the initial burden of establishing the absence of a genuine issue of fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The burden then shifts to the nonmovant to demonstrate that genuine issues remain for trial. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986). Courts view the facts and any reasonable inferences in a light most favorable to the non-moving party. *Henderson v. Inter-Chem Coal Co.*, 41 F.3d 567, 569 (10th Cir. 1994). "An issue of material fact is genuine if a 'reasonable jury could return a verdict for the nonmoving party.'" *Id*. (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

## III.    ANALYSIS

### A.     Overview of the FLSA's Overtime Provisions and Exemptions.

The FLSA mandates that an employer must pay its employees "one and one-half times the regular rate at which he is employed" for any time worked in excess of forty hours per workweek. 29 U.S.C. § 207(a)(2). There are exemptions to this overtime requirement, and relevant to this case are the exemptions for employees employed in a "bona fide executive, administrative, and professional capacity." *Id.* § 213(a)(1)).

The FLSA does not define "bona fide executive, administrative, or professional capacity" and instead leaves the terms to be "defined and delimited" by regulations of the Secretary of Labor. *Id.* Exercising that delegated authority, the Secretary of Labor has promulgated a series of regulations defining these so-called "white-collar" exemptions. *See* 29 C.F.R. § 541.100 ("General rule for executive employees"); *id.* § 541.200 ("General rule for administrative employees"); *id.* § 541.601 ("Highly compensated employees"); *id.* § 541.708 ("Combination exemptions").

To qualify for one of these white-collar exemptions, the employer must show that an employee is: (1) paid on a salary or fee basis;[6] (2) at a rate of not less than $455 per week; <u>and</u> (3) performs certain primary job duties. *See Swartz v. DJ Eng'g, Inc.*, 2015 WL 4139376, at *7 (D. Kan. 2015); *see also* 29 C.F.R. §§ 5410100, 541.200, 541.300.

### B. Defendants cannot establish that the Team Leads were paid on a salary basis because the Team Leads' compensation was not predetermined.

Plaintiffs argue that Defendants cannot show that the Team Leads were paid on a salary basis, which is fatal to all four of its asserted exemptions. Doc. 162 at 20. The executive, administrative, highly compensated, and combination exemptions each require that the employee be compensated on a "salary basis" at a rate of not less than $455 per week.[7] *See* 29 C.F.R. § 541.100(a)(1) (2004) (providing salary basis requirement for executive exemption); *id.* § 541.200(a)(1) (providing salary basis requirement for administrative exemption); *id.* § 541.601(b)(1) (providing salary basis requirement for highly compensated employee exemption); *IntraComm, Inc. v. Bajaj*, 492 F.3d 285, 294-96 (4th Cir. 2007) (holding that while the combination exemption "permits the blending of exempt duties for purposes of defining an employee's primary duty," it does not relieve employers of their burden to independently establish the other requirements, such as payment on a salary basis, of each exemption whose duties are combined).

The regulations define "salary basis" as follows:

---

[6]   The administrative exemption and the highly compensated employee exemption both allow payment on a "salary or fee basis." 29 C.F.R. § 541.200(a)(1); *id.* § 541.601(b)(1). But the executive exemption only allows payment on a "salary basis." *Id.* § 541.100(a)(1).

[7]   The Department of Labor ("DOL") amended the applicable regulations in September 2019 and increased the required minimum weekly salary rate from $455/week to $684/week. As Plaintiffs correctly point out in their brief, "[b]ecause the FLSA claims asserted by Team Leads in this case accrued before these amendments, the minimum salary rate of $455 per week is applicable here." Doc. 162 at 20. The requirement will also be met if the employee is compensated "monthly on a salary basis of $1,971.66." 29 C.F.R. § 541.600(b) (2004).

> An employee will be considered to be paid on a "salary basis" within the meaning of these regulations if the employee regularly receives each pay period on a weekly, or less frequent basis, <u>a predetermined amount</u> constituting all or part of the employee's compensation, <u>which amount is not subject to reduction because of variations in the quality or quantity of the work performed</u>. [Subject to exceptions] an exempt employee <u>must receive the full salary</u> for any week in which the employee performs any work without regard to the number of days or hours worked.

