## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| **BEAU CHARBONNEAU,  on behalf of himself and others similarly situated,** | |
| **Plaintiff,** | |
| **v.** | **Case No. 2:18-cv-02062-HLT-ADM** |
| **MORTGAGE LENDERS OF AMERICA L.L.C., et al.,** | |
| **Defendants.** | |

## MEMORANDUM AND ORDER

Plaintiff Beau Charbonneau brings this putative collective action, on behalf of himself and all others similarly situated ("Plaintiffs"), under the Fair Labor Standards Act ("FLSA") against Defendants Mortgage Lenders of America, L.L.C. ("MLOA"), Philip Kneibert, and Bradley Ives. Before the Court is Defendants' motion to exclude and strike Plaintiffs' expert witness. Doc. 190. Because Dr. Krueger's testimony is reliable and relevant, the Court denies Defendants' motion.

## I.      BACKGROUND

MLOA is a mortgage-lending company that employs over 300 lending professionals at its office in Overland Park, Kansas. MLOA employed Plaintiffs as Team Leads and Loan Officers. MLOA classified all Team Leads as exempt from the FLSA's overtime requirements and did not have Team Leads clock in or out for work or record their work hours. MLOA classified all Loan Officers as non-exempt employees subject to the FLSA's overtime requirements. Loan Officers clocked in and out for work using physical time clocks in MLOA's office, but Plaintiffs allege that MLOA failed to pay Loan Officers for off-the-clock work it directed and expected them to perform outside the office.

Plaintiffs disclosed the only expert in this case, economist Kurt Krueger, Ph.D. ("Dr. Krueger"). Plaintiffs retained Dr. Krueger to prepare an opinion regarding Plaintiffs' unpaid overtime earnings. Defendants did not designate a rebuttal expert. Dr. Krueger's initial report was timely disclosed on March 18, 2020. Dr. Krueger based his calculations on daily timeclock readings and payroll data showing commissions earned and hours worked.

Plaintiffs' compensation was primarily based on commissions from loans produced. Dr. Krueger opined that Plaintiffs' regular rate of pay is equal to total commissions earned over a given pay period divided by hours worked during the same period. Plaintiffs' overtime rate of pay is equal to each Plaintiff's regular rate of pay plus a fifty percent overtime premium. Total weekly overtime pay was calculated to be equal to the overtime rate of pay multiplied by overtime hours.

Dr. Krueger initially did not have all the data for the entire time period. There was no time-punch data for Team Leads because MLOA did not record their work hours, and Plaintiffs allege MLOA failed to record Loan Officers' time for work performed outside the office. There were also instances where the pay data showed that a Loan Officer was paid during a month even though there were no time punches. Additionally, MLOA initially did not produce any time-punch data for the third quarter of 2017 ("2017 Q3 data").

Accordingly, Dr. Krueger made certain assumptions in his initial report. Because Team Leads' time was not recorded, Dr. Krueger assumed every Team Lead worked at least 40 hours per week and worked up to 20 hours of overtime each week. When the pay data showed that a Loan Officer was paid during a month but there were no time punches, Dr. Krueger assumed the Loan Officer worked at least 40 hours. And Dr. Krueger applied a 1.12 multiplier (to account for the missing 2017 Q3 data, which was approximately 12% of the relevant time) to the total damages generated from the weeks with data.

MLOA produced the missing 2017 Q3 data on August 13. Dr. Krueger then produced his supplemental report on September 21. He stated in his supplement that "[s]ince the amount of missing data has been significantly decreased, in this report I was able to make 'pin-point' Plaintiff specific estimates of missing time records using the average weekly hours worked by each Plaintiff during their non-missing payroll periods." Doc. 194-2 at 2. The supplemental report also included sub-calculations (Tables 1A and 2A) to reflect alternate damages periods stemming from a dispute between the parties about the applicable statute of limitations.[1]

## II.     LEGAL STANDARD

Opinions based on scientific, technical, or specialized knowledge are governed by Federal Rule of Evidence 702. Rule 702 states that a witness qualified as an expert by knowledge, skill, experience, training, or education may offer opinion testimony if:

> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b) the testimony is based on sufficient facts or data;
>
> (c) the testimony is the product of reliable principles and methods; and
>
> (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702.

