**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**

**BEAU CHARBONNEAU,**

on Behalf of Himself
and All Others Similarly Situated,

    Plaintiff,

 v.

**MORTGAGE LENDERS OF**
**AMERICA L.L.C., et al.**

    Defendants.

**CASE NO.: 2:18-CV-2062-HLT-ADM**

JURY TRIAL DEMANDED

**PLAINTIFFS' UNOPPOSED MOTION TO APPROVE FLSA COLLECTIVE**
**ACTION SETTLEMENT AND INTEGRATED MEMORANDUM IN SUPPORT**

  Plaintiff Beau Charbonneau, on behalf of himself and others similarly situated, with

the consent of Defendants Mortgage Lenders of America, L.L.C. ("MLOA"), Philip

Kneibert, and Bradley Ives (collectively "Defendants"), respectfully moves this Court for

an order approving the parties' FLSA Settlement Agreement (attached as Exhibit 1).[1]

  The parties reached this Settlement Agreement only weeks before trial, after

vigorously litigating this case for more than three years. This Agreement is the product of

---

[1] By separate motion, Plaintiffs and counsel also seek the Court's approval of Plaintiffs'
reasonable attorneys' fees, expenses and costs incurred in this matter, as contemplated in
the parties' Settlement Agreement. Throughout this Motion, Plaintiff uses initial caps to
reference terms defined in the Settlement Agreement and refers the Court to that agreement
and its defined terms for consistency.

extensive, on-going, arm's-length negotiations following a mediation with Magistrate Judge O'Hara, which was preceded by two unsuccessful private mediations. This Settlement is informed by significant discovery, extensive briefing on numerous legal issues critical to the case, and expert damage calculations. When joining this case, each of the 166 Loan Officer and Team Lead Opt-in Plaintiffs delegated authority to Plaintiff Beau Charbonneau to litigate their claims and make settlement decisions on their behalf. He fought hard to obtain this exceptional result. Each Plaintiff has been personally notified of this favorable settlement and given an opportunity to express concerns or obtain additional information from Plaintiff's counsel. This Settlement is unquestionably a fair and reasonable resolution of a bona fide FLSA dispute, meriting this Court's approval.

In support of this motion, Plaintiffs state as follows:

## I.   **PROCEDURAL BACKGROUND.**

Because the parties appreciate the Court's familiarity with the facts and history of this case, a limited overview is set forth below.

Plaintiff Charbonneau ("Plaintiff") filed this federal Fair Labor Standards Act ("FLSA") collective action lawsuit on February 5, 2018, alleging claims that: (i) he and other Team Leads were unlawfully classified as FLSA "exempt" and unlawfully denied overtime pay; and (ii) he and other Loan Officers were unlawfully denied overtime pay for off-the-clock work. (ECF No. 1).[2]   MLOA answered on April 2, 2018, asserting several

_____

[2] Plaintiff also asserted additional Rule 23 claims based on Kansas state law that were later

affirmative defenses and denying it was liable under any of Plaintiff's claims. (ECF No. 4). Plaintiff filed an amended complaint on April 17, 2018, which MLOA moved to partially dismiss on May 1, 2018. (ECF Nos. 10, 13-14). Plaintiff responded to MLOA's motion to dismiss on May 22, 2018 and filed a second amended complaint on May 23, 2018. (ECF Nos. 21 and 23). On June 6, 2018, MLOA answered Plaintiff's second amended complaint, again denying all liability, and simultaneously filed another partial motion to dismiss. (ECF Nos. 27 and 28). The Court denied MLOA's partial motions to dismiss after full briefing from the parties. (ECF Nos. 44, 40, 38, 35, 26).

Plaintiff moved for conditional certification of a company-wide collective action pursuant to FLSA § 16(b) on June 27, 2018. (ECF Nos. 36-37). MLOA opposed conditional certification, and the parties fully briefed Plaintiff's motion in the summer of 2018. (ECF Nos. 39 and 41). On December 6, 2018, the Court granted Plaintiff's conditional certification motion. (ECF No. 45). The following day, MLOA's initial counsel withdrew and were replaced by Defendants' present counsel. (ECF No. 46).

