## *SETTLEMENT AGREEMENT AND RELEASE OF CLAIMS*

This Settlement Agreement and Release of Claims ("Agreement") is made by Mortgage Lenders of America, LLC (currently known as Zillow Home Loans, LLC) ("MLOA"), Philip Kneibert ("Kneibert") and Bradley Ives ("Ives") (collectively "Defendants"), and Beau Charbonneau ("Charbonneau"), on his own behalf, and on behalf of all current opt-in Plaintiffs, along with his and their heirs and their estates, executors, administrators, representatives and assigns (each individually a "Plaintiff" and collectively, "Plaintiffs") in the case captioned *Beau Charbonneau, et al. v. Mortgage Lenders of America, LLC, et al.*, Case No. 2:18-cv-02062-HLT-ADM, filed in the United States District Court for the District of Kansas ("Lawsuit").

This Agreement is made as a compromise between Plaintiffs and Defendants (collectively, the "Parties") for the complete, and final, settlement of the claims released in this Agreement.

## *RECITALS*

1. On February 5, 2018, Charbonneau filed the Lawsuit against MLOA alleging claims under 29 U.S.C. § 216(b) of the Fair Labor Standards Act ("FLSA"), along with various statutory and common law claims under state law;

2. On December 6, 2018, the Court conditionally certified the Lawsuit as a collective action under the FLSA;

3. In approximately November 2018, Zillow Group, Inc. ("Zillow") purchased MLOA;

4. On August 22, 2019, Plaintiffs filed their Third Amended Complaint, which was their final and operative complaint in the Lawsuit, adding Kneibert and Ives as individual defendants;

5. Before Zillow purchased MLOA, Kneibert was the President and one of MLOA's owners, and Ives was the Vice-President and one of MLOA's owners;

6. Defendants each filed Answers denying the material allegations in the Lawsuit, and Defendants continue to deny the material allegations in the Lawsuit;

7. The Parties, through counsel, have engaged in extensive written and deposition discovery, motion practice, conducted arms-length negotiations on multiple occasions, and have now reached an agreement to settle all claims in the Lawsuit under the terms set forth in this Agreement;

8. The Parties recognize the outcome in the Lawsuit is uncertain and achieving a final result through litigation requires additional risk, time and expense;

9. Defendants deny, and continue denying, (i) the allegations in the Lawsuit, (ii) liability for alleged violations of the FLSA, and (iii) that damages are owed to the Plaintiffs under any statutory or other claims. Nonetheless, without admitting or conceding any liability or damages, and to avoid the burden, expense and uncertainty of continuing the Lawsuit, Defendants have agreed to settle the Lawsuit on the terms and conditions set forth in this Agreement; and

10. After balancing the benefits of settlement with the costs, risks, and delay of continued litigation, Plaintiffs and their counsel believe the settlement as provided in this Agreement, is in their collective best interests and represents a fair, reasonable, and adequate resolution of the Lawsuit.

NOW THEREFORE, the Parties, intending to be legally bound, and in consideration of the mutual covenants and other good and valuable consideration set forth below, agree as follows:

2

## *AGREEMENT*

A.   **Consideration:**   To resolve Plaintiffs' existing claims made in the Lawsuit, Defendants agree to pay to Plaintiffs, or cause to be paid to Plaintiffs, a collective gross total of $3,900,353.20 ("Settlement Sum"), which includes payments to all the Plaintiffs in exchange for the release of claims and other terms agreed to in this Agreement. As further set forth below, Plaintiffs' attorneys' fees, and all of Plaintiffs' attorneys' recoverable costs, will be separately determined by the Court.

B.   **Settlement Sum Allocation and Taxes:**

1.   The Settlement Administrator (as defined below) shall make payments to each individual Plaintiff (the "Individual Payments"), and a payment to Plaintiffs' counsel as described in Paragraph B.4 below.

2.   The Settlement Sum of $3,900,353.20 shall be distributed to Plaintiff Beau Charbonneau and each of the Opt-in Plaintiffs based on the following methodology:

a.   Minimum Payment Funds

$10,000 of the Settlement Sum ("Minimum Payment Funds") shall be set aside to ensure no Opt-in Plaintiff receives less than $500 in exchange for their release of claims

b.   Deponent Service Funds

$1,000 of the Settlement Proceeds ("Deponent Service Funds") shall be set aside to ensure each Opt-in Plaintiff who appeared for deposition, but whose eligible pro rata share of the settlement is less than $3,000, receives a $500 service award

c.   Net Settlement Fund

3

The Settlement Sum, less Minimum Payment Funds and Deponent Service Funds, equals the "Net Settlement Fund," which shall be distributed to Plaintiff Beau Charbonneau and each of the Opt-in Plaintiffs based upon the following equitable formula:

   i.   Plaintiff Beau Charbonneau and Opt-in Plaintiffs who worked only as a Team Lead during the Relevant Time Period shall each receive 1 point per dollar reflected in their individual 14-hour column(s) of Dr. Krueger's Calculations[1];

   ii.  Opt-in Plaintiffs, excluding Plaintiff Beau Charbonneau, who worked both as a Team Lead and a Loan Officer/Loan Specialist during the Relevant Time Period shall each receive:

         1 point per dollar reflected in their individual 14-hour column for Team Lead workweeks; plus

         1 point per dollar reflected in their individual 5-hour column for Loan Officer/Loan Specialist workweeks, reduced by any Retro OT dollars paid for the same time period.

   iii. Opt-in Plaintiffs, excluding Plaintiff Beau Charbonneau, who worked only as a Loan Officer/Loan Specialist during the Relevant Time Period shall each receive 1 point per dollar reflected in their individual 5-hour column of Dr. Krueger's Calculations, reduced by any Retro OT dollars paid for the same time period.

   iv.  All points for Plaintiff Beau Charbonneau and the Opt-in Plaintiffs shall be added to determine the Total Settlement Points. Each Plaintiff's individual points shall be divided by the Total Settlement Points to determine their pro rata share of the Net Settlement Fund.

   v.   For any Plaintiff whose pro rata share of the Net Settlement Fund is less than $500, Minimum Payment Funds shall be distributed to increase that Plaintiff's payment to $500.

   vi.  For any Plaintiff who appeared for deposition and whose pro rata share of the Net Settlement Fund is less than $3,000, Deponent

---

[1] **"Dr. Krueger's Calculations"** means Dr. Kurt Krueger's most recent damage calculations for each Plaintiff, based upon a 3-year statute of limitations period dating from the Consent Date.

Service Funds shall be distributed to increase that Plaintiff's payment by $500.

d. Unused Minimum Payment Funds And Deponent Service Funds

Any remaining Minimum Payment Funds and Deponent Service Funds, after distributions required in B.2.c.v. and B.2.c.vi. above, shall be distributed to all Plaintiffs based upon their pro rata share of the Net Settlement Fund.

3. One-half of the Individual Payment payable to each Plaintiff shall be deemed payment of alleged unpaid wages, reported on an IRS Form W-2 (the "Wage Payment") and subject to appropriate payroll tax withholdings, along with all legally required garnishments, liens, wage withholding orders, or similar obligations. The remaining half of the Individual Payment to each Plaintiff shall be reported as other income in Box 3 of an IRS Form 1099-MISC, and deemed compensation for alleged interest and liquidated damages under the FLSA, and shall not be subject to withholding for payroll taxes (the "Non-Wage Payment").

4. The parties will execute this Agreement on or before April 16, 2021. Within thirty (30) days of the Parties' execution of this Agreement, Plaintiffs' counsel will file a motion (which Defendants will not oppose) with the Court seeking approval of this settlement. Within this same time period, Plaintiffs' counsel will also separately file a motion with the Court seeking approval and payment of their reasonable attorneys' fees, costs and expenses incurred in the Lawsuit, which Defendants reserve the right to oppose. Within fifteen (15) days following final determination by the Court, including any appeal by either Defendants or Plaintiffs, of the approved amount of attorneys' fees, costs and expenses ordered to be paid by the Court, Defendants, through the Settlement Administrator, will pay (or cause to be paid) such amount, or such other amount the Parties may agree to, to Plaintiffs' counsel (the

"Attorneys' Fee and Cost Payment"). Such Attorneys' Fee and Cost Payment shall be in addition to the Settlement Sum. Plaintiffs' counsel will provide the Settlement Administrator with an IRS W-9 form. An IRS Form 1099 shall be issued to Plaintiffs' Counsel for the Attorneys' Fee and Cost Payment.

5.      The Settlement Administrator will withhold from the "Wage Payments" each Plaintiff's share of payroll taxes, along with any legally required garnishments, liens, wage withholding orders, or similar obligations. Except for Defendants' share of payroll taxes related to the Wage Payments, Plaintiffs will be responsible for any tax liability, penalties, and interest arising from the allocation of the Settlement Sum. Plaintiffs' counsel and Plaintiffs understand and agree they have not relied on any express or implied representations made by Defendants concerning the tax implications of the Settlement Sum.

**C.      Settlement Administrator and Timing of Individual Payments:**  At no cost to Plaintiffs, Defendants will select and engage the use of a third party settlement administrator (the "Settlement Administrator"), to administer the Individual Payments made under this Agreement.   The Settlement Administrator shall establish a Qualified Settlement Fund ("QSF") from the Settlement Sum paid by Defendants.  The QSF will be controlled by the Settlement Administrator subject to the terms of this Agreement and any order of the Court. Interest, if any, earned on any monies in the QSF will be property of Kneibert and Ives and revert to them following payment of all amounts due under this Agreement.  The Settlement Administrator shall be responsible for preparing and mailing the Individual Payment checks to the Plaintiffs; promptly re-issuing and re-mailing lost or unreceived checks; distributing payment for any approved attorneys' fees and expenses; calculating and paying all appropriate

taxes and complying with all applicable tax reporting obligations, including preparing, issuing and/or filing all applicable tax forms.

1.      No later than seven (7) days following the Effective Date of this Agreement as set forth in Paragraph Q. below, Defendants shall deposit (or cause to be deposited) the Settlement Sum into the QSF. If any additional funds are needed for employer payroll taxes, Defendants shall deposit (or cause to be deposited) such funds into the QSF within seven (7) days of being notified by the Settlement Administrator.

2.      No later than ten (10) days following the Effective Date of this Agreement as set forth in Paragraph Q. below, Plaintiffs' counsel shall provide the Settlement Administrator with a list of currently known addresses for each Plaintiff. At the same time, Plaintiffs' counsel shall provide the Defendants and the Settlement Administrator with a list containing the amount of the Individual Payment due to each Plaintiff.

3.      No later than forty (40) days following the Effective Date of this Agreement as set forth in Paragraph Q. below, and provided no appeal has been filed regarding the approval of this Agreement, checks for the Individual Payments will be issued and mailed, via First Class United States mail, postage prepaid, to the Plaintiffs by the Settlement Administrator. Checks for amounts in excess of $20,000 will be delivered via Federal Express to Plaintiffs' counsels' office for pick up by Plaintiffs. Checks for Individual Payments issued pursuant to this Agreement shall expire one hundred twenty (120) days following their issuance.

**D.      Release of Claims by Plaintiffs:** Each of the Plaintiffs, on behalf of his or her heirs, estates, executors, administrators, assigns, transferees, and representatives, releases and forever discharges Kneibert, Ives, and MLOA and their respective heirs, estates, executors,

7

administrators, assigns, transferees, representatives, predecessors, successors, parents, subsidiaries, affiliates, assigns, and all of their present and former directors, officers, employees, agents, shareholders, and representatives (collectively "the Releasees"), from any and all claims, causes of actions, demands, debts, obligations, damages or liability regarding allegedly unpaid wages, including any claims, causes of action, demands, debts, obligations, damages or liability arising under the FLSA, 29 U.S.C. §§ 201 *et seq*. or any similar state and local law, that were asserted in the Lawsuit through the date of final approval of this Agreement by the Court. The failure of any Plaintiff to negotiate his or her settlement check shall not impact or diminish the enforceability of the release described in this paragraph.

Plaintiffs also covenant and agree not to sue, or bring any action, whether federal, state, or local, judicial or administrative, now or at any future time, against any Releasee, with respect to any claim released in this Agreement, other than as necessary to enforce this Agreement. Plaintiffs agree this Agreement may be used as an affirmative defense and complete bar to any such claim, lawsuit, or any other type of action that Plaintiffs may file against any Releasee for any claim released in this Agreement. Plaintiffs also agree to waive any right to any personal recovery in any action or proceeding that may be commenced on Plaintiffs' behalf by anyone other than Plaintiffs with respect to any claim released in this Agreement.

**E.      No Admission of Liability:**   The Parties understand and acknowledge this Agreement is the result of a compromise, and that all wages claimed by Plaintiffs are disputed, and shall not be construed as an admission of liability, responsibility, or wrongdoing by the Releasees. Defendants expressly deny any liability, responsibility, or wrongdoing as alleged in the Lawsuit.

8

**F.** **Dismissal:** Within three (3) business days following payment of the Individual Payments and the Attorneys' Fee and Cost Payment, Plaintiffs will take the steps necessary to dismiss the Lawsuit with prejudice.

**G.** **No Publicity; Responses to inquiries About the Terms of This Agreement:** The Parties and their counsel will not issue any press release or initiate comment to the media about the Lawsuit or this Agreement, nor will they publish any information regarding this Agreement or its terms in any newsletter or other paper or electronic media publication, or on any social media website, chat room, or other publicly accessible electronic medium. Notwithstanding the foregoing, the Parties and their counsel may respond to any inquiry about the status and/or resolution of this litigation by stating the matter has been resolved to the mutual satisfaction of the Parties. Nothing in this Agreement is intended to, nor shall, be construed to impede the right or duty of the Parties to communicate with each other regarding the Settlement, to comply with the law, to file taxes honestly, to report income honestly, to testify truthfully, or to cooperate with any Court requirement or governmental audit, examination, or investigation.

**H.** **Severability of Provisions:** Except as otherwise provided in this Paragraph, if any provision of this Agreement shall be finally determined to be invalid or unenforceable by a court of competent jurisdiction, that part shall be ineffective to the extent of such invalidity or unenforceability only, without, in any way, affecting the remaining parts of said provision or the remaining provisions of this Agreement. If Paragraphs A., B., C. or D. of this Agreement, or any of their subparts, are deemed invalid or unenforceable, in whole or in part, by a court of competent jurisdiction, this entire Agreement shall be null and void, and any payments made by, or on behalf of, any of the Defendants shall be repaid immediately.

**I.**     **Knowing and Voluntary Waiver:**  The Parties acknowledge and agree that, before entering into this Agreement, they have had sufficient time to consider this Agreement and consult with legal counsel of their choosing concerning its meaning. When entering into this Agreement, the Parties have not relied on any representations or warranties made by the Parties, other than the representations and warranties expressly set forth in this Agreement.

**J.**     **Continuing Jurisdiction:**  Nothing in this Agreement is intended to limit the Court's authority to retain continuing, and exclusive, jurisdiction over the Parties to this Agreement, including all Plaintiffs, for the purpose of the administration and enforcement of this Agreement.

**K.**     **Choice of Law:**  The enforcement of this Agreement shall be governed, and interpreted, by, and under, the laws of the State of Kansas.

**L.**     **Amendments/Modifications:**  No waiver, modification or amendment of the terms of this Agreement, whether purportedly made before, or after, the Court's approval of this Agreement, shall be valid or binding unless approved by the Court and made in writing, signed by or on behalf of all of the Parties, and then only to the extent set forth in such written waiver, modification or amendment.

**M.**     **Binding Agreement:**  This Agreement shall be binding upon, and inure to the benefit of, the Parties, the Releasees, and their affiliates, agents, employees, beneficiaries, heirs, executors, administrators, predecessors, successors, and assigns.

**N.**     **Cooperation Clause:** The Parties acknowledge it is their intent to consummate this Agreement, and they agree to cooperate and exercise their best efforts to the extent necessary to effectuate and implement all of the terms and conditions of this Agreement.

**P.**     **Captions:**  The captions or headings of the sections and paragraphs of this Agreement have been inserted for convenience only, and shall have no effect on the construction or interpretation of any part of this Agreement.

**Q.**     **Effective Date of the Agreement; Counterparts:**  This Agreement shall become effective upon execution by the Parties and final approval by the Court. The Parties may execute this Agreement in counterparts, and execution in counterparts shall have the same force and effect as if the Parties had signed the same instrument.

**R.**     **Court Approval of the Agreement:**  Plaintiffs will ask the Court to approve this Agreement in its entirety, and Defendants will not oppose.  If not so approved, this Agreement will be null and void and the Parties will work diligently to re-draft this Agreement in order to obtain Court approval.

**S.**     **Facsimile Signatures:**  Execution by facsimile or e-mail shall be deemed effective as if executed in original.

**T.**     **Signatories:**  Each person executing this Agreement warrants and represents such person has the authority to do so.

IN WITNESS WHEREOF, the undersigned have executed this Settlement Agreement and Release of Claims.

[Signatures appear on pages 12 and 13]

I HAVE READ THIS SETTLEMENT AGREEMENT AND RELEASE OF CLAIMS,

AND, UNDERSTANDING ALL OF ITS TERMS, I FREELY SIGN IT.

Dated this __13__ day of ___April___, 2021.

Named Plaintiff, Individually and on Behalf of
the Plaintiffs

Beau Charbonneau

**I HAVE READ THIS SETTLEMENT AGREEMENT AND RELEASE OF CLAIMS, AND, UNDERSTANDING ALL OF ITS TERMS, I FREELY SIGN IT.**

Dated this 16th day of April_____, 2021.

_____

Philip Kneibert

_____

Bradley Ives

_____

Mortgage Lenders of America, LLC, now known as Zillow Home Loans, LLC

BY:_____

46720119.1

13

**I HAVE READ THIS SETTLEMENT AGREEMENT AND RELEASE OF CLAIMS,
AND, UNDERSTANDING ALL OF ITS TERMS, I FREELY SIGN IT.**

Dated this 3ᵗʰ day of April _____, 2021.

_____
Philip Kneibert

_____
Bradley Ives

_____
Mortgage Lenders of America, LLC, now known
as Zillow Home Loans, LLC

BY:_____

46720119.1

13

I HAVE READ THIS SETTLEMENT AGREEMENT AND RELEASE OF CLAIMS, AND, UNDERSTANDING ALL OF ITS TERMS, I FREELY SIGN IT.

Dated this 16th day of April, 2021.

_____
Philip Kneibert

_____
Bradley Ives

_____
Mortgage Lenders of America, LLC, now known as Zillow Home Loans, LLC

BY:_____

46720119.1

13