## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

**BEAU CHARBONNEAU**,

on Behalf of Himself
and All Others Similarly Situated,

      Plaintiff,

 v.

**MORTGAGE LENDERS OF
AMERICA L.L.C., et al.**

      Defendants.

**CASE NO.: 2:18-CV-2062-HLT-ADM**

JURY TRIAL DEMANDED

### PLAINTIFFS' MOTION FOR AWARD OF ATTORNEYS' FEES, EXPENSES AND COSTS AND INTEGRATED MEMORANDUM IN SUPPORT

This hotly contested, complex litigation involves claims to recover unpaid overtime wages and liquidated damages for two separate collectives under the Fair Labor Standards Act ("FLSA"). After nearly three and a half years of hard-fought litigation – including numerous depositions, voluminous written and ESI discovery with over 2.5 million pages of documents produced, extensive briefing on conditional and final collective action certification, several dispositive motions, exhaustive pay data analysis and expert damages calculations, a *Daubert* motion, three formal mediations, and substantial trial preparation – the parties reached a settlement agreement shortly before trial. Plaintiffs' counsel, Davis George Mook LLC ("DGM") fought hard to secure a settlement agreement, which provides $3,900,353.20 to the 167 collective action Plaintiffs in this case, for their exclusive benefit.

In addition, Defendants agreed to separately pay Plaintiffs' reasonably incurred attorneys' fees, expenses, and costs.  As a result of this lawsuit, Defendant MLOA also changed its pay practices challenged here.  This is an excellent result – obtained against experienced and aggressive national defense counsel – which provides significant and certain relief for the collective action Plaintiffs.

Consistent with its remedial policy, the FLSA requires settlements include "an award of reasonable attorney's fees and the costs of the action," and this award is "mandatory."    *Koehler v. Freightquote.com, Inc.,* No. 12-2505-DDC-GLR, 2016 WL 3743098 at *3, (D. Kan. Jul 13, 2016).  Here, the parties could not agree on the reasonable amount of Plaintiffs' attorneys' fees, expenses and costs, and have instead agreed to submit this issue for the Court's determination.  Plaintiffs respectfully ask this Court to approve an award of $2,200,380 in attorneys' fees, plus $131,128.15 in costs and expenses.

This requested award is reasonable and amply supported by the evidence, including evidence of Plaintiffs' counsel's time and expenses invested in this matter, declarations from Plaintiffs' counsel, third-party declarations from prominent and experienced FLSA attorneys in the Metropolitan area, judicial orders concerning attorneys' fees from courts in the Metropolitan area, and local attorney billing rates as compiled in the 2020 Corporate Counsel Desk Book survey.[1]  Considering all applicable factors, Plaintiffs' fee request in this case merits this Court's approval.

---

[1] This evidence complies with Local Rule 54.2, which provides that the "memorandum in

## I.   <u>CERTIFICATION AND STATEMENT OF CONSULTATION PURSUANT TO LOCAL RULE 54.2.</u>

The parties have complied with Local Rule 54.2 requiring consultation prior to moving the Court for an award of statutory attorneys' fees.  Plaintiffs' counsel, Tracey George, contacted Defendants' counsel, Chris Pace, on May 5, 2021, and provided information regarding Plaintiffs' attorneys' fees, expenses and costs incurred to date, the number of hours billed, and the blended hourly attorney rate.  (Declaration of Tracey F. George ("George Decl."), attached as Exhibit 1, at ¶ 4).  Ms. George proposed a settlement of Plaintiffs' reasonably incurred fees, expenses, and costs, which Mr. Pace agreed to convey to Defendants.  *Id.*  On May 10, 2021, Defendants' counsel, Justin Dean, contacted Ms. George and indicated Defendants were unwilling to accept Plaintiffs' proposed settlement and Plaintiffs should file the instant motion.  *Id.*

Ultimately, the parties cannot agree on an award of reasonable fees, expenses, and costs, and Plaintiffs believe there should be no further delay in the resolution of this matter. *Id.*   Plaintiffs' counsel makes this certification pursuant to Local Rule 54.2.

## II.   <u>FACTUAL AND PROCEDURAL BACKROUND.</u>

Resolution of this case required (and continues to require) an intensive commitment of Plaintiffs' counsel's time and out-of-pocket expenses for almost three and a half years. Defendants vigorously contested Plaintiffs' claims, filing nearly every possible issue-

---

support of" motions for statutory attorney's fees "must be supported by time records, affidavits or other evidence."

and/or case-dispositive motion, steadfastly pursuing even unlikely defenses, and disputing seemingly indisputable evidence at every turn.  Yet, Plaintiffs prevailed on each and every motion regarding their FLSA claims and collective trial.  This Court is no doubt familiar with the history and key factual and legal issues of this case, and Plaintiffs provide the summary below only to demonstrate the full context of the labor, time and money Plaintiffs' counsel necessarily invested to achieve an exceptional resolution of this hard-fought litigation.

Plaintiff Charbonneau filed this FLSA collective action lawsuit on February 5, 2018, asserting claims that: (i) he and other Team Leads were unlawfully classified as FLSA "exempt" and unlawfully denied overtime pay; and (ii) he and other Loan Officers were unlawfully denied overtime pay for off-the-clock work.  (ECF No. 1).[2]  MLOA answered on April 2, 2018, asserting several affirmative defenses and denying it was liable under any of Plaintiff's claims. (ECF No. 4).  Plaintiff filed an amended complaint on April 17, 2018, which MLOA moved to partially dismiss on May 1, 2018. (ECF Nos. 10, 13-14).  Plaintiff responded to MLOA's motion to dismiss on May 22, 2018 and filed a second amended complaint on May 23, 2018.  (ECF Nos. 21 and 23).  On June 6, 2018, MLOA answered Plaintiff's second amended complaint, again denying all liability, and simultaneously filed another partial motion to dismiss.  (ECF Nos. 27 and 28).  The Court

---

[2] Plaintiff also asserted related Rule 23 unpaid overtime and unlawful wage deduction claims based on Kansas state law that were later dismissed and will not be discussed in detail here.

denied MLOA's partial motions to dismiss after full briefing from the parties. (ECF Nos. 44, 40, 38, 35, 26).

Plaintiff moved to conditionally certify two company-wide collectives pursuant to FLSA § 16(b) on June 27, 2018. (ECF Nos. 36-37).  MLOA opposed conditional FLSA certification, and the parties fully briefed Plaintiff's motion in the summer of 2018. (ECF Nos. 39 and 41).   On December 6, 2018, the Court granted Plaintiff's conditional certification motion. (ECF No. 45).  The following day, MLOA's initial counsel withdrew and were replaced by Defendants' present counsel.  (ECF No. 46).

Plaintiff then utilized a third-party administrator to send Court-approved notice and consent forms to current and former employees in the following certified collective classes:

- All persons who are, have been, or will be employed by Defendant as "Team Leads," "Team Leaders," and other individuals with similar job titles within the United States at any time during the last three years through the entry of judgement in this case.

- All persons who are, have been, or will be employed by Defendant as "Loan Officers," "Mortgage Loan Officers," "Entry Level Loan Officers," and other individuals who originated loan products with similar job titles within the United States at any time during the last three years through the entry of judgment in this case.

(Exh. 1, George Decl., at ¶ 6)  The Court-approved notice and consent forms were sent to approximately 450 current and former MLOA employees. A total of 170 individuals, including Plaintiff Charbonneau, filed consents to join this litigation ("Opt-in Plaintiffs"). *Id.* at ¶ 7. This included twenty-five individuals employed as Team Leads during the relevant three-year statutory period, and 145 additional individuals employed only as Loan Officers and/or Loan Specialists during that period.  *Id.* Three Loan Officer Opt-In Plaintiffs withdrew their consents during litigation, leaving 167 total Plaintiffs in this lawsuit. *Id.* Plaintiffs' counsel communicated extensively with the Opt-in Plaintiffs and potential Opt-in Plaintiffs during the notice administration process. *Id.* at ¶ 8.

Prior to (and following) the close of the opt-in period, the parties met and conferred in detail concerning a proposed discovery plan and scheduling order.  *Id.* at ¶ 9.  This process was more intensive than in smaller, less-complex cases because the parties had widely divergent views on the scope of discovery: MLOA requested expansive discovery from all Opt-in Plaintiffs, whereas Plaintiff proposed representative discovery and objected to collective-wide discovery (noting the exponential increase in time and expense it would create). *Id.* Ultimately, at the scheduling conference on April 18, 2019, the Court authorized written discovery to all Opt-in Plaintiffs (although on a lesser scale than MLOA requested). *Id.*

Both parties served and responded to written discovery requests over the next several months.  *Id.* at ¶ 10.  For Plaintiff and Opt-in Plaintiffs, this meant responding to

6

approximately 160 separate sets of individualized interrogatories and requests for production of documents, and reviewing voluminous time, pay, and personnel records and documents. *Id.* Based on MLOA's discovery responses, Plaintiffs moved to amend the complaint to add FLSA claims against MLOA's former co-owners and officers, Bradley Ives and Philip Kneibert, which the Court granted. (ECF Nos. 91-92). Plaintiffs filed the third amended complaint on August 22, 2019; MLOA answered on September 5, 2019 and Kneibert and Ives answered on November 26, 2019, with all Defendants denying liability and asserting multiple affirmative and other defenses. (ECF Nos. 93, 94 and 104). The parties also engaged in the tedious process of negotiating and agreeing on search terms for ESI discovery. (Exh. 1, George Decl., at ¶ 11).

As directed by the Court, the parties participated in mediation with a private mediator on September 13, 2019, which was unsuccessful. *Id.* at ¶ 12. Subsequently, Plaintiff conducted additional extensive discovery on central issues, including serving over 1,800 requests for admission targeted at Defendants' affirmative defense that Team Leads were properly classified as exempt from the FLSA's overtime requirement. *Id.* at ¶ 13. The parties also continued work to obtain Defendants' ESI production. Because of issues with Defendants' ESI vendor, however, that production was delayed, which necessitated an Amended Scheduling Order. *Id.* at ¶ 14; ECF No. 110. Eventually, MLOA produced over 432,000 ESI documents (or 2.5 million pages) and produced nearly 2,560,000 pages of documents in total during discovery. (Exh. 1, George Decl., at ¶ 15). Plaintiffs'

counsel's review and analysis of this discovery required significant attorney time, as well as the use of costly vendor-provided storage and document review database support. *Id*.

Following Defendants' initial ESI production, the parties conducted multiple depositions. Plaintiffs deposed seven key defense witnesses, including Kneibert and Ives, four management witnesses, MLOA's former HR Director, and MLOA's former HR Coordinator; these depositions were in addition to the Rule 30(b)(6) depositions Plaintiffs previously conducted on various topics. *Id.* at ¶ 16. Defendants deposed Plaintiff Charbonneau and eight other Opt-in Plaintiffs. *Id.* Plaintiffs also retained and disclosed a Ph.D. economist as an expert witness on damages issues, produced his collective-wide and individual damage calculations, report and supplement, and prepared and produced him for deposition. *Id.* at ¶ 17.

On June 1, 2020, after discovery closed, Plaintiffs filed a motion for partial summary judgment on behalf of all Team Leads concerning Defendants' purported FLSA exemption defenses. (ECF Nos. 161-162). On June 3, 2020, the parties held a second private mediation with mediator Michael Russell, Esq. from Nashville, Tennessee. Again, mediation failed. (Exh. 1, George Decl., at ¶ 18). Soon after the second mediation, Defendants moved to amend their answers out-of-time – after the close of discovery – to assert a new defense that *all* of the collective-action Plaintiffs were exempt from overtime under the "retail sales exemption" in FLSA § 7(i). (ECF No. 163). The parties fully briefed Plaintiffs' partial summary judgment motion and Defendants' motion to amend to add a

new exemption defense. (ECF Nos. 170, 171, 179, 180). Given Defendants' pending motion to amend and the potential need for additional discovery if granted, the Court cancelled the previously set scheduling conference to discuss pre-trial deadlines. (ECF No. 178).

On July 28, 2020, the Court denied Defendants' motion to add the 7(i) exemption defense and set a deadline for the parties to submit their proposed pretrial order and a date for the pre-trial conference. (ECF No. 181). The parties then spent significant time working on the proposed pretrial order, exchanging and discussing multiple draft proposals, and attempting to reach factual, documentary and evidentiary stipulations. (Exh. 1, George Decl., at ¶ 19). After submitting their proposed pretrial order, the parties participated in an initial pretrial conference with the Court on August 19, 2020. *Id.* The Court directed the parties to revise certain portions of the proposed pretrial order and scheduled a second pretrial conference on September 4, 2020. *Id.* The Court then entered the Pretrial Order on September 9, 2020, which set a February 22, 2021 trial date, deadlines for additional briefing, and a deadline for Plaintiffs' damages expert to supplement his report and calculations in light of newly produced time data from Defendants. (ECF Nos. 182-185, 187).

On September 14, 2020, this Court granted Plaintiffs' partial summary judgment motion, holding Defendants' purported Team Lead exemption defenses fail as a matter of law. (ECF No. 186). On September 21, 2020, Plaintiffs served their expert's supplemental

report and calculations.  (Exh. 1, George Decl., at ¶ 20).  On October 2, 2020, Defendants filed a motion to decertify Plaintiffs' FLSA claims. (ECF Nos. 188 and 189).  On October 23, 2020, Defendants filed a motion to exclude Dr. Krueger's expert damages calculations and testimony.  (ECF Nos. 190 and 191).  The parties extensively briefed these motions, and the Court granted Plaintiff leave to file a surreply to both motions.  (ECF Nos. 192, 194, 199-203, 205).

The Court held a status conference with the parties on December 23, 2020 to address, among other things, trial issues, potential Covid-19 implications and further mediation.  (ECF Nos. 206-207).  On December 29, 2020, the Court entered a Trial Order which included a new trial setting of June 7, 2021 and required the parties to conduct further mediation with a Magistrate Judge. (ECF No. 209).   On January 11, 2021, the Court denied Defendants' motion to decertify the collective actions, which rendered collective certification of this case final for trial.  (ECF No. 212). That same day, the Court also denied Defendants' motion to exclude Plaintiffs' expert witness (ECF No. 213).

Both before and after this Court's orders denying *Daubert* and decertification motions, Plaintiffs' counsel continued earnest trial preparation for Plaintiff's collective claims, including but not limited to: identifying trial witnesses, exhibits, and other evidence sufficient to constitute representative proof on each element of Plaintiffs' claims; communications with Opt-in Plaintiffs regarding potential trial attendance and testimony; continued ESI review to establish elements of proof, including evidence of off-the-clock

10

work; legal research and strategy concerning potential motions in limine; identifying impeachment evidence for Defendants' likely trial witnesses; researching approved jury instructions, verdict directors, and verdict forms in recent FLSA trials to structure presentation of evidence; identifying proposed fact and representative proof stipulations to shorten trial.  (Exh. 1, George Decl., at ¶ 21).

On March 4, 2021, the parties participated in a third and final, several-hour mediation with the Honorable Judge O'Hara. *Id.* at ¶ 22.  While the parties did not reach a settlement agreement during the mediation, significant settlement progress occurred.  *Id.* Following mediation, the parties continued settlement negotiations and ultimately reached a settlement agreement.  (ECF No. 217, at Exh. 1).

## III.  <u>ARGUMENT.</u>

### A.  **Legal Standard.**

The FLSA provides that the Court "shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant and the costs of the action." 29 U.S.C. § 216(b).  Notably, unlike most fee-shifting statutes, an award of attorney's fees under the FLSA is mandatory. *Compare* 29 U.S.C. § 216(b) (stating the court "shall" award fees) *with* 42 U.S.C. § 1988(b) (noting the court "may" award fees "in its discretion").  Further, this mandatory award of attorney's fees and costs is also required in FLSA settlements. *See Koehler v. Freightquote.com, Inc.,* No. 12-2505-DDC-GLR, 2016 WL 3743098, at *3 (D. Kan. Jul 13, 2016).

A mandatory award of attorney's fees and costs comports with well-settled public policy:  attorneys who successfully pursue plaintiffs' unpaid overtime claims "must be adequately compensated for their efforts," otherwise "wage and hour abuses would go without remedy because attorneys would be unwilling to take on the risk." *Prasker v. Asia Five Eight LLC*, No. 08-CV-05811, 2010 WL 47600, at *6; (S.D.N.Y. Jan 6, 2010); *Sand v. Greenberg,* No. 08-CV-07940, 2010 WL 69359, at *3 (S.D.N.Y. Jan 7, 2010) ("But for the separate provision of legal fees many violations of the Fair Labor Standards Act would continue unabated and uncorrected.").  Civil enforcement of wage and hour laws is an important supplement to the work of government regulators in carrying out FLSA's public policy. *See Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 686-687 (1946) (noting the FLSA is a "remedial" statute that embodies "great public policy"); *Fegley v. Higgins,* 19 F3d 1126, 1134-1135 (6th Cir. 1994) ("The purpose of the FLSA attorney fees provision is 'to insure effective access to the judicial process'"); *Morales v. Farmland Foods, Inc.,* , No. 8:08CV504, 2013 WL 1704722, at *2 (D. Neb. Apr. 18, 2013) ("Plaintiffs' counsel performed a recognized public service in prosecuting these actions as a "private Attorney General" to protect the rights of underrepresented workers.").

The formula for determining a reasonable attorneys' fee in a statutory fee dispute is simple and straightforward:  the court determines a "lodestar" figure by multiplying the hours plaintiff's counsel reasonably spent on the litigation by a reasonable hourly rate. *See Case v. Unified Sch, Dist. No. 233*, 157 F.3d 1243, 1249 (10th Cir. 1998); *Flitton v.*

*Primary Residential Mortgage, Inc.*, 614 F.3d 1173, 1176 (10th Cir. 2010). As directed by the Supreme Court, the issue of statutory attorneys' fees should not result "in a second major litigation" and ideally the "litigants will settle the amount of the fee." *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983); *see also Ellis v. Univ. of Kansas Med. Ctr.,* 163 F.3d 1186, 12023 (10th Cir. 1998) (courts are not charged with the task of identifying and justifying "every hour allowed and disallowed, as doing so would run counter to the Supreme Court's warning that a 'request for attorney's fees should not result in a second major litigation.'") (citation omitted). "Where a plaintiff has obtained excellent results, his attorney should recover a fully compensatory fee. Normally this will encompass all hours reasonably expended on the litigation, and indeed in some cases of exceptional success an enhanced award may be justified." *Hensley,* 461 U.S. at 435. Given the exceptional result in this matter, and the reasonableness of the time spent and the hourly rates charged, Plaintiffs' requested attorney's fee award merits this Court's approval.

**B.     Plaintiffs' Counsel's Time Spent Successfully Prosecuting This Collective Action Is Reasonable.**

As reflected by nearly 220 docket entries in this complex case, Plaintiffs' counsel devoted more than 3,760 hours, over nearly three and half years, prosecuting this case to a favorable settlement for the collective action Plaintiffs. (Exh. 1, George Decl., at ¶ 23; Declaration of Brett Davis ("Davis Decl."), attached as Exhibit 2, at ¶ 9).[3] Plaintiffs'

---

[3] DGM's daily time entries for this large-scale litigation are hundreds of pages long, include over 1,000 entries, and reveal attorney-client privileged and work-product information.

13

counsel's declarations include a detailed breakdown of hours devoted to specific tasks throughout the course of this litigation.  (Exh 1, George Decl., at ¶¶ 27-31; Exh. 2, Davis Decl., at ¶¶ 13-17).  This time was not only reasonable, it was necessitated by the vigorous defense mounted throughout this case.

---

(Exh. 1, George Decl., at ¶ 24).  These entries are further sensitive because they serve as a roadmap for DGM's litigation strategy in FLSA collective cases, which is of particular concern here because Defendants' counsel (Ogletree Deakins, and Chris Pace in particular) regularly defends employers in FLSA cases litigated by DGM. *Id.* Specifically, Ogletree Deakins represented defendants in the last four FLSA collective cases DGM filed, and Mr. Pace served as lead defense counsel in three of those cases.  *Id.* For these reasons, Courts evaluating attorneys' fees applications in class/collective settlements often accept and rely on affidavits/declarations and detailed summaries of billing entries in lieu of requiring daily time entries.  *See, e.g., In re Genetically Modified Rice Litig.*, 764 F.3d 864, 869, 871 (8th Cir. 2014) (in large scale litigation, courts determining an attorney fee award may rely on billing summaries and affidavits submitted by lead attorneys and need not review actual daily billing records); *see also, French v. Midwest Management, Inc.*, 2:14-cv-02625-JAR-GEB, (D. Kan. Feb. 15, 2017), Docs 62-3 and 63 (approving settlement and fee award based on fee summaries); *Koehler v. Freightquote, Inc.* No. 12-2505, 2016 WL 3743098, *4, *9 (D. Kan. July 13, 2016) (approving settlement and $1,650,000.00 fee award based on fee summaries);  *Id.*, Doc. 219-20 (fee summaries); *Hoffman v. Poulsen Pizza LLC*, No. 15-2640-DDC-KGG, 2017 WL 25386, *6, *9 (D. Kan. Jan. 3, 2017) (approving settlement and fee award based on fee summaries); *Id.*, Docs 72-1 and 72-2 (fee summaries).  This approach provides the Court with a clearer overview of the time spent prosecuting the case and is consistent with Local Rule 54.2, which states statutory attorney's fees "must be supported by time records, affidavits <u>or</u> other evidence." (Emphasis supplied).

If requested, however, Plaintiffs' counsel's detailed time entries are available for this Court's *in camera* inspection to protect the sensitive, privileged and work-product nature of the information.  *See Garcia v. Tyson Foods, Inc.*, 770 F.3d 1300, 1308-09 (10th Cir. 2014) (affirming District Court's decision not to provide time records to opposing counsel and instead allow the Court to conduct an *in camera* inspection given work-product concerns).

Plaintiffs' counsel reviewed their time entries recorded in this case and, exercising billing judgment, removed time entries for non-essential tasks or duplicative efforts. (Exh. 1, George Decl., at ¶ 25; Exh. 2, Davis Decl., at ¶ 11).[4] What remains are reasonable hours for necessary work, which Plaintiffs' counsel are confident added value to this case, led to critical Orders from this Court and, ultimately, the favorable settlement agreement obtained. (Exh. 1, George Decl., at ¶ 26; Exh. 2, Davis Decl., at ¶ 12).

Notably, Plaintiffs' counsel staffed and managed this case efficiently. Responsibilities were not duplicated, and much of the work – such as document and ESI review, collective data management, and initial drafts of discovery requests, pleadings, motions and memoranda – was performed by the lowest billing attorney. (Exh. 1, George Decl., at ¶ 32; Exh. 2, Davis Decl., at ¶ 11). All of the time submitted by Plaintiffs' counsel

---

[4] For example, DGM attorney Nick Walker attended all three mediations with Mr. Davis, Ms. George, and Plaintiff Charbonneau, and Mr. Walker's assistance with client communication and research during each mediation was important and helpful. (Exh. 1, George Decl., at ¶ 25; Exh. 2, Davis Decl., at ¶ 11). However, in the interest of conservative billing, Plaintiffs did not charge for Mr. Walker's mediation attendance. *See id.* Furthermore, while key depositions necessitated the presence of two attorneys (e.g., Plaintiff Beau Charbonneau, Defendant Philip Kneibert, and the first Loan Officer and Team Lead Opt-in Plaintiffs produced for deposition) others benefited from, but did not necessarily require, two attorneys. *Id.* In those instances, in the interest of conservative billing, the second attorney's time was not charged. *See id.* Ms. George reviewed and finally approved all written discovery requests but did not bill hours for that review because Mr. Davis also approved the discovery. *Id.* Similarly, Mr. Davis stayed abreast of expert damage calculations, methodologies, reports, and supplements but billed only minimal time for these tasks because Ms. George and Mr. Walker were primarily responsible for expert discovery. *Id.* These examples are reflective of the billing judgment DGM applied to its time entries. *Id.*

to the Court for compensation is (i) of the kind and character that Plaintiffs' counsel (and other attorneys) would normally bill to paying clients, (ii) time that counsel normally tracks and seeks to be paid for at the conclusion of successful contingency litigation, and (iii) added value to the case and was reasonably necessary to give the FLSA Opt-in Plaintiffs the best possible chance for a favorable outcome. (Exh. 1, George Decl., at ¶ 33; Exh. 2, Davis Decl., at ¶ 19).

Moreover, Defendants are represented by competent and aggressive counsel who handle FLSA cases nationally. (Exh. 1, George Decl., at ¶ 34; Exh. 2, Davis Decl., at ¶ 20). Defendants fought hard from the outset, filing multiple motions to dismiss, opposing collective FLSA certification and later seeking decertification, initially refusing to produce complete pay and time data, insisting on individualized written discovery of every Opt-in Plaintiff, protracting ESI production, refusing to concede their failure to pay Team Leads on a salary basis and necessitating Plaintiffs' service of over 1,800 requests for admissions, vehemently opposing Plaintiffs' partial summary judgment on the Team Lead exemption defenses, steadfastly maintaining those purported exemption defenses through the Pretrial Order and conference, moving to exclude Plaintiffs' damages expert, and filing nearly every conceivable motion and making virtually every possible argument before ultimately agreeing to the present settlement. *Id.*

As the United Stated Supreme Court, the Tenth Circuit and other Courts recognize, a reasonable attorney's fee award must take into account whether the defendant mounted

an aggressive defense. *City of Riverside v. Rivera*, 477 U.S. 561, 581 n. 11 (1986) ("The [Defendants] cannot litigate tenaciously and then be heard to complain about the time necessarily spent by the plaintiff in response."); *Robinson v. City of Edmond,* 160 F.3d 1275, 1284 (10th Cir. 1998) ("The Tenth Circuit has long accepted the proposition that one of the factors useful in evaluating the reasonableness of the number of attorney hours in a fee request is the 'responses necessitated by the maneuvering of the other side.'"); *Frank v. Music Corp. v. MGM, Inc.*, 886 F.2d 1545, 1557 (9th Cir. 1989) ("Although [defendants] had the right to play hardball in contesting [plaintiffs'] claims, it is also appropriate that [defendants] bear the cost of their" strategy.); *Rodriquez-Hernandez v. Miranda-Velez*, 132 F.3d 848, 860 (1st Cir. 1998) (justifying an increased fee award to plaintiffs given the defendant's "Stalingrad defense"); *Wolf v. Frank*, 555 F.2d 1213, 1217 (5th Cir. 1977) ("Obviously, the more stubborn the opposition, the more time would be required.").

Considering the protracted duration and complexity of this collective action litigation, the voluminous ESI document production and written discovery conducted, extensive briefing on multiple dispositive motions, conditional collective certification, decertification, *Daubert* challenges and Defendants' motion for leave to add a new exemption defense for all collective action Plaintiffs, participation in three mediations, trial preparation and the overall tenacity with which the parties litigated this case, 3,760 hours is an abundantly reasonable amount of time to prosecute this case.  (Declaration of Rowdy Meeks ("Meeks Decl."), attached as Exh. 4, at ¶ 13; Declaration of George Hanson

("Hanson Decl."), attached as Exh. 5, at ¶ 13; Declaration of Brendan Donelon ("Donelon Decl."), attached as Exh. 6, at ¶ 9.  In fact, it would have been reasonable to expect even more attorney work hours devoted to this complex, hotly contested litigation that has been pending for nearly three and a half years.  *See id.*[5]

These attorney work hours are well within – if not less than – attorney time approved and awarded in FLSA cases in this District and elsewhere, even when the monetary result for the collective plaintiffs was less than here.  *See, e.g., Garcia,* 2012 WL 5985561, *2, 5, 9 (awarding fees for over 10,000 hours billed to obtain a $533,011 jury verdict in FLSA collective case); *Morales v. Farmland Foods, Inc.*, No. 8:08CV504, 2013 WL 1704722, at *2 (D. Neb. Apr. 18, 2013) (awarding fees for 8,407 hours billed over four years to obtain a $275,000 FLSA collective settlement).

## C.    Plaintiffs' Counsel's Rates Are Reasonable.

In examining the reasonable hourly rate, the court should refer "to the prevailing market rates in the relevant community." *Blum v. Stenson*, 465 U.S. 886, 895 (1984). Here, the relevant community is the Kansas City Metropolitan area, regardless of State.  *See Fox*

---

[5] Even Defendants' counsel's firm acknowledged in another D. Kan. FLSA case that the reasonable attorney time required to review only 393,600 ESI documents – nearly 40,000 less than Defendants produced in this case – is approximately 9,840 hours over five and a half years, for a total attorneys' fee of $2,538,720.  (Declaration of Sarah B. Anthony filed in *Green v. Harbor Freight Tools,* Case No. 09-CV-2380, ECF No. 291-9, attached as Exhibit 8).  Notably, this ESI-only estimate is more than 2 ½ times the hours Plaintiffs' counsel spent litigating this entire case and exceeds Plaintiffs' total requested attorneys' fees for this lawsuit. This confirms both the reasonableness of Plaintiffs' counsel's hours billed and the overall reasonableness of the total fee requested.

*v. Pittsburg State Univ.*, 258 F. Supp. 3d 1243, 1264 (D. Kan. 2017) ("Most of the practitioners in the district practice in both Kansas and Missouri. … These practitioners in the Kansas City metropolitan area do not change their rates based on whether the case is filed in Kansas City, Kansas or Kansas City, Missouri."); *Ellis,* 163 F.3d at 1203 (prevailing market rate is "the price that is customarily paid in the community for services like those involved in the case at hand."); *Case,* 157 F. 3d at 1255-56 ("court abuses its discretion when it ignores the parties' market evidence…").

"'The first step in setting a rate of compensation for the hours reasonably expended is to determine what lawyers of comparable skill and experience practicing in the area in which the litigation occurs would charge for their time.'" *Garcia v. Tyson Foods, Inc.*, No. 06-2198-JTM, 2012 WL 5985561, at *3 (D. Kan. Nov. 29, 2012), aff'd, 770 F.3d 1300 (10th Cir. 2014) (quoting *Case*, 157 F.3d at 1256); *see Ellis,* 163 F.3d  at 1203-04 (reasonable rates should be "in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation" and this is satisfied by evidence "the market command[s] an attorney's hourly rate at a certain level."). Then, the hourly rates sought by plaintiff's counsel "must be analyzed in the context of the financial risk plaintiffs' counsel took in prosecuting the case, including a delay in payment and the contingency fee basis." *Garcia,* 2012 WL 5985561, at *4.  Importantly, the contingency risk should be reflected "in the form of a higher hourly rate for the attorney skilled and experienced enough to overcome this risk." *Id.* (citation omitted).

Plaintiffs' counsel are highly experienced and litigate complex wage-and-hour cases throughout the country.  (Exh. 1, George Decl., at ¶¶ 37-41;  Exh. 2, Davis Decl., at ¶¶ 2-7; Declaration of Nicholas J. Walker ("Walker Decl."), attached as Exhibit 3, at ¶¶ 2-8). Their hourly rates range from $525 to $675 per hour and are reasonable based on the skill, experience, and reputation of Plaintiffs' counsel. (Exh. 1, George Decl., at ¶ 35;  Exh. 2, Davis Decl., at ¶ 21; Exh. 3, Walker Decl., at ¶¶ 2-9). These hourly rates are market rates similar to those charged by firms with comparable expertise in class and collective actions and other complex litigation, and these rates are comparable to those approved by courts in the Metropolitan area, including this District.  *See, e.g.*, *Hoffman v. Poulsen Pizza LLC,* No. 15-2640-DDC-KGG, 2017 WL 25386, at *7 (D. Kan. Jan. 3, 2017) (hourly rate of $600 was reasonable for a partner in FLSA action); *Garcia,* 2012 WL 5985561, at *3, 9 (approving "blended rate" fee award that included $600/hour partner rate – for work performed over 9 years ago – for experienced FLSA attorney);  *Bruner v. Sprint,* No. 07-2164, 08-2133, 08-2148, 2009 WL 2058762, *10 (D. Kan. July 14, 2009) (awarding collective counsel a blended rate of $590.91 in FLSA settlement); *Young v. Physician Office Partners, Inc.*, No. 18-cv-2481-KHV-TJJ, 2020 WL 3655415, at *5 (D. Kan. June 10, 2020), report and recommendations adopted by No. 18-2481-KHV, 2020 WL 3639854, at *1 (D. Kan. July 6, 2020) (hourly rate of $600 was reasonable for Kansas City attorney in routine employment case); *Berry v. Volkswagen Grp. of Am., Inc.*, 397 S.W.3d 425, 428, n. 2 (Mo. 2013), reh'g denied (May 28, 2013) (affirming the Circuit Court's order awarding

fees up to $650/hour for Kansas City lawyers—for work performed over 8 years ago—in a Missouri Merchandising Practices Act class action suit, and also awarding a 2.0 multiplier to lodestar fees in light of the remedial nature of the statute). *See also,* Exhibit 9, 2020 Missouri Lawyers Media Corporate Counsel Desk Book, p. 4 (listing 2019 partner billing rates ranging from $650 and $865 for class action attorneys in the Metropolitan area).[6]

Furthermore, because Plaintiffs' counsel litigates across the country, they routinely monitor the prevailing rates for experienced litigators in various forums nationwide.  (Exh. 1, George Decl., at ¶ 42;  Exh. 2, Davis Decl.,at ¶ 23). Based on data published by the National Law Journal, Plaintiffs' counsel's rates are commensurate with hourly lawyers of similar experience handling complex litigation and collective wage and hour cases on a national basis. *See, e.g.,* December 6, 2010, Nat'l L.J. 12, (Col. 1). For example, *over eleven years ago*, three labor/employment defense firms handling wage-and-hour cases – two of which have offices here in the Metropolitan area – reported hourly billing ranges that are comparable to or higher than those submitted here: Jackson Lewis (top range of $715); Littler Mendelson, (top range of $650); and Winston & Strawn, (top range $1,075).  *Id.*

In addition to Plaintiffs' counsel's own declarations, the declarations submitted by other highly qualified and experienced class and collective action attorneys with

---

[6] Courts in this District have recognized this source as evidence of market rates.  *See Hampton v. Barclays Bank Delaware*, No. 18-4071-DDC-ADM, 2020 WL 7714407, at *3 (D. Kan. Dec. 29, 2020) ("Our Court has approved hourly rates that 'are within and consistent with the rates reflected in the Corporate Counsel Desk Book for the Kansas City area.'") (citation omitted).

comparable experience – whose rates have been Court approved at $675-$875 per hour – further support the reasonableness of the hourly rates sought here.  (Exh. 4, Meeks Decl., at ¶¶ 9-11; Exh. 5, Hanson Decl., at ¶ 12; Exh. 6, Donelon Decl., at ¶¶ 8-9). Given that Plaintiffs' counsel as well as the supporting declarants practice locally and on a national level, and all attest to the reasonableness of Plaintiffs' counsel's rates, this factor supports the reasonableness of Plaintiffs' requested fee award, as does the evidence above.

Finally, the "blended" hourly rate for Plaintiffs' counsel is reasonable and supports the requested fee award.  Here, taking the fee requested ($2,200,380) and dividing it by the total time in the case (3,760 hours) results in a blended rate of $585/hour for all attorney time.   (Exh. 1, George Decl., at ¶ 36;  Exh. 2, Davis Decl.,at ¶ 22).  When accounting for $42,925 in out-of-pocket, unrecoverable expenses (i.e., expert witness fees), the effective blended hourly rate drops to $574/hour (i.e*., total fee requested ($2,200,380), less non-recoverable expenses ($42,925), divided by total time (3,760 hours)). Id.*; *see also Garcia,* 2012 WL 5985561, at *2-3, n. 1 (describing this effective blended hourly rate).  This blended hourly rate is reasonable, reflects the overall reasonable attorney fee award sought here, and falls squarely within the blended rate range previously approved in this District. (Exh. 4, Meeks Decl., at ¶ 14; Exh. 5, Hanson Decl., at ¶ 14; Exh. 6, Donelon Decl., at ¶ 10); *see, e.g., Bruner,* 2009 WL 2058762, *10 (awarding collective counsel a blended rate of $590.91 in FLSA settlement); *In re: Bank of America Employment Practices Litigation,*

10-MD-2138 (D. Kan. December 18, 2013)(Docs 641 and 652)(Exh. 6, Donelon Decl., at ¶ 8-9)(awarding collective counsel a blended rate of $635.50).

**D.     The *Johnson* Factors Likewise Support Plaintiffs' Requested Fee Award.**

Courts in this District have also analyzed some or all of the factors identified in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974) (the "*Johnson* factors") in determining a reasonable attorney's fee award. *Fox,* 258 F. Supp. 3d at 1254. "It is rare that all factors are met" and the "lodestar calculation is meant to be the primary consideration when awarding fees rather than the *Johnson* factors." *Id.*   Here, however, each of the *Johnson* factors supports the reasonableness of Plaintiffs' counsel's requested fees.

1.     <u>The Time And Labor Required.</u>

As already detailed, this case has been hotly contested, complex and protracted. Plaintiffs' counsel spent over 3,760 hours prosecuting the case (after reduction in the exercise of billing judgment) for nearly three and half years.  (Exh. 1, George Decl., at ¶ 43; Ex. 2, Davis Decl., at ¶¶ 24).   Moreover, the work on this is case not done, and Plaintiffs' counsel will spend many hours – not included in the fee request – further briefing the present motion, overseeing settlement administration and the payment process, and communicating with Plaintiff and the Opt-in Plaintiffs.  (Exh. 1, George Decl., at ¶ 44; Ex. 2, Davis Decl., at ¶ 25).   Highly-qualified, experienced wage-and-hour litigators agree 3,760 hours is an abundantly reasonable amount of time to expend litigating this protracted,

23

complex case.  (Meeks Decl., Exh. 4, at ¶ 13; Hanson Decl., Exh. 5, at ¶ 13).  This factor readily supports Plaintiffs' requested fee award.  *See also*, Section III. B. *supra.*

2.    The Novelty And Difficulty Of The Questions.

This litigation involved a myriad of legal issues that Defendants argued throughout the case, including; (i) the contours and scope of the "white collar" FLSA exemptions and regulations, and whether Defendants satisfied the salary and/or fee basis test to invoke these exemptions;  (ii) whether the 7(i) "retail establishment" exemption defense – which Defendants belatedly sought to assert – applied to the collective action Plaintiffs in light of the DOL's withdrawal of certain interpretive guidance during the pendency of this lawsuit; (iii) the application of the *de minimus* defense; (iii) the potential impact of MLOA's prior settlement with the DOL; and (iv) the proper threshold and standards for representative evidence in the trial of an FLSA collective action—among others.  (Exh. 1, George Decl., at ¶ 45; Ex. 2, Davis Decl., at ¶ 26).  This factor supports Plaintiff' fee application.

3.    The Skill Requisite To Perform The Legal Service Properly.

As their declarations demonstrate, Plaintiffs' counsel are highly skilled and have extensive wage and hour litigation experience, as well as experience handling other complex class and multi-district litigation matters (including through trial).  (Exh. 1, George Decl., at ¶¶ 37-41; Ex. 2, Davis Decl., at ¶¶ 2-7).  This is confirmed by declarations submitted by counsel with comparable experience:  Plaintiffs' counsel are among the most experienced and effective wage-and-hour litigators in the community and have

"successfully prosecuted many wage and hour actions both locally and nationwide" and "enjoy a reputation as a top-flight wage and hour plaintiffs' firm." (Exh. 4, Meeks Decl., at ¶ 10; Exh. 5, Hanson Decl., at ¶ 9; Exh. 6, Donelon Decl., at ¶ 6). In Plaintiffs' counsel's experience, FLSA collective cases require more than the average skill set needed to litigate a single-plaintiff case. (Exh. 1, George Decl., at ¶ 46; Ex. 2, Davis Decl., at ¶ 27). This factor supports Plaintiffs' requested fee award.

      4.    <u>The Preclusion Of Employment By The Attorney Due To The Acceptance Of The Case.</u>

As addressed previously, the case required an immense, continuous time commitment, and will require still more work. (Exh. 1, George Decl., at ¶ 47; Ex. 2, Davis Decl., at ¶ 28). Plaintiffs' counsel estimate that, in the 3,760 hours and nearly three and a half years they have litigated this case, the attorneys could have accepted 3 to 4 wage-and-hour cases of typical size and complexity, without incurring the exceptional out-of-pocket expenses associated with this case. (Exh. 1, George Decl., at ¶ 48; Ex. 2, Davis Decl., at ¶ 29).As a result, there is no doubt Plaintiffs' Counsel experienced the loss of significant other case opportunities. This factor supports their fee request.

      5.    <u>The Customary Fee.</u>

Plaintiffs' counsel typically only accept contingency fee cases, and the rates charged in this case are customary to and typical of our rates charged in other cases. (Exh. 1, George Decl., at ¶ 49; Ex. 2, Davis Decl., at ¶ 30). In this case, Plaintiffs agreed to pay DGM a contingency fee equal to the greater of (a) Court-awarded attorneys' fees, or (b) 35% of the

total judgment or settlement amount, after adding in Court-awarded attorneys' fees and expenses. *Id.* Here, Plaintiffs' $2,200,353 fee request happens to be within a few thousand dollars of 35% of the total settlement amount after adding in the requested attorneys' fees and expenses (e.g., ($3,900,353 + $2,200,353 + $131,128) * .35 = $2,181,309). *Id.* This factor also favors approving Plaintiffs' fee request.

### 6.    Whether The Fee Is Fixed Or Contingent.

Plaintiffs' counsel undertook this collective action representation on a fully contingent basis and would recover none of its out-of-pocket expenses or time billed unless the case succeeded. (Exh. 1, George Decl., at ¶ 50; Ex. 2, Davis Decl., at ¶ 31).  In this case, DGM invested over three years and more than $173,000 (including unreimbursed expert witness fees) with the chance of never recovering a dime. *Id.* It is well recognized that contingency representation ought to be compensated at a higher rate, and is appropriately considered when assessing the hourly rates of plaintiffs' counsel. See, e.g., *Garcia* 2012 WL 5985561, at *4; *Burlington v. Dague*, 505 U.S. 557, 562 (1992) (noting the contingency basis of the representation is "already subsumed in the lodestar"); *see also In re Continental Illinois Securities Litigation*, 962 F.2d 566, 569,574 (7th Cir. 1992) (reversing trial court for refusing to award class action contingency lawyers more than their ordinary billing rates in order to reflect the risky character of their undertaking).  This factor also favors approving Plaintiffs' fee request.

7.      Time Limitations Imposed By The Client Or The Circumstances.

This case did not present any unusually compressed time periods, but it did involve an enormous time commitment over many years, which inevitably imposed personal and professional constraints on Plaintiffs' counsel's time.  (Exh. 1, George Decl., at ¶ 51; Ex. 2, Davis Decl., at ¶32).  This factor supports the fee award sought here.

8.      The Amount Involved And The Results Obtained.

The results obtained in this case are exceptional.  Plaintiffs won summary judgment on the Team Lead exemption defenses – thereby establishing liability for all Team Leads' overtime hours – and fought tirelessly to unravel multiple, factually-nuanced defenses related to Loan Officers' off-the-clock work. These efforts culminated in obtaining a very favorable $3.9 million settlement (exclusively for the benefit of the 167 collective action Plaintiffs).  This settlement provides significant, certain and imminent relief to the collective action Plaintiffs, with an average settlement payment of over $23,000 per Plaintiff and over $264 per eligible workweek.  (Exh. 1, George Decl., at ¶ 52; Ex. 2, Davis Decl., at ¶ 33).  FLSA attorneys experienced in loan officer unpaid overtime cases agree this is an exceptional result. (Exh. 4, Meeks Decl., at ¶ 16; Exh. 5, Hanson Decl., at ¶ 16; Exh. 6, Donelon Decl., at ¶ 12).

Moreover, this case was the catalyst for MLOA changing the pay practices Plaintiff challenged as unlawful: during the course of this litigation, Opt-in Plaintiffs reported MLOA began paying Team Leads a guaranteed salary as required to invoke the FLSA's

white collar exemptions, and it also implemented a mobile app which finally allowed loan producers to report – and be paid for – time worked outside the office. (Exh. 1, George Decl., at ¶ 53; Ex. 2, Davis Decl., at ¶ 34). This factor supports Plaintiffs' application.

9.   The Experience, Reputation, And Ability Of The Attorneys.

As demonstrated by supporting declarations, and addressed in detail above, Plaintiffs' counsel are highly skilled, well experienced in wage-and-hour litigation and complex matters, and enjoy top-notch reputations in Kansas City and beyond. (Exh. 4, Meeks Decl., at ¶¶ 10-11; Exh. 5, Hanson Decl., at ¶ 9-11; Exh. 6, Donelon Decl., at ¶¶ 6-7). This factor supports Plaintiffs' application.

10.   The "Undesirability" Of The Case.

The immense time and substantial financial investment required to litigate an FLSA collective case like this over more than three years, all with the risk of recovering nothing, make this case particularly undesirable to most plaintiff's attorneys in the market. (Exh. 4, Meeks Decl., at ¶ 15; Exh. 5, Hanson Decl., at ¶ 15; Exh. 6, Donelon Decl., at ¶ 11). Few plaintiffs' firms are even equipped to handle a case of this magnitude and/or would elect not to undertake the representation because it would preclude the acceptance of several other cases requiring less time and substantially less than the $173,000+ in out-of-pocket expenses Plaintiffs' counsel necessarily incurred here. (Exh. 4, Meeks Decl., at ¶ 15; Exh. 5, Hanson Decl., at ¶ 15; Exh. 6, Donelon Decl., at ¶ 11); Exh. 1, George Decl., at ¶ 54; Ex. 2, Davis Decl., at ¶ 35). This factor supports Plaintiffs' fee request.

11.  <u>The Nature And Length Of The Professional Relationship With The Client.</u>

Plaintiffs' counsel spent many hours with Plaintiff discussing the claims in this case, attending three separate mediations, and preparing and producing him for deposition. (Exh. 1, George Decl., at ¶¶ 55; Ex. 2, Davis Decl., at ¶ 36). Plaintiffs' counsel also spent substantial time with several other collective action Plaintiffs, discussing the claims and factual issues in this case and preparing and producing them for deposition. Moreover, Plaintiffs' counsel routinely communicated throughout this case with numerous collective action Plaintiffs who often inquire about status updates and other case issues. *Id.* Plaintiffs' counsel's relationship with the collective action Plaintiffs has been an extensive and significant responsibility over several years. *Id.* However, Plaintiffs' counsel consider this part of their normal responsibilities of class and collective action work, and there was nothing out of the ordinary about their client relationships in this case. *Id.* Plaintiffs' counsel view this factor as neutral or immaterial.

12.  <u>Awards in Similar Cases</u>

As explained in detail in Section III. B. and C. *supra*, the awards in similar complex, class or collective action cases are comparable to the award sought in this case. This factor, together with the others, supports approving Plaintiffs' requested fee award.

**E.  The Court Should Award Reasonable Attorneys' Expenses and Costs.**

An award of reasonable attorneys' costs and expenses is also mandatory under the FLSA. *See* 29 U.S.C. 216(b). Under the FLSA, this may include "reasonable out of pocket

expenses" that go "beyond those normally allowed under Fed. R. Civ. P 54(d) and 28 U.S.C. § 1920." *Smith v. Diffee Ford Lincoln-Mercury, Inc*., 298 F.3d 955, 969 (10th Cir. 2002); *Lamon v. City of Shawnee, Kan*., 754 F.Supp. 1518, 1524 (D. Kan. 1991) (noting expenses under the FLSA generally include "all reasonable out-of-pocket expenditures" that are not "normally absorbed as part of law firm overhead"), *rev'd in part on other grounds by* 972 F.2d 1145 (10th Cir. 1992).

Plaintiffs' counsel request reimbursement for $131,128.15 in costs and expenses as part of the fee award.    (Ex. 2, Davis Decl., at ¶¶ 37).   A substantial portion of these costs/expenses, $101,586.73 was incurred to host and facilitate efficient review of the 2.5 million pages of ESI produced in this matter,[7] $14,545.89 was incurred for depositions, and $10,014.82 was incurred to send Court-approved notice and consent forms to FLSA Opt-in Plaintiffs and to communicate with and gather discovery responses from the collective.  *Id.*  And all of the costs/expenses for which Plaintiffs seek reimbursement were reasonably and necessarily incurred in the prosecution of the case, are the types of expenses typically included in a bill for professional services and that are not absorbed as part of firm overhead.  *Id.*

---

[7] While the cost of ESI storage and technical database support for document coding, retrieval, and specifically targeted searches was significant, such cost was a worthwhile investment because predictive coding reduced necessary attorney review time, and the associated expense was less than Plaintiffs' counsel would have otherwise incurred to analyze the ESI database, even using contract attorneys at a discounted hourly rate. *See* discussion *supra* FN 5; (Exh. 2, Davis Decl., at ¶ 39).

Further, in the exercise of billing judgment, Plaintiffs' counsel have eliminated expenses for case-related meals and do not seek reimbursement for other recoverable expenses such Westlaw and internal copy charges. (Exh. 2, Davis Decl., at ¶ 38).  Finally, recognizing that expert witness fees are not likely recoverable in this FLSA case, Plaintiffs do not include $42,925 in out-of-pocket expenses Plaintiffs' counsel incurred to obtain necessary expert damage calculations, which benefitted the entire collective and resulted in this settlement.   (Exh. 2, Davis Decl., at ¶ 38). Plaintiffs' requested costs and expenses are reasonable, necessary, and should be awarded.

For these reasons, Plaintiffs respectfully request this Court's Order approving Plaintiffs' requested award of $2,200,380 in attorneys' fees and $131,128.15 in expenses and costs.

Date:  May 12, 2021

Respectfully submitted,

**DAVIS GEORGE MOOK LLC**

/s/ *Nicholas J. Walker*
Brett A. Davis, KS Bar No. 16217
Tracey F. George, D.Kan. Bar No. 77967
Nicholas J. Walker KS Bar No. 21951
**DAVIS GEORGE MOOK LLC**
1600 Genessee St., Suite 328
Kansas City, MO 64102
Tel. 816-569-2629
Fax.  816-447-3939
E-mail: tracey@dgmlawyers.com
E-mail: brett@dgmlawyers.com
E-mail: nick@dgmlawyers.com
www.dgmlawyers.com

**Attorneys For Plaintiff**

## CERTIFICATE OF SERVICE

I certify that on this, the 12th day of May, 2021, I have served the foregoing on Defendants via the Court's CM/ECF electronic filing system, which will send electronic notification to all counsel of record.

/s/ *Nicholas J. Walker*
**Attorney for Plaintiff**