29 C.F.R. § 541.602(a) (emphasis added). The defendant bears the burden to establish that the employee is paid on a salary basis. *Swartz*, 2015 WL 4139376, at *7; *see also Archuleta v. Wal-Mart Stores, Inc.*, 543 F.3d 1226, 1233 (10th Cir. 2008) (explaining that it is the defendant-employer's burden to prove that an employee is exempt).

Here, the summary-judgment evidence, viewed in the light most favorable to Defendants, shows that MLOA did not pay the Team Leads on a "salary basis" within the meaning of the FLSA regulations because the Team Leads' compensation for a given month was based entirely on work performed <u>in the previous month</u>.  As set forth in MLOA's compensation schedules, the Team Leads' compensation had four components: (1) commissions from loans Team Leads personally produced the previous month; (2) a "Team Lead Override" payment, which was a commission from loans produced by Loan Officers on a Team Lead's team the previous month; (3) a monthly "Headcount Override" payment in the amount of $175 for each Loan Officer assigned to the Team Lead's team for the entirety of the previous month; and (4) a $1,000 monthly advance of their total Headcount Override payment that would be recaptured in the next month's paycheck. Thus, the Team Leads were not paid on a salary basis because their compensation was not a predetermined amount and was subject to variations based on the quality or quantity of work performed.

Defendants argue that this compensation structure constitutes payment on a salary basis because "the precise amount of a Team Lead's Headcount payment for a month would be apparent

and predetermined by the last day of the prior month." Doc. 170 at 45-46. Alternatively, Defendants argue that summary judgment should be denied because it is controverted that the commission payments were not predetermined because MLOA's compensation schedules specifically provided a formula for how these commissions were to be calculated and defined a specific percentage "override" amount Team Leads would receive for loans funded by the Loan Officers they supervised. *See* Doc. 170 at 5.

The Court disagrees. "To put it plainly: The salary basis test requires that an employee know the amount of his compensation for each weekly (or less frequent) pay period during which he works, <u>before</u> he works." *Hewitt v. Helix Energy Sols. Grp., Inc.*, 956 F.3d 341, 343 (5th Cir. 2020). Here, however, MLOA's Team Leads could not possibly know how much they would be compensated for a given month until <u>after</u> they had worked it. This is because the Team Leads' compensation was based entirely off the amount of loans produced and the number of Loan Officers supervised <u>in the previous month</u>.

Despite Defendants' assertions to the contrary, there is no material dispute as to whether the Team Leads' commission payments were predetermined. The fact that the <u>formula</u> was predetermined and agreed upon is irrelevant; the regulations mandate that the <u>amount</u> of compensation received each pay period must be predetermined and agreed upon before the work is performed. *See* 29 C.F.R. § 541.602(a). Under MLOA's compensation structure, the amount of compensation the Team Leads were entitled to receive for work performed in July (which would not be paid until approximately August 15) was not known until July 31—after the work had already been performed. Thus, the Team Leads were not paid "a predetermined amount" as required by 29 C.F.R. § 541.602(a). *See Hewitt*, 956 F.3d at 343 (holding that employee was not paid on a salary basis where he "knew his pay only <u>after</u> he worked through the pay period" in

which it was earned) (citing 29 C.F.R. § 541.602)); *Kaiser*, 2010 WL 5114729, at *17 (concluding that compensation "in amounts decided only after they are earned by the employee for a particular pay period" is not predetermined and is not a salary basis); *In re Wal-Mart Stores, Inc.*, 395 F.3d 1177, 1183 (10th Cir. 2005) (defining the term "predetermined amount" as "the amount previously agreed on for the period for which the salary is to be paid . . . .").

Accordingly, no reasonable jury could conclude that the Team Leads' compensation was predetermined. Defendants therefore cannot establish that MLOA paid the Team Leads on a salary basis, so Plaintiffs are entitled to summary judgment in their favor on these affirmative defenses.

**C.    Because Defendants cannot show that it paid Team Leads on a salary basis, Plaintiffs are entitled to partial summary judgment and it is not necessary to analyze the duties test.**

As stated above, an employer can only claim the executive, administrative, highly compensated, or combination exemptions if it shows the employee was: (1) paid on a salary or fee basis; (2) at a rate of not less than $455 per week; and (3) performs certain primary job duties. *See Swartz*, 2015 WL 4139376, at *7. Because Defendants cannot make the first showing, it seems axiomatic that the Court need not analyze the other two. But Defendants disagree and contend that "[a]n analysis of salary level should not supplant an analysis of employee duties under a fair interpretation of the exemptions." Doc. 170 at 41.

In support, Defendants cite *Nevada v. United States Department of Labor*, 218 F. Supp. 3d 520 (E.D. Tex. 2016), which addressed a DOL Final Rule that revised 29 C.F.R. Part 541, increasing the minimum salary level for exempt employees from $455 to $921 per week. In that case, the court found the proposed revisions to be unlawful. The court explained that the FLSA did "not grant the [DOL] the authority to utilize a salary-level test" and, consequently, the 2016 Final Rule should not be accorded *Chevron* deference "because it is contrary to the statutory text

and Congress's intent" in enacting the FLSA. *Id.* at 531. According to the court, "Congress intended the [white collar] exemptions to depend on an employee's duties rather than an employee's salary" and nothing in the exemption "indicates that Congress intended the [DOL] to define and delimit with respect to a minimum salary level." *Id.* at 530.

The Court finds that Defendants' reliance on *Nevada* is not compelling. First, *Nevada* is not binding precedent on this Court. Second, the *Nevada* court addressed a narrow issue that is separate and distinct from the issue in this case. Indeed, the *Nevada* opinion specifically stated that the court "was only evaluating the salary-level test as amended under the Department's Final Rule," and that it "is not making a general statement on the lawfulness of the salary-level test for the EAP exemption." *Id.* at 539 n.2. Third, *Nevada* addressed the DOL's 2016 amendments that were never implemented. *See, e.g.*, *Buford v. Superior Energy Servs., LLC*, 2018 WL 2465469, at *9 n.2 (E.D. Ark. 2018) (noting that the DOL's 2016 amendments have been enjoined from implementation and enforcement, and thus applying the regulations in effect prior to the injunction).

Fourth, cases decided post-*Nevada* further demonstrate that the *Nevada* decision did not abrogate the requirement that employers pay employees on a salary basis. In *Hewitt*, an opinion issued earlier this year, the Fifth Circuit Court of Appeals reversed summary judgment for an employer on the executive and highly-compensated-employee exemptions because the employee was not paid a predetermined, guaranteed amount of $455 per week. 956 F.3d at 343-44. The court expressly noted that "[b]oth of those exemptions require the employer to meet both a duties test and a salary test." *Id.* at 343 (emphasis added). The court then emphasized that "the salary basis test requires that an employee know the amount of his compensation for each weekly (or less frequent) pay period during which he works, before he works." *Id.* at 344 (emphasis in original).

And a recent case from the District of Kansas has reached the same conclusion. *See Endecott v. Comm. Floorworks, Inc.*, 2018 WL 5013461, at *6 (D. Kan. 2018) (holding that the highly-compensated-employee exemption requires that "the employee must be paid on a salary basis" and explaining that it "will not review the remaining requirements of this exemption" (i.e. the salary-level test and duties test) because failure to meet the salary-basis test is dispositive).

Thus, the *Nevada* court's holding is not as expansive as Defendants claim. The regulations clearly state that payment on a salary basis is a prerequisite that must be satisfied to claim the executive, administrative, highly compensated, or combination exemptions. *See* 29 C.F.R. §§ 541.100(a)(1), 541.200(a)(1), 541.601(b)(1); *Bajaj*, 492 F.3d at 294-96. "These regulations 'are entitled to judicial deference and are the primary source of guidance for determining the scope of exemptions to the FLSA.'" *Ellis v. J.R.'s Country Stores, Inc.*, 779 F.3d 1184, 1187 (10th Cir. 2015) (quoting *Ackerman v. Coca–Cola Enters., Inc.*, 179 F.3d 1260, 1264 (10th Cir. 1999)). "Courts must rely on these regulations . . . 'when ruling on the potentially ambiguous concept of intent to pay a salary.'" *Coates v. Dassault Falcon Jet Corp.*, 961 F.3d 1039, 1043-44 (8th Cir. 2020) (quoting *Ellis*, 779 F.3d at 1199).

Finally, Defendants argue that Plaintiffs "must establish that Defendants cannot—under a fair, rather than narrow interpretation—demonstrate that the executive, administrative, combination, or highly compensated exemptions applied to the Plaintiffs." Doc. 170 at 43 (citing *Encino Motorcars, LLC v. Navarrao*, 138 S. Ct. 1134 (2018)). The Court disagrees. Although *Encino* "rejected a hitherto-employed principle by federal courts that FLSA exemptions must be narrowly interpreted," *Jordan v. Maxim Healtcare Servs., Inc.*, 950 F.3d 724, 733 (10th Cir. 2019), it did not address the burden-shifting analysis under which the employer bears the burden of establishing that an exemption applies, *see Swartz*, 2015 WL 4139376, at *7; *Hagadorn v. M.F.*

*Smith & Assocs., Inc.*, 1999 WL 68403, at \*2 (10th Cir. 1999) ("[T]he burden of proving an exemption is on the employer."). Moreover, Defendants have failed to explain how a "fair," rather than "narrow" interpretation would necessitate a different outcome. In fact, Defendants concede that the regulations require all three tests be satisfied for an exemption to apply. *See* Doc. 170 at 40. This is true regardless of whether the regulations are interpreted "narrowly" or "fairly." *See, e.g.*, 29 C.F.R. § 541.100(a)(1)-(4) (defining "employee employed in a bona fide executive capacity" as an employee "compensated on a salary basis . . . whose primary duty is management . . . who customarily and regularly directs the work of two or more other employees; and [w]ho has the authority to hire or fire other employees" (emphasis added)).

It is therefore unnecessary for the Court to analyze the duties test; Defendants' failure to show that the Team Leads were paid on a salary basis is dispositive. *See Endecott*, 2018 WL 5013461, at \*6.

### D.   Plaintiffs are entitled to summary judgment that the Team Leads' commission compensation was not paid on a fee basis.

Although two of the exemptions asserted by Defendants require payment on a "salary basis," the administrative exemption and the highly compensated employee exemption both allow payment on a "salary or fee basis." *See* 29 C.F.R. § 541.200(a)(1) (2004); *id.* § 541.601 (emphasis added). In a final effort to defeat summary judgment, Defendants argue that Plaintiffs' motion for partial summary judgment fails to address whether any portion of the Team Leads' compensation could be considered to have been made on a "fee basis," and that summary judgment should be precluded as a result. *See* Doc. 170 at 49-51.

Plaintiffs' motion seeks summary judgment on these affirmative defenses but does not meaningfully argue about payment on a "fee basis." *See generally* Doc. 162. Defendants fully addressed this argument in their opposition. *See* Doc. 170 at 49-51. Plaintiffs replied. *See* Doc. 179

at 34-40. And neither party asked for additional briefing on the issue. The facts underlying this issue are not disputed. And, based on these facts, Defendants' argument is not persuasive and no reasonable jury could find in Defendants' favor. Given these circumstances, in combination with the unwieldly nature of this case and the multitude of asserted defenses,[8] the Court resolves this issue.

As an alternative to the salary basis requirement, both the administrative exemption and the highly compensated employee exemption also allow payment on a "fee basis." *See* 29 C.F.R. § 541.200(a)(1) (2004); *id.* § 541.601. The 2004 regulations define payment on a "fee basis" as "an agreed sum for a single job regardless of the time required for its completion." *Id.* § 541.605(a). "Fee" payments "resemble piecework payments with the important distinction that generally a 'fee' is paid for the kind of job that is unique rather than for a series of jobs repeated an indefinite number of times and for which payment on an identical basis is made over and over again." *Id.* "Payments based on the number of hours or days worked and not on the accomplishment of a given single task are not considered payments on a fee basis." *Id.*

Two recent cases discuss these regulations and held that commission-based compensation does not constitute payment on a fee basis. In *Pierce v. Wyndham Vacation Resorts, Inc.*, the court considered whether a commission-based compensation structure constituted a "fee basis" under the highly compensated employee exemption. 2017 WL 4480199 (E.D. Tenn. 2017). The court started by looking at the language of the regulations, which state:

> (a) An employee with total annual compensation of at least $100,000 is deemed exempt under section 13(a)(1) of the Act if the employee customarily and regularly performs any one or more of the exempt duties or responsibilities of an executive, administrative

---

[8] Defendants' Answer to the Third Amended Complaint asserts 39 defenses. Doc. 94 at 48-56. And Defendants assert 22 defenses in the Pretrial Order. Doc. 195 at 13-18.

> or professional employee identified in subparts B, C or D of this part.
>
> (b)(1) "Total annual compensation" must include at least $455 per week paid on a salary or fee basis. <u>Total annual compensation may also include commissions</u>, nondiscretionary bonuses and other nondiscretionary compensation earned during a 52–week period.

29 C.F.R. § 541.601 (emphasis added). Based on this language, the court explained that it would be "illogical" to conclude that commissions constitute payment on a "fee basis" because, if "commissions" constituted a "fee basis," there would be no need to include the word "commissions" in the second sentence of section (b). *Pierce*, 2017 WL 4480199, at *5.

In *Vivar v. Benjamin's Behavioral Health Services*, the court considered the same issue but in the context of the administrative exemption. 2019 WL 6766842 (S.D. Tex. 2019). The court also started by looking at the regulations, which explain that "fee basis compensation" is when:

> [T]he employee is paid an agreed sum for a single job regardless of the time required for its completion. These payments resemble piecework payments with the important distinction that generally a 'fee' is paid for the kind of job that is unique <u>rather than for a series of jobs repeated an indefinite number of times and for which payment on an identical basis is made over and over again</u>.

*Id.* at *3 (quoting 29 C.F.R. § 541.200) (emphasis added). The court noted that the undisputed evidence before it showed that the employee was not paid a "predetermined amount" and instead was paid an amount "tied to billing," and that "[b]illing was the sole task from which [he] earned commissions." The court then reasoned that the facts showed the employee "repeatedly engaged in a series of jobs—billing—<u>for which commissions were paid over and over again</u>." *Id.* (emphasis added). Because the regulations distinguish fee basis payments from commissions, the court concluded that the employer failed to show the employee was compensated on a fee basis. *Id.*

The court agrees with the rationale of these cases.[9] Here, the undisputed material facts show the Team Leads repeatedly engaged in a series of jobs—selling loans—for which commissions of a specific percentage were paid over and over. Repeatedly selling loans for a percent commission is "a series of jobs repeated an indefinite number of times and for which payment on an identical basis is made over and over again," and therefore does not constitute payment on a "fee basis." *See Pierce*, 2017 WL 4480199, at *5; *Vivar*, 2019 WL 6766842, at *2-3; 29 C.F.R. § 541.605(a) ("[G]enerally a 'fee' is paid for the kind of job that is unique rather than for a series of jobs repeated an indefinite number of times and for which payment on an identical basis is made over and over again."). Accordingly, the Court concludes that the Team Leads were not paid on a "fee basis" and that no reasonable jury could conclude otherwise.

## IV.    CONCLUSION

Defendants cannot satisfy their burden to prove that the Team Leads are exempt from FLSA coverage. No reasonable jury could conclude that the Team Leads were paid on a salary or fee basis. Therefore, Plaintiffs are entitled to partial summary judgment on all four of Defendants' purported FLSA exemption defenses.

THE COURT THEREFORE ORDERS that Plaintiff's Motion for Partial Summary Judgment on Defendants' Purported FLSA Exemption Defenses (Doc. 161) is GRANTED.

IT IS SO ORDERED.

---

[9]    The Court acknowledges that the opposite holding was reached in *Herr v. McCormick Grain-Heiman Co., Inc.*, 1994 WL 544513 (D. Kan. 1994), *vacated on other grounds by Herr v. Heiman*, 75 F.3d 1509 (10th Cir. 1996). But the Court finds *Herr* inapplicable and unpersuasive. In *Herr* the court's rulings were ultimately vacated by the Tenth Circuit, albeit on other grounds. Additionally, *Herr* interpreted the 1993 regulations and expressly noted that the regulations did not address commissions as a form of compensation. *See id.* at *3. As noted in *Pierce*, however, the 2004 regulations <u>do</u> address commissions as a form of compensation. Indeed, the highly-compensated employee exemption distinguishes commissions from payment on a fee basis. *See Pierce*, 2017 WL 4480199 at *5; *see also* 29 C.F.R. § 541.601(b)(1) (providing that an employee's total annual compensation "must include at least $455 per week paid on a salary or fee basis," and that total annual compensation "may also include commissions" (emphasis added)). For these reasons, and others, the Court finds *Herr* distinguishable and not persuasive.

Dated: September 14, 2020           /s/ *Holly L. Teeter*
                                    HOLLY L. TEETER
                                    UNITED STATES DISTRICT JUDGE