Rule 702 imposes upon the district court a "gatekeeping obligation" to ensure that expert testimony is both relevant and reliable. *Daubert v. Merrell Dow Pharm., Inc*., 509 U.S. 579, 589 (1993); *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 147 (1999). A court's gatekeeping

---

[1]   The parties have an ongoing disagreement about the damages period applicable to all post-certification claims. The Pretrial Order indicates that Plaintiffs intend to file a motion to equitably toll the applicable statute of limitations from the date of the Court's conditional certification order. Doc. 185 at 20. To date, no motion has been filed.

function, however, does not replace the traditional adversary system and the role of the jury. *Cohen v. Lockwood*, 2004 WL 763961, at *2 (D. Kan. 2004). Where there are questions related to the bases and sources of an expert's opinion, these issues go to the weight to be assigned to that opinion—rather than admissibility—and are for the trier of fact to determine. *Id.*

The Tenth Circuit employs a two-part test to determine admissibility. *Conroy v. Vilsack*, 707 F.3d 1163, 1168 (10th Cir. 2013). First, the court determines whether the expert is qualified by knowledge, skill, experience, training, or education to render an opinion. *Id.* Second, the court "must satisfy itself that the proposed expert testimony is both reliable and relevant, in that it will assist the trier of fact." *Id.*

### III.    ANALYSIS

Defendants move to exclude Plaintiffs' expert, Dr. Krueger, and strike his opinions under Rule 702 and *Daubert* as unreliable and not based on sufficient facts or data.[2] Specifically, Defendants argue that: (1) Dr. Krueger's methodology in calculating overtime rate of pay using gross commissions is at odds with the actual method by which Plaintiffs' commissions were determined; (2) his report speculates about the number of hours each Plaintiff worked; (3) he ignored instances when Loan Officers had already been paid for overtime hours; (4) he failed to account for back wages and other compensation paid to 80 Plaintiffs as part of a Department of Labor ("DOL") settlement; and (5) he overestimates Plaintiffs' damages by failing to account for the varying statutes of limitation that should be applied to each Plaintiff. Because the Court finds that Dr. Krueger's opinions are reliable and relevant, the Court denies Defendants' motion.

---

[2]    Defendants do not challenge Dr. Krueger's qualifications. The Court has reviewed his background and is satisfied he is qualified to render his opinion.

> **A.     Dr. Krueger's methodology to calculate overtime is reliable because he used the same formula MLOA used to calculate overtime.**

Defendants are principally concerned with Dr. Krueger's methodology for determining Plaintiffs' commissions. Plaintiffs were not paid an hourly rate and were instead compensated on a commission basis. As a result, their regular rate of pay—and thus the amount of overtime compensation they were entitled to—varied from week to week based upon their hours worked and their commissions.[3] Dr. Krueger calculated Plaintiffs' regular rate of pay using gross commissions over a given pay period divided by hours worked during the same period. He then calculated overtime rate of pay as equal to each Plaintiff's regular rate of pay plus a fifty percent overtime premium. Total overtime pay was then equal to the overtime rate of pay multiplied by overtime hours. Dr. Krueger's methodology can be summarized by the following formula: (Gross Earned Commissions / Total Hours) * Overtime Hours * 50%.

But Defendants argue that Plaintiffs' gross commission income does not represent the commission amount actually paid to Plaintiffs. This is because Plaintiffs' compensation agreements provide:

> Commission Compensation is not earned until all deductions are made for Hourly Wage, shortages for uncollected fees, and uncollected costs for credit reports, pursuant to the formula for calculating commissions.

Doc. 145-7. Thus, Defendants argue, a commission is not earned until deductions agreed to by the parties for uncollected fees and costs are made. Accordingly, Dr. Krueger's formula should have used net commissions (the amount left after subtracting debits for uncollected fees and costs from

---

[3]   *See* 29 C.F.R. 778.107 ("The general overtime pay standard in section 7(a) requires that overtime must be compensated at a rate not less than one and one-half times the regular rate at which the employee is actually employed."); 29 C.F.R. 778.109 ("[T]he regular hourly rate of pay of an employee is determined by dividing his total renumeration . . . in any workweek by the total number of hours worked by him in that workweek for which such compensation was paid."); 29 C.F.R. 778.117 (explaining that commissions "are payments for hours worked and must be included in the hourly rate").

gross commissions) to calculate Plaintiffs' overtime rate of pay. Defendants assert that by using

gross commissions, Dr. Krueger improperly inflated the damages projections.

But Defendants' argument fails to account for the fact that Dr. Krueger used the exact same

formula MLOA used in calculating overtime. In their Response, Plaintiffs attached a sampling of

commission statements for eight Loan Officers. As an example, Casey Phillips's commission

spreadsheet displays the following information:

| Earned Commission | Previously Billed | Less Hourly Wages | Less Appraisals, Credit Reports EPO/EPD | Commission Due | Overtime Due | Total Earnings |
|---|---|---|---|---|---|---|
| 2,454.70 | (915.17) | (920.17) | (185.51) | 433.27 | 52.19 | 485.46 |

The commission spreadsheet also contains the following "OT Hours Calculation":

| Total Hrs Worked | 127 | |
|---|---|---|
| | | |
| | Total OT Hours | |
| OT Hours Calculation  (Earned Comm / Total Hrs) * OT Hrs * 50% | 5.40 | 52.19 |

Doc. 194-10 at 1.

While MLOA's "OT Hours Calculation" does not specify whether MLOA used gross or

net commissions, it is apparent that MLOA calculated overtime using gross commissions. As set

forth above, Mr. Phillips's gross commission for the pay period was $2,454.70, while his net

commission was $433.27. It can be determined that MLOA applied its overtime formula using

gross commission because: $(2,454.07 / 127) * 5.40 * .5 = 52.19$. This amount ($52.19) is precisely

the amount of overtime MLOA paid Mr. Phillips during the pay period. The same formula was

used in the other commission statements cited by Plaintiffs.

Thus, in practice, MLOA calculated Loan Officers' overtime pay using gross commissions, not net commissions.[4] Dr. Krueger used the exact same formula and methodology. Thus, it is disingenuous for Defendants to now argue that "Dr. Krueger's methodology is at odds with the actual method by which the Plaintiffs' commissions were determined, and hence does not 'fit' the facts of this case." Doc. 191 at 6. The actual method used by MLOA to calculate overtime, as demonstrated above, was to use gross commissions. Dr. Krueger did precisely that. His methodology is therefore reliable and relevant.

**B.      Dr. Krueger's assumption about hours worked per week is reasonable.**

Defendants argue that Dr. Krueger unreasonably assumed that every Plaintiff worked at least 40 hours per week and up to 20 hours of overtime each week. But it is not true that Dr. Krueger made this assumption for every Plaintiff. This assumption was only universally made with respect to the Team Leads because MLOA did not maintain time-punch data for Team Leads. While Dr. Krueger's chosen method of calculating damages for the Team Leads may be imperfect, it is not impermissible. *See Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 687-88 (1946); *Scalia v. Paragon Contractors Corp.*, 957 F.3d 1156, 1164 (10th Cir. 2020) ("*Mt. Clemens* seeks to prevent an employer from benefitting from its failure to keep records."). To the extent Dr. Krueger's methodology may overestimate actual damages on this point,[5] this is a matter for cross-

---

[4]   In the Reply, Defendants assert that Dr. Krueger should not have ignored the commission agreements' contractual terms because the commission agreements define Plaintiffs' entitlement to wages, "as the Court recently ruled when it entered summary judgment . . . ." Doc. 202 at 8. In the referenced Order, the Court granted summary judgment on Plaintiff Charbonneau's breach of contract claim for improper deductions. Doc. 172 at 9-14. The Court's ruling was based, in part, on language in the commission agreements that contemplated and authorized MLOA to make "adjustments" or "deductions" from Plaintiff's commissions for uncollected fees and costs. *Id*. at 11-12. The Court did not rule that the commission agreements determine how Plaintiffs' regular rate of pay or overtime pay must be calculated, or whether gross or net commissions must be used.

[5]   For example, Dr. Krueger's methodology fails to account for the fact that most of the individual Team Leads likely took a vacation in one or more weeks during the year, and thereby were not entitled to some amount of overtime for every single week.

examination—not disqualification. *See, e.g.*, *McKesson Info. Sols. LLC v. Trizetto Grp., Inc.*, 2006 WL 5207233, at *1 (D. Del. 2006) (denying *Daubert* motion and stating that while the expert "appears to have used facts that ratchet up the damages figure to an extreme, that is fodder for cross examination, not for a *Daubert* analysis").

With regards to the Loan Officers, Dr. Krueger used actual time-punch data in weeks where the data was available. Dr. Krueger only assumed 40 clocked hours for Loan Officers when the pay data showed that a Loan Officer was paid during a month but there were no time punches. This assumption only affected 1.63% of Loan Officers' combined workweeks.[6] Thus, the assumption has a minimal effect on overall damages and can be properly addressed as a credibility argument on cross-examination. Accordingly, Dr. Krueger's assumptions are not disqualifying. *See State Farm Fire & Cas. Co. v. Bell*, 30 F. Supp. 3d 1085, 1107 (D. Kan. 2014) (denying *Daubert* motion and noting that "defendant's concerns about the underlying assumptions of [the expert's] opinion are better challenged through cross-examination than in determining the admissibility of expert testimony").

### C. Dr. Krueger's opinion adequately addresses overtime previously paid.

Defendants next argue that Dr. Krueger failed to account for overtime hours that MLOA paid. Defendants complain that Dr. Krueger's initial report considered any hour worked over 40 to be a "damage hour"—even in situations where overtime was actually paid and recorded as "retro overtime" in MLOA's pay records. However, as Defendants concede, Dr. Krueger supplemented his report before his deposition and accounted for all retro overtime purportedly paid for all Plaintiffs. The fact that Dr. Krueger's report does not specifically state that this amount should be

---

6  Because MLOA initially failed to produce 2017 Q3 data, Dr. Krueger originally applied a 1.12 multiplier to the total damages calculation to account for the approximately 12% missing weeks of data. However, following MLOA's production of the 2017 Q3 data, Dr. Krueger was able to largely eliminate the 40-hour assumption for Loan Officers along with the 1.12 multiplier in his supplemental report.

subtracted from his total damage calculations is of no consequence. Defendants are free to address this issue on cross-examination and argue that an offset should be made for overtime hours already paid. *Cf. Gray v. Perry*, 2019 WL 2992007, at *19 (C.D. Cal. 2019) (rejecting *Daubert* challenge to expert's opinion regarding profits when expert failed to subtract defendant's costs from revenue as the purported flaw goes to weight of expert's testimony and can be addressed on cross-examination).

### D.      Dr. Krueger's opinion is not required to account for Defendants' waiver defense.

Defendants argue that Dr. Krueger's opinion is unreliable because he failed to account for wages already paid to some Plaintiffs as part of the DOL settlement. Defendants assert a waiver defense because 80 Plaintiffs participated in a DOL-approved settlement for off-the-clock work performed between May 2014 and May 2016. The signed settlements provide that "acceptance of this payment . . . means that you have given up the right to bring a suit on your own behalf for the payment of such" unpaid wages. Doc. 191-16. But Dr. Krueger is not required to preemptively accept and account for Defendants' waiver defense.

Defendants fail to cite any authority that requires Plaintiffs' expert to preemptively account for a defense that Defendants may assert.[7] Defendants are certainly allowed to attack Dr. Krueger's damage calculations at trial through cross-examination and by introducing its own competing evidence and defenses. But Dr. Krueger's opinions are not unreliable simply because he chose not to affirmatively account for Defendants' waiver defense. *See Anderson v. Hunte Delivery Sys., Inc.*, 2012 WL 1392918, at *4 (M.D. Ala. 2012) ("The Court finds no affirmative duty upon expert witnesses to consider a legal doctrine that is to be raised by the Defendants as a defense."); *see*

---

[7]     Defendants did not seek partial summary judgment on this issue, and the Court has not ruled one way or the other whether there has been any waiver.

*also Bell*, 30 F. Supp. 3d at 1097 ("[A]n expert's decision not to consider certain facts in formulating his opinions is a matter for cross-examination, and not exclusion, because that decision goes to the weight of the testimony, not its admissibility.").

### E.      Dr. Krueger did not ignore the statute of limitations.

Finally, Defendants argue Dr. Krueger's assumption about the statute of limitations is flawed as a matter of law, which renders his opinion unreliable. But Dr. Krueger did not fail to account for the statute of limitations as Defendants assert. Dr. Krueger's initial report used a tolled statute of limitations from the date of the Court's conditional certification order as an outside date for his damages calculations. As a result, Dr. Krueger initially assumed that nearly every Plaintiff is entitled to damages dating back to December 6, 2015. Defendants argue that the Court has not entered a tolling order, and thus the three-year limitations period for each Plaintiff is dependent on the date that person opted into the action. Here, most Plaintiffs filed their consents after December 6, 2018. Thus, Defendants argue, Dr. Krueger's assumption that nearly every Plaintiff's damages began on December 6, 2015 improperly overstates total damages.

The Court is not persuaded. Dr. Krueger's supplemental report addresses this issue. Specifically, it presents total damages using both parties' preferred damages periods. Table 1A contains a summary of overtime damages using Plaintiffs' theory—damages for most Plaintiffs dating back to December 6, 2015. Doc. 194-2 at 4. Table 2A then contains a summary of overtime damages using Defendants' preferred damages period based on each Plaintiff's opt-in date. *Id*. at 10. Defendants concede that the supplemental report adds a "second analysis," addressing the concern about the statute of limitations. But Defendants argue that this "second analysis" is based on different assumptions than those present in his initial report. However, Defendants do not identify which assumptions were different, or how the different assumptions render one or both of

Dr. Krueger's alternate calculations unreliable. It appears that Dr. Krueger used the same formula in both tables but over alternative damages periods.

Thus, Dr. Krueger did not fail to account for the statute of limitations as Defendants assert. He specifically offered his opinion as to damages under Defendants' preferred damages period based on the opt-in date. His opinions are not unreliable simply because he also offered his opinion under Plaintiffs' tolling theory.

## IV.     CONCLUSION

Accordingly, the Court finds that Dr. Krueger's opinions are reliable and relevant. Defendants' objections go to the weight to be assigned to Dr. Krueger's opinion—rather than admissibility—and are for the trier of fact to determine. *Cohen*, 2004 WL 763961, at *2.

THE COURT THEREFORE ORDERS that Defendants' Motion to Exclude and Strike Plaintiffs' Expert Witness (Doc. 190) is DENIED.

IT IS SO ORDERED.

Dated: January 11, 2021                     /s/ *Holly L. Teeter*
                                            HOLLY L. TEETER
                                            UNITED STATES DISTRICT JUDGE