Plaintiff then utilized a third-party administrator to send Court-approved notice and consent forms to current and former employees in the following certified collective classes:

- All persons who are, have been, or will be employed by Defendant as "Team Leads," "Team Leaders," and other individuals with similar job titles within

---

dismissed and will not be discussed in detail here.

the United States at any time during the last three years through the entry of
judgement in this case.

- All persons who are, have been, or will be employed by Defendant as "Loan
  Officers," "Mortgage Loan Officers," "Entry Level Loan Officers," and
  other individuals who originated loan products with similar job titles within
  the United States at any time during the last three years through the entry of
  judgment in this case.

(Declaration of Brett Davis, "Davis Decl.", attached as Exhibit 2, ¶ 5).  The Court-approved
notice and consent forms were sent to approximately 450 current and former MLOA
employees.  *Id.* at ¶ 6.  A total of 170 individuals, including Plaintiff Charbonneau, filed
consents to join this litigation ("Opt-in Plaintiffs").  *Id.* This included twenty-five
individuals employed as Team Leads during the relevant three-year statutory period, and
145 additional individuals employed only as Loan Officers and/or Loan Specialists during
that period.  *Id.* Three Loan Officer Opt-in Plaintiffs withdrew their consents during
litigation, leaving 167 total Plaintiffs in this lawsuit. *Id.*

Prior to (and following) the close of the opt-in period, the parties met and conferred
in detail concerning a proposed discovery plan and scheduling order.  *Id.* at ¶ 7.  This
process was more intensive than in smaller, less complex cases because the parties had
widely divergent views on the scope of discovery: MLOA requested expansive discovery
from all Opt-in Plaintiffs, whereas Plaintiffs proposed representative discovery and

objected to collective-wide discovery (noting the exponential increase in time and expense it would create). *Id.* Ultimately, at the scheduling conference on April 18, 2019, the Court authorized written discovery to all Opt-in Plaintiffs (although on a lesser scale than MLOA requested). *Id.*

Both parties served and responded to written discovery requests over the next several months. *Id.* at ¶ 8. For Plaintiffs, this meant responding to approximately 160 separate sets of individualized interrogatories and requests for production of documents, and reviewing voluminous time, pay, and personnel records and documents. *Id.* Based on MLOA's discovery responses, Plaintiffs moved to amend the complaint to add FLSA claims against MLOA's former co-owners and officers, Bradley Ives and Philip Kneibert, which the Court granted. (ECF Nos. 91-92). Plaintiffs filed a third amended complaint on August 22, 2019; MLOA answered on September 5, 2019 and Kneibert and Ives answered on November 26, 2019, with all Defendants denying liability and asserting multiple affirmative and other defenses. (ECF Nos. 93, 94 and 104). The parties also engaged in the tedious process of negotiating and agreeing on custodians and search terms for ESI discovery. (Exh. 2, Davis Decl., at ¶ 9).

As directed by the Court, the parties participated in mediation with a private mediator on September 13, 2019, which was unsuccessful. *Id.* at ¶ 10. Subsequently, Plaintiffs conducted additional extensive discovery on central issues, including serving over 1,800 requests for admission targeted at Defendants' affirmative defense that Team

Leads were exempt from the FLSA's overtime requirement. *Id.* at ¶ 11. The parties also continued work to obtain Defendants' ESI production. Because of issues with Defendants' ESI vendor, that production was delayed, which necessitated an Amended Scheduling Order. *Id.* at ¶ 12; (ECF No. 110). Eventually, MLOA produced over 432,000 ESI documents (or 2.5 million pages) and produced nearly 2,560,000 pages of documents in total during discovery. (Exh. 2, Davis Decl., at ¶ 13). Plaintiffs' review of this discovery required significant attorney time, as well as the use of vendor-provided storage and document review database support. *Id.*

Following Defendants' initial ESI production, the parties conducted multiple depositions. *Id.* at ¶ 14. Plaintiffs deposed seven key defense witnesses, including Kneibert and Ives, four management witnesses, MLOA's former HR Director, and MLOA's former HR Coordinator; these depositions were in addition to the Rule 30(b)(6) depositions Plaintiff previously conducted on various topics. *Id.* Defendants deposed Plaintiff Charbonneau and eight other Opt-in Plaintiffs. *Id.* Plaintiff also retained and disclosed a Ph.D. economist as an expert witness on damages issues, produced his collective-wide and individual damage calculations, report and supplement, and prepared and produced him for deposition. *Id.* at ¶ 15.

On June 1, 2020, after discovery closed, Plaintiffs filed a motion for partial summary judgment on behalf of all Team Leads concerning Defendants' purported FLSA exemption defenses. (ECF Nos. 161-162). On June 3, 2020, the parties held a second

mediation with mediator Michael Russell, Esq. from Nashville, Tennessee. Again, mediation failed. (Exh. 2, Davis Decl., at ¶ 16). Soon after the second mediation, Defendants moved to amend their answers—after the close of discovery—to assert a new defense that *all* of the collective-action Plaintiffs were exempt from overtime under the "retail sales exemption" in FLSA § 7(i). (ECF No. 163). The parties fully briefed Plaintiffs' partial summary judgment motion and Defendants' motion to amend to add a new exemption defense. (ECF Nos. 170, 171, 179, 180). Given Defendants' pending motion to amend and the potential need for additional discovery if granted, the Court cancelled the previously set scheduling conference to discuss pre-trial deadlines. (ECF No. 178).

On July 28, 2020, the Court denied Defendants' motion to add the 7(i) exemption defense and set a deadline for the parties to submit their proposed pretrial order and a date for the pre-trial conference. (ECF No. 181). The parties then spent significant time working on the proposed pretrial order, exchanging and discussing multiple draft proposals, and attempting to reach factual and evidentiary stipulations. (Exh. 2, Davis Decl., at ¶ 17). After submitting their proposed pretrial order, the parties participated in an initial pretrial conference with the Court on August 19, 2020. *Id.* The Court directed the parties to revise certain portions of the proposed pretrial order and scheduled a second pretrial conference on September 4, 2020. *Id.* The Court then entered the Pretrial Order on September 9, 2020 which set a February 22, 2021 trial date, deadlines for additional briefing, and a deadline for plaintiffs' damages expert to supplement his report and

calculations in light of newly-produced time data from Defendants. (ECF Nos. 182-185, 187).

On September 14, 2020, this Court granted Plaintiffs' partial summary judgment motion, holding Defendants' purported Team Lead exemption defenses fail as a matter of law. (ECF No. 186). On September 21, 2020, Plaintiffs served their expert's supplemental report and calculations. (Exh. 2, Davis Decl., at ¶ 18). On October 2, 2020, Defendants filed a motion to decertify Plaintiff's FLSA claims. (ECF Nos. 188 and 189). On October 23, 2020, Defendants filed a motion to exclude and strike Dr. Krueger's expert damage calculations and testimony. (ECF Nos. 190 and 191). The parties extensively briefed these motions, and the Court granted Plaintiffs leave to file a surreply to both motions. (ECF Nos. 192, 194, 199-203, 205).

The Court held a status conference with the parties on December 23, 2020 to address, among other things, trial issues, potential Covid-19 implications and further mediation. (ECF Nos. 206-207). On December 29, 2020, the Court entered a Trial Order which included a new trial setting of June 7, 2021 and required the parties to conduct further mediation with a Magistrate Judge. (ECF No. 209). On January 11, 2021, the Court denied Defendants' motion to decertify the collective actions, rendering final the certification of Loan Officer and Team Lead collective claims for trial, and also denied Defendants' motion to exclude Plaintiff's expert witness (ECF Nos. 212-213).

On March 4, 2021, the parties participated in a third and final, several-hour mediation with Magistrate Judge O'Hara.  (Exh. 2, Davis Decl., at ¶ 19).  While the parties did not reach a settlement during the mediation, significant progress occurred.  *Id.* Following mediation, the parties continued negotiations and ultimately reached a mutual agreement for resolution.  *Id.*

Plaintiff's counsel has performed a comprehensive evaluation and investigation of the facts and law relating to the claims asserted in this case.  *Id.* at ¶ 20.  This includes, for example, analysis of issues and facts thoroughly developed through extensive discovery, such as the commissions, earnings, pay records, time punch data, work weeks and contractual agreements for each of the collective action Plaintiffs, the retention of an economic expert witness to fully and fairly evaluate potential damages in light of that evidence, and documents and testimony related to Defendants' defenses.  *Id.* Based on the evaluation of a number of factors, and recognizing the risks, costs, uncertainty and delay of continued litigation balanced against the benefits of settlement now, Plaintiff and his counsel believe this Settlement Agreement is in the best interests of Plaintiff and each of the Opt-in Plaintiffs and represents a fair, reasonable, and adequate resolution of the claims in this lawsuit. *Id.* at ¶ 21.  Defendants continue to deny Plaintiff's allegations in this case, but without admitting any liability or responsibility for damages, have agreed to settle the case to avoid the burden, expense, and uncertainty of continuing litigation.  *Id.* at ¶ 22.

II.     **SETTLEMENT AGREEMENT TERMS.**

The Settlement Agreement is attached as Exhibit 1 for the Court's review.  The key terms of the parties' Settlement Agreement require Defendants to create a settlement fund in the amount of $3,900,353.20, all of which will be paid to the collective action Plaintiffs based upon an equitable formula. This formula accounts for each Plaintiffs' eligible FLSA workweeks during the three-year statute of limitations period and is informed by Dr. Krueger's expert damage calculations based on each Plaintiff's earnings, time-punch data, and average, estimated overtime hours. The Settlement Agreement provides that no Plaintiff will receive less than $500.00.  The Settlement Agreement also provides for a modest service award of $500 to two Plaintiffs who prepared and appeared for deposition at Defendants' request (to the benefit of the collective) but whose respective eligible settlement payments will be less than $3,000.00.  Plaintiff Beau Charbonneau did not request and will not receive a service award.  The collective action Plaintiffs will release the claims asserted in this case.  In addition to the Settlement Sum, Defendants will separately pay Plaintiffs' reasonable attorneys' fees, expenses and costs approved by this Court on separate motion.

III.    **ARGUMENT.**

A.      **This Court Should Approve The Parties' Settlement.**

An FLSA collective action is not a class action—individuals participating affirmatively choose to be bound and represented by counsel, and there are no absent class

members whose claims are being settled. *See Brown v. Money Tree Mortgage, Inc.*, 222 F.R.D. 676, 678 (D. Kan. 2004); *Degidio v. Crazy Horse Saloon and Restaurant, Inc.,* 880 F.3d 135, 137 fn 1 (4th Cir. 2018).   Therefore, the reasons for judicial scrutiny of class action settlements are not present in FLSA opt-in settlements because no absent class members are bound by the case's outcome. *See Wagner v. Loew's Theatres, Inc.*, 76 F.R.D. 23, 24-25 (M.D.N.C. 1977); *Maguire v. Trans World Airlines, Inc.*, 55 F.R.D. 48, 49 (S.D.N.Y. 1972).   Unlike Rule 23 class settlements, FLSA settlements are not subject to a two-stage process of preliminary approval followed by notice to the class and final approval, and no final fairness hearing is required. *See Walton v. United Consumers Club, Inc.*, 786 F.2d 303, 306 (7th Cir. 1986).

However, courts have recognized that FLSA settlements, in order to effectuate a release, must generally be presented to the court for "review and a determination whether the settlement is fair and reasonable." *Gardner v. Sprint/United Mgmt. Co.*, No. 08-2559, 2009 WL 1917408, at *1 (D. Kan. July 2, 2009) (citing *Lynn's Food Stores, Inc. v. United States,* 679 F.2d 1350, 1353 (11th Cir.1982)); *see Koehler v. Freightquote.com, Inc.,* No. 12-2505-DDC-GLR, 2016 WL 3743098, at *2 (D. Kan. July 13, 2016).   This review includes finding that "the litigation involves a bona fide dispute and that the proposed settlement is fair and equitable" to the parties. *Koehler,* 2016 WL 3743098, at *2 (citation omitted); *Lynn's Food Stores,* 679 F.2d at 1353. Moreover, the settlement agreement must

contain an award of reasonable attorneys' fees and costs. *Koehler,* 2016 WL 3743098, at *3 (citations omitted).

The standard for court approval is straightforward: a district court should approve a fair and reasonable settlement if it was reached as an arm's length resolution of contested litigation to resolve a bona fide dispute under the FLSA. *Lynn's Food Stores,* 679 F.2d at 1352-54. First, the court must be satisfied that the settlement was the product of "contested litigation." *Id.* at 1353. Second, the court must inquire as to whether the settlement involves a fair and reasonable resolution of a bona fide FLSA dispute between the parties. *Id.* Courts typically rely on the adversarial nature of a litigated FLSA case that resolves through arm's-length negotiations as *indicia* of fairness. *Id.* at 1354. Further, when the proposed settlement reflects a reasonable compromise over contested issues, settlement approval promotes the policy of encouraging settlement of litigation. *Koehler*, 2016 WL at *2; *Lynn's Food Stores,* 679 F.2d at 1354. Given the hotly contested nature of this case and the quality of the proposed settlement, this Court should readily conclude the parties' settlement agreement is a fair and reasonable resolution of a *bona fide* dispute in contested litigation.

### 1.   The Proposed Settlement Is The Product Of Contested Litigation.

There is no question the proposed settlement is the product of contested litigation. *See* Docket Sheet. This case has been vigorously litigated for over three years. (Exh. 2, Davis Decl., at ¶ 23). At every turn—from Plaintiff's initial complaint and subsequent amendments, through the pretrial order and conference, through multiple mediations and

settlement negotiations—Defendants have vehemently denied liability and asserted an array of defenses. *Id.* The parties fully briefed (and this Court decided) several motions on key, contested legal issues, including multiple dispositive motions and FLSA certification motions. *Id.* at ¶ 24. The parties conducted extensive discovery, which included thousands of written discovery requests, production of over 2.5 million pages of documents, and eighteen depositions. The parties participated in three intensive mediations with three different mediators. *Id.* at ¶ 25 Plaintiff's counsel conducted a thorough investigation, speaking with Opt-in Plaintiffs about their work experiences and unpaid overtime issues. *Id.* at ¶ 26 Against this backdrop, the parties had a full opportunity to analyze the pertinent factual and legal issues and assess the strengths and weaknesses of the claims and defenses at issue before reaching a proposed settlement agreement. *Id.* at ¶ 27. The proposed settlement is the product of contested litigation.

### 2.    The Proposed Settlement Fairly and Reasonably Resolves A Bona Fide Dispute.

Likewise, there is no question the proposed settlement is the product of extensive arm's-length negotiations by experienced counsel and provides meaningful and certain monetary relief to all collective action Plaintiffs. It also eliminates the real, inherent risks both sides would bear if this complex litigation continued to resolution by jury trial on the merits. Under these circumstances, a presumption of fairness attaches to the proposed settlement. *See Lynn's Food Stores*, 679 F.2d at 1354 (courts rely on the adversarial nature of a litigated FLSA case resulting in settlement as indicia of fairness); *see also In re*

*BankAmerica Corp. Securities Litig.*, 210 F.R.D. 694, 700 (E.D. Mo. 2002) ("In evaluating the settlement, the Court should keep in mind the unique ability of class and defense counsel to assess the potential risks and rewards of litigation; a presumption of fairness, adequacy and reasonableness may attach to a class settlement reached in arms-length negotiations between experienced, capable counsel after meaningful discovery") (citations omitted).

This hard-fought case was settled only after multiple mediations and the extensive litigation history addressed above. This case clearly concerns a bona fide dispute under the FLSA. Even now, the parties disagree about the merits of Plaintiffs' collective claims and the viability of Defendants' defenses, as well as many underlying factual allegations and the likely trial evidence. (Exh. 2, Davis Decl., at ¶ 28). Serious questions of fact and law exist which place the ultimate outcome of this case in doubt for both parties. *Id.* With respect to the Team Lead claims, for example, although Plaintiffs established liability by obtaining summary judgment on Defendants' purported exemption defenses, open questions remain concerning whether Defendants' actions were willful (and therefore subject to the FLSA's three-year limitations period versus a two-year period) and whether Defendants acted in good faith (and therefore may avoid liquidated damages). *Id.* at ¶ 29. These same obstacles exist for the Loan Officer claims. *Id.*

 Defendants also raised a number of legal and factual defenses to the Loan Officer claims that do not apply to the Team Lead claims. *Id.* at ¶ 30. Defendants, for example,

claim that Loan Officers contractually promised (and were trained) to record all hours worked, and to verify that their timecards accurately reflect all hours worked, and therefore, the actual time records belie alleged off-the-clock work. *Id.* at ¶ 31 Defendants also claim any off-the-clock work was *de minimis* (and therefore not compensable under the FLSA) particularly since Loan Officers did not have remote access to Defendants' computer system and programs. *Id.* at ¶ 32. Defendants also contend some Loan Officers waived their damage claims by virtue of a prior Department of Labor settlement. *Id.* at ¶ 33. Defendants also claim that many Loan Officers routinely recorded much less than 40 hours per workweek, and questions remain about when, whether, by whom and to what extent Defendants were aware of off-the-clock work outside the office. *Id.* at ¶ 34.

Further, setting aside these potential risks, even if Plaintiffs prevail on liability at trial (in one or both of the certified FLSA collectives), they will still face Defendants' robust arguments and cross-examination against the extent of damages. *Id.* at ¶ 35. As they have throughout this litigation, Defendants will question the number of overtime hours worked by Team Leads and will strenuously question the number of off-the-clock hours worked by Loan Officers and the nature of that alleged work. *Id.* Resolving these issues, as well as many others in this case, will require credibility determinations by the jury, which are inherently risky and impossible to predict with certainty. *Id.*

The parties' proposed settlement agreement eliminates all of these risks. *Id.* at ¶ 36. And, the settlement provides significant and immediate monetary relief to all Plaintiffs

now. *Id.* The settlement provides $3,900,353.20 to Plaintiffs. *Id.* Settlement payments to each individual Plaintiff will be distributed based on an equitable formula guided by Dr. Krueger's expert damage calculations.[3] *Id.* at ¶ 37. Plaintiff and other Team Leads will receive payment based on approximately fourteen (14) hours of overtime work per week (liquidated) during a three-year limitations period. *Id.* at ¶ 38. Loan Officer Plaintiffs, including Loan Specialists, will receive payment based on approximately five (5) hours of off-the-clock work perk week (liquidated) during a three-year limitations period. *Id.*[4] This settlement results in an average payment to each Plaintiff of $23,355 and approximately $264 per eligible workweek. *Id.* at ¶ 40.

This is significant and meaningful relief warranting settlement approval. And the relief to the collective action Plaintiffs is certain and prompt. Conversely, if settlement is not approved, any ultimate recovery through litigation may not occur for many more months (or years), after further litigation and appeal. *Id.* at ¶ 41. Furthermore, any ultimate

---

[3] These calculations incorporate the actual underlying earnings data for each Plaintiff and the actual underlying time-punch data for each Loan Officer Plaintiff. This Court scrutinized these calculations in connection with Defendants' *Daubert* motion and concluded "that Dr. Krueger's opinions are reliable and relevant." (ECF No. Doc 213, Order Denying Exclusion of Dr. Krueger's Expert Report at p. 11).

[4] Plaintiff Charbonneau and all Team Leads had remote VPN access, enabling after-hours and weekend work beyond what is possible for Loan Officers with cell phone access. This, coupled with Defendants' requirement that Team Leads are readily available to assist every Loan Officer on their team, informed the parties' agreement to this equitable distribution between the Team Lead and Loan Officer collectives. *Id.* at ¶ 39.

recovery through continued litigation, trial and/or appeal may well be less than the proposed settlement agreement, or it may be nothing at all. For these reasons, settlement approval now is highly favored. *See, e.g., In re BankAmerica*, 210 F.R.D. 694, 701 (E.D. Mo. 2002) ("As courts have recognized, when considering settlement agreements they should consider the vagaries of litigation and compare the significance of immediate recovery by way of the compromise to the mere probability of relief in the future, after protracted and expensive litigation. In this respect, it has been held proper to take the bird in the hand instead of a prospective flock in the bush."); *Little Rock School District v. Pulaski Cnty. Special School District No. 1*, 921 F.2d 1371, 1388 (8th Cir. 1990) ("A strong public policy favors [settlement] agreements, and courts should approach them with a presumption in their favor."). Therefore, this Court should conclude the proposed settlement reflects a fair and reasonable resolution of a *bona fide* dispute over FLSA coverage and approve the settlement.[5]

---

[5] This case is unlike any case in this District in which FLSA settlement approval was denied. While the judicial landscape is littered with settlement denials in *pre*-discovery, *pre*-conditional certification, *pre*-notice and/or *pre*-opt-in cases in which putative settlement participants lack notice of the claims and/or proposed settlement, those cases are a far cry from this case. Here, all Opt-in Plaintiffs received notice of the claims, filed consents to join, expressly delegated authority to Plaintiff Charbonneau to litigate and resolve their claims, were subjected to individualized discovery requests, achieved final collective certification for trial, and were personally notified of this favorable Settlement. (Exh. 2, Davis Decl., at ¶ 42). Moreover, Plaintiffs' counsel contacted every Opt-in Plaintiff about this Settlement and provided an opportunity to express concerns or objections. *Id.* at ¶ 43. Specifically, Plaintiffs' counsel personally spoke with 130 Opt-in Plaintiffs (approximately 77% of Collective Members) and directly emailed all remaining Opt-in Plaintiffs not reached by phone. In these email communications, Opt-in Plaintiffs

**B.** <u>**This Court Should Approve the Requested Service Awards**</u>.

The parties' proposed settlement agreement provides for a modest service award of $500.00 to any Plaintiff who appeared for deposition in this case but whose settlement payment under the agreement is otherwise less than $3,000.00.  While nine Plaintiffs testified in this matter, initial estimates based upon Dr. Krueger's calculations confirm only two will qualify for a service award: Emily Sidwell and Jacob Bernard.

At Defendants' request, both of these individuals appeared and testified at deposition in this case.  (Exh. 2, Davis Decl., at ¶ 44).  In so doing, both provided invaluable

---

were notified of the Settlement Sum, distribution methodology, scope of the release (*i.e.*, claims asserted in this Lawsuit), and each were invited to contact Plaintiffs' counsel with any questions or concerns. Plaintiffs' counsel received no objections to this Settlement. *Id.* at ¶ 43.

Accordingly, cases denying FLSA settlement approval and requiring additional notice and a fairness hearing prior to approval do not apply. *See, e.g., Wisneski v. Belmont Mgt. Co., Inc.*, 2:19-CV-2523-JAR, 2020 WL 3218199, at *2 (D. Kan. June 15, 2020) (indicating FLSA settlement approval requires a two-step process and notice when—unlike this case— "putative ***class members have not yet received notice of the lawsuit and an opportunity to opt in***.") (emphasis supplied); *Foster v. Robert Brogden's Olathe Buick GMC, Inc.*, 17-2095-DDC-JPO, 2019 WL 1002046, at *3 (D. Kan. Feb. 28, 2019) (requiring FLSA settlement notice and fairness hearing because—unlike this case—"the parties ask[ed] the court to approve their Agreement preliminarily ***before any collective action plaintiffs have received notice and the opportunity to opt-in to the lawsuit***.) (emphasis supplied); *Lundine v. Gates Corporation*, 18-cv-1235-JPO, Order (ECF No. 136) (D. Kan. May 11, 2021) (recognizing that, unlike Rule 23 settlements, FLSA "doesn't require a fairness hearing" but indicating courts in this District do hold fairness hearings ***"unless the parties notify the court that the opt-in plaintiffs had notice of the settlement and an opportunity to object"***—this notice has occurred here) (emphasis supplied).

service to Plaintiff's counsel and, ultimately, the collective action Plaintiffs. *Id.* These individuals took significant time away from their personal lives and work to talk and meet with Plaintiff's counsel, prepare for deposition, and travel to and attend their depositions. *Id.* at ¶ 45. The requested payment rewards each of these two Plaintiffs for their service to the collective group, which we estimate required each to devote over 25 hours of time. *Id.* Moreover, Plaintiffs' counsel cited and relied on the deposition testimony provided by these Plaintiffs to defeat Defendants' motion to decertify, as well as in other filings. *Id.* at ¶ 46. Accordingly, these individuals clearly assisted the collective action and aided in obtaining the proposed settlement. *Id.* at ¶ 45.

Courts recognize that the time and dedication an individual devotes to a lawsuit that inures to the common benefit of others warrants a service award above-and-beyond what the typical collective member receives. *See, e.g., Cimarron Pipeline Constr., Inc. v. National Council on Compensation Ins.*, Nos. CIV 89-882-T and CIV 89-1186-T, 1993 WL 355466, at *2 (W.D. Okla. June 8, 1993) (awarding $10,000 service award to each of three collective representatives); *Salinas v. U.S. Xpress Enterprises, Inc.*, 1:13-cv-245, 2018 WL 1475610, at *1 (E.D.Tenn. Mar. 26, 2018) (approving special masters' proposed service award of $10,000 to named plaintiff and $500.00 to opt-in plaintiffs who were deposed). And Courts in this District regularly approve such fees. *See, e.g., Kohler,* 2016 WL 3743098, at *3 (D. Kan. July 13, 2016) (approving service fees of $5,000 and $10,000 to representative FLSA plaintiffs); *Flerlage v. US Foods, Inc.*, No. 18-2614-DDC-TJJ,

2020 WL 4673155, at *10 (D. Kan. Aug. 12, 2020) (noting that $20/hour is a reasonable service fee). Accordingly, this Court should approve the modest service award requested in this case.

### C.   Plaintiff's Counsel Should Be Awarded Their Reasonable Attorneys' Fees, Expenses And Costs as Determined By The Court.

As set forth above, the proposed settlement agreement provides Defendants will pay Plaintiffs' reasonable attorneys' fees, expenses, and costs as determined and awarded by this Court.  These attorneys' fees, expenses, and costs are separate from and in addition to the $3,900,353.20 Settlement Sum paid to the collective action Plaintiffs, and Plaintiffs' counsel will request these fees, expense and costs in a separate motion.  FLSA settlements must include an award of attorneys' fees and costs, and while the "court has discretion to determine the amount and reasonableness of the fee, [the] award nevertheless is mandatory." *Kohler,* 2016 WL 3743098, at *3 (D. Kan. July 13, 2016).  Plaintiffs therefore respectfully request this Court approve an award of reasonable attorneys' fees, expenses, and costs in connection with approving the parties' Settlement Agreement.

WHEREFORE, Plaintiff request this Court's Order approving the parties' Settlement Agreement as fair and reasonable (Ex. 1), including its service award provision, and further requests the Court's related approval of Plaintiffs' reasonable attorneys' fees, expenses, and costs.

Date:  May 12, 2021

Respectfully submitted,

**DAVIS GEORGE MOOK LLC**

/s/ *Nicholas J. Walker*
Brett A. Davis, KS Bar No. 16217
Tracey F. George, D.Kan. Bar No. 77967
Nicholas J. Walker KS Bar No. 21951
**DAVIS GEORGE MOOK LLC**
1600 Genessee St., Suite 328
Kansas City, MO 64102
Tel. 816-569-2629
Fax.  816-447-3939
E-mail: tracey@dgmlawyers.com
E-mail: brett@dgmlawyers.com
E-mail: nick@dgmlawyers.com
www.dgmlawyers.com

**Attorneys For Plaintiff**

## CERTIFICATE OF SERVICE

I certify that on this, the 12th day of May, 2021, I have served the foregoing on Defendants via the Court's CM/ECF electronic filing system, which will send electronic notification to all counsel of record.

/s/ *Nicholas J. Walker*
**Attorney for Plaintiff**