**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**

**BEAU CHARBONNEAU,**

on Behalf of Himself
and All Others Similarly Situated,

Plaintiff,

v.

**MORTGAGE LENDERS OF**
**AMERICA L.L.C., et al.**

Defendants.

**CASE NO.: 2:18-CV-2062-HLT-ADM**

JURY TRIAL DEMANDED

## DECLARATION OF TRACEY F. GEORGE

I, Tracey F. George, pursuant to 28 U.S.C. § 1746, declare that the following are true and correct:

1.      I, together with co-counsel, represent Plaintiff Beau Charbonneau and the Opt-in Plaintiffs in the above-captioned lawsuit.  I offer this declaration in support of Plaintiffs' Motion For Award of Attorneys' Fees, Expenses, and Costs And Integrated Memorandum in Support ("Fee Approval Motion").

2.      Brett A. Davis and I are founding members of the law firm Davis George Mook LLC ("DGM"), and together we serve as Collective Counsel with our partner Nicholas J. Walker, representing Plaintiff and Opt-in Plaintiffs ("Collective Members"), in this case against Mortgage Lenders of America, Bradley Ives, and Phillip Kneibert. (collectively "MLOA" or "Defendants").

3.      As Collective Counsel, I have been actively involved in this case.  Since January 2018, I co-led and managed this complex wage-and-hour litigation and can personally attest to the extensive efforts undertaken by DGM to obtain this highly favorable settlement on behalf of the FLSA Collective Members.

4.      Before filing Plaintiffs' fee motion, I contacted Defendants' counsel, Chris Pace, on May 5, 2021, and provided information regarding Plaintiffs' attorneys' fees, expenses, and costs incurred to date, the number of hours billed, and the blended hourly attorney rate.  I proposed a settlement of Plaintiffs' reasonably incurred fees, expenses, and costs, which Mr. Pace agreed to convey to Defendants.  On May 10, 2021, Defendants' counsel, Justin Dean, contacted me and indicated Defendants were unwilling to accept Plaintiffs' proposed settlement and Plaintiffs should file their fee motion.

5.      Ultimately, the parties could not agree on an award of reasonable fees, expenses, and costs, and Plaintiffs believe there should be no further delay in the resolution of this matter.

6.      Following conditional certification on December 6, 2018, Plaintiff utilized a third-party administrator to send Court-approved notice and consent forms to current and former employees in the following certified collectives:

- All persons who are, have been, or will be employed by Defendant as "Team Leads," "Team Leaders," and other individuals with similar job titles within the United States at any time during the last three years through the entry of judgement in this case.

- All persons who are, have been, or will be employed by Defendant as "Loan Officers," "Mortgage Loan Officers," "Entry Level Loan Officers," and other

2

individuals who originated loan products with similar job titles within the United States at any time during the last three years through the entry of judgment in this case.

7.     The Court-approved notice and consent forms were sent to approximately 450 current and former MLOA employees, and a total of 170 individuals, including Plaintiff Charbonneau, filed consents to join this litigation ("Opt-in Plaintiffs").  This included twenty-five individuals employed as Team Leads during the relevant three-year statutory period, and 145 additional individuals employed only as Loan Officers and/or Loan Specialists during that period. Three Loan Officer Opt-in Plaintiffs withdrew their consents during litigation, leaving 167 total Plaintiffs in this lawsuit.

8.     As Collective Counsel, DGM communicated extensively with the Opt-in Plaintiffs and potential Opt-in Plaintiffs during the notice administration process.

9.     Prior to (and following) the close of the opt-in period, the parties met and conferred in detail concerning a proposed discovery plan and scheduling order. This process was more intensive than in smaller, less complex cases because the parties had widely divergent views on the scope of discovery: MLOA requested expansive discovery from all Opt-in Plaintiffs, whereas Plaintiffs proposed representative discovery and objected to collective-wide discovery (noting the exponential increase in time and expense it would create). Ultimately, at the scheduling conference on April 18, 2019, the Court authorized written discovery to all Opt-in Plaintiffs (although on a lesser scale than MLOA requested).

10.     Both parties served and responded to written discovery requests over the next several months.  For Plaintiffs, this meant responding to approximately 160 separate sets of

individualized interrogatories and requests for production of documents, and reviewing voluminous time, pay, and personnel records and documents.

11.     The parties also engaged in the tedious process of negotiating and agreeing on custodians and search terms for ESI discovery.

12.     As directed by the Court, the parties participated in mediation with a private mediator on September 13, 2019, which was unsuccessful.

13.     Subsequently, Plaintiffs conducted additional extensive discovery on central issues, including serving over 1,800 requests for admission targeted at Defendants' affirmative defense that Team Leads were exempt from the FLSA's overtime requirement.

14.     The parties also continued work to obtain Defendants' ESI production. Because of issues with Defendants' ESI vendor, that production was delayed, which necessitated an Amended Scheduling Order.

15.     Eventually, MLOA produced over 432,000 ESI documents (or 2.5 million pages) and produced nearly 2,560,000 pages of documents in total during discovery. Plaintiffs' review of this discovery required significant attorney time, as well as the use of vendor-provided storage and document review database support.

16.     Following Defendants' initial ESI production, the parties conducted multiple depositions.  Plaintiffs deposed seven key defense witnesses, including Kneibert and Ives, four management witnesses, MLOA's former HR Director, and MLOA's former HR Coordinator; these depositions were in addition to the Rule 30(b)(6) depositions Plaintiff previously conducted on various topics.  Defendants deposed Plaintiff Charbonneau and eight other Opt-in Plaintiffs.

17.     Plaintiff also retained and disclosed a Ph.D. economist as an expert witness on damages issues, produced his collective-wide and individual damage calculations, report and supplement, and prepared and produced him for deposition.

18.     On June 3, 2020, the parties held a second mediation with mediator Michael Russell, Esq. from Nashville, Tennessee.  Again, mediation failed.

19.     The parties spent significant time working on the proposed pretrial order, exchanging and discussing multiple draft proposals, and attempting to reach factual, documentary and evidentiary stipulations. After submitting their proposed pretrial order, the parties participated in an initial pretrial conference with the Court on August 19, 2020.  The Court directed the parties to revise certain portions of the proposed pretrial order and scheduled a second pretrial conference on September 4, 2020.

20.     On September 21, 2020, Plaintiffs served their expert's supplemental report and calculations.

21.     Both before and after this Court's orders denying Defendants' *Daubert* and decertification motions, DGM continued earnest trial preparation for Plaintiffs' collective claims, including but not limited to: identifying trial witnesses, exhibits, and other evidence sufficient to constitute representative proof on each element of Plaintiffs' claims; communications with Opt-in Plaintiffs regarding potential trial attendance and testimony; continued ESI review to establish elements of proof, including evidence of off-the-clock work; legal research and strategy concerning potential motions in limine; identifying impeachment evidence for Defendants' likely trial witnesses; researching approved jury instructions, verdict directors, and verdict forms in

recent FLSA trials to structure presentation of evidence; identifying proposed fact and representative proof stipulations to shorten trial.

22.     On March 4, 2021, the parties participated in a third and final, several-hour mediation with Magistrate Judge O'Hara.  While the parties did not reach a settlement during the mediation, significant progress occurred.  Following mediation, the parties continued negotiations and ultimately reached a mutual agreement for resolution.

23.     As reflected by nearly 220 docket entries in this complex case, DGM devoted more than 3,760 hours, over nearly three and half years, prosecuting this case to a favorable settlement for the collective action Plaintiffs.

24.     DGM's daily time entries for this large-scale litigation are hundreds of pages long, include over 1,000 entries, and reveal attorney-client privileged and work-product information. These entries are further sensitive because they serve as a roadmap for DGM's litigation strategy in FLSA collective cases, which is of particular concern here because Defendants' counsel (Ogletree Deakins, and Chris Pace in particular) regularly defends employers in FLSA cases litigated by DGM. Specifically, Ogletree Deakins represented defendants in the last four FLSA collective cases DGM filed, and Mr. Pace served as lead defense counsel in three of those cases.

25.     I have reviewed DGM's time entries recorded in this case and, exercising billing judgment, removed time entries for non-essential tasks or duplicative efforts.  For example, Mr. Walker attended all three mediations with myself, Mr. Davis, and Plaintiff Charbonneau, and Mr. Walker's assistance with client communication and research during each mediation was important and helpful.  However, in the interest of conservative billing, Plaintiffs did not charge for Mr.

Walker's mediation attendance.  Furthermore, while key depositions necessitated the presence of two attorneys (e.g., Plaintiff Beau Charbonneau, Defendant Philip Kneibert, and the first Loan Officer and Team Lead Opt-in Plaintiffs produced for deposition) others benefited from, but did not necessarily require, two attorneys. In those instances, in the interest of conservative billing, the second attorney's time was not charged.  I reviewed and finally approved all written discovery requests but did not bill hours for that review because Mr. Davis also approved the discovery. Similarly, Mr. Davis stayed abreast of expert damage calculations, methodologies, reports, and supplements but billed only minimal time for these tasks because Mr. Walker and myself were primarily responsible for expert discovery.  These examples are reflective of the billing judgment applied to all of DGM's time entries.

26.     What remains are reasonable hours for necessary work, which I am confident added value to this case, led to critical Orders from this Court and, ultimately, the favorable settlement agreement obtained.

27.     During 2018, DGM performed 229.5 hours of work on this case.  This work included:

> a.   Conferences with Beau Charbonneau and other Loan Officers and Team Leads to conduct an initial investigation and reviewing documents in preparation for drafting the initial complaint;
>
> b.   Drafting the initial complaint;
>
> c.   Analyzing MLOA's initial answer and affirmative defenses;
>
> d.   Reviewing the Court's initial order setting a scheduling conference;
>
> e.   Drafting an amended complaint;

f.   Analyzing MLOA's answer to Plaintiff's amended complaint;

g.   Analyzing and responding to, including related research, MLOA's initial motion to dismiss;

h.   Drafting Plaintiff's second amended complaint;

i.   Analyzing MLOA's second amended answer and affirmative defenses;

j.   Analyzing and responding to, including related research, MLOA's second motion to dismiss;

k.   Communicating with multiple Loan Officers and Team Leads interested in joining the lawsuit and obtaining information and opt-in consents from same;

l.   Conferring with opposing counsel on a protective order and revising same;

m.   Conferring with opposing counsel for Rule 26 conference and initial scheduling order;

n.   Drafting and revising report of parties' planning meeting;

o.   Preparing for and participating in the initial scheduling conference;

p.   Reviewing the Court's initial scheduling order;

q.   Speaking with and obtain declarations from multiple Loan Officers and Team Leads in preparation for use in motion for conditional certification;

r.   Briefing, including reply brief and related research, motion for conditional certification;

s.   Analyzing orders denying both of MLOA's motions to dismiss;

t.   Analyzing order granting Plaintiff's motion for conditional certification;

u.   Status reports to and communications with Opt-in Plaintiffs.

28.     During 2019, DGM performed 611.9 hours of work on this case.   This work included:

a.  Working with third-party notice administrator to prepare and disseminate communications and Court-approved notice and consent forms to putative opt-in plaintiffs;

b.  Identifying information missing from initial class list and working with Defendant's counsel to obtain updated list;

c.  Administering notice to 458 former and current MLOA employees, including responding to many calls and emails from putative opt-in plaintiffs;

d.  Reviewing opt-in consents as they arrive, and regularly preparing and filing notices of opt-in consents;

e.  Speaking at length with numerous current and former MLOA employees concerning the lawsuit, eligibility, and opt-in mechanism, and gathering information and answering questions about the claims;

f.  Reviewing the Court's second order setting a scheduling conference;

g.  Drafting Rule 26 disclosures;

h.  Analyzing MLOA's initial proposed written discovery, meet-and-confer conferences concerning same, and proposing more limited scope of discovery in advance of upcoming scheduling conference;

i.  Conferring with MLOA's counsel to discuss scheduling and discovery in preparation for drafting updated report of parties' planning meeting for submission to the Court;

9

j.  Drafting and revising report of parties' planning meeting including research and support for Plaintiff's position concerning limited discovery;

k.  Reviewing order transferring case to Magistrate Judge Angel D. Mitchell and order resetting the scheduling conference;

l.  Preparing for and attending scheduling conference with Magistrate Judge Angel D. Mitchell;

m.  Reviewing scheduling order with discovery rulings by Magistrate Judge Angel D. Mitchell;

n.  Drafting Plaintiffs' initial discovery requests (interrogatories and requests for production) to MLOA;

o.  Reviewing initial voluminous pay and time data produced in preparation for making an initial demand as required by the Court's scheduling order;

p.  Working with an expert to create an initial damages model to inform opening settlement demand, and identifying missing data needed for complete calculations;

q.  Providing initial settlement demand along with explanation of same;

r.  Analyzing MLOA's objections and responses to Plaintiffs' initial discovery requests (interrogatories and requests for production) and meet-and-confer conferences;

s.  Working with third-party administrator to disseminate individualized written discovery requests served on every Opt-in Plaintiff, collecting and analyzing responses from 160 individuals, following up with Opt-in Plaintiffs who failed

10

to return discovery responses, and working with Opt-in Plaintiffs to clarify or supplement answers to same;

t.  Reviewing MLOA's initial production of voluminous non-ESI documentation for all 167 Plaintiffs (approximately 50,000 pages) which included, but is not limited to, pay stubs, personnel files, time data, pay data, commission sheets, resumes, compensation agreements, org charts, VPN data, job descriptions, job postings, employee manuals, employee policies, and former wage claims.

u.  Drafting Rule 30(b)(6) corporate deposition notice to identify computer software, applications, and sources and location of ESI for use in obtaining ESI;

v.  Preparing for and conducting Rule 30(b)(6) corporate deposition;

w.  Drafting ESI Protocol and conferring with opposing counsel regarding revisions to same;

x.  Drafting ESI search terms and conducting multiple conferences with MLOA's counsel concerning same to reach agreement on ESI search terms;

y.  Drafting third amended complaint to add Bradley Ives and Phil Kneibert as defendants;

z.  Reviewing MLOA's third amended answer and affirmative defenses

aa. Drafting mediation statement and providing materials to mediator, David Vogel, in advance of first mediation;

bb. Preparing for and participating in first mediation;

cc. Analyzing voluminous Team Lead pay data (month by month) and drafting over 1,800 pay-period specific requests for admissions targeted at Defendants' defense that Team Leads were properly classified as FLSA exempt;

dd. Drafting motion to amend the scheduling order due to MLOA's delay in producing ESI;

ee. Preparing for and presenting argument to Magistrate Judge Angel D. Mitchell in support of motion to compel ESI production, which was granted;

ff. Receiving and reviewing the first amended scheduling order with new deadlines;

gg. Reviewing and revising amended protective order to cover ESI production;

hh. Communicating with and updating Opt-in Plaintiffs regarding case developments.

29.     During 2020, DGM performed 2,392.1 hours of work on this case.   This work included:

a. Reviewing MLOA's ESI production that included over 432,000 documents (or 2,500,000 pages).[1]

b. Analyzing objections and responses to Plaintiffs' initial 1,800+ requests for admissions (over 900 pages); drafting golden rule correspondence concerning same; and reviewing revised responses to initial requests for admissions;

---

[1] Defendants' counsel's own declaration confirms a comparable ESI review would reasonably take 9,840 hours of attorney review time (over 5.5 years) and cost more than $2.5 million.  *See Declaration of Ogletree Deakins attorney Sara Anthony,* attached to Plaintiffs' fee motion as Exhibit 7.

c.   Preparing Plaintiff Beau Charbonneau and Opt-in Plaintiffs James "David" Barber, Jacob Bernard, Joseph Cunningham, Brandon "Timothy" Hoge, Matthew Johnson, Stephanie O'Farrell, Emily Sidwell, and David Vaughn for depositions;

d.   Analyzing pay, time, personnel, and email information for each Opt-in deponent in preparation for their depositions;

e.   Producing Plaintiff and Opt-in Plaintiffs for depositions;

f.   Drafting and obtaining detailed declarations from over 120 Opt-in Plaintiffs in support of Rule 23 class motion and for later use in opposing Defendants' motion to decertify;

g.   Briefing, including reply brief and related research, motion for Rule 23 class certification;

h.   Working with Dr. Krueger to complete comprehensive expert damages calculations (including his report), and identifying best methodology to accurately calculate Team Lead and Loan Officer Opt-in Plaintiffs' unpaid overtime;

i.   Analyzing and responding to, including related research, MLOA's motion for partial summary judgment.

j.   Preparing for and taking depositions of individual defendants Bradley Ives and Phil Kneibert and five additional defense witnesses;

k.   Briefing, including reply brief and related research, summary judgment on the MLOA's exemption defenses to the Team Lead claims;

l.   Drafting additional written discovery including a second set of interrogatories, a second request for production of documents, and second request for admissions;

m.   Drafting golden rule correspondence concerning the timeliness of same and conference with Magistrate Judge Angel D. Mitchell regarding dispute;

n.   Reviewing and analyzing objections and responses to second set of written discovery;

o.   Drafting golden rule correspondence and conferences with opposing counsel concerning Defendants' deficient discovery responses;

p.   Drafting mediation statement and providing materials to second mediator, Michael Russell, in advance of second mediation;

q.   Preparing for and participate in second mediation;

r.   Analyzing and responding to, including related research, MLOA's motion to amend answer out of time to add the 7(i) exemption defense;

s.   Analyzing order denying MLOA's motion to amend answer;

t.   Reviewing voluminous time data and personnel records to determine the dates each Opt-in Plaintiff worked in each relevant position in preparation for proposing stipulations in the pretrial order;[2]

---

[2] Defendants refused to provide this information during discovery and instead insisted Fed. R. Civ. P. 33(d) required Plaintiffs' counsel to spend three weeks reviewing and manually deriving dates from .pdf personnel documents, rather than Defendants using their HR software to quickly generate and produce a report of this basic (yet necessary) information. The data in .pdf files concerning position dates was inconsistent and required significant reconciling. Notably, when Plaintiffs' counsel completed this arduous task and included these dates for stipulation in the proposed Pretrial Order, Defendants refused to stipulate to any of the proposed dates.

u.  Preparing and exchanging multiple drafts of pretrial order, attempting to reach factual and evidentiary stipulations in advance of initial pretrial conference and to shorten trial time;

v.  Following up with MLOA's counsel concerning missing pay and time data and need to receive same for supplementation of expert report;

w.  Reviewing supplemental pay and time data and conferences with MLOA's counsel concerning continued missing data;

x.  Attending initial pre-trial conference and working with MLOA's counsel to make changes requested by Magistrate Judge Angel D. Mitchell;

y.  Analyzing order granting summary judgment to Team Lead Plaintiffs on MLOA's exemption defenses;

z.  Working with Dr. Krueger to complete and serve his supplemental expert report and calculations with supplemental data received from MLOA;

aa. Analyzing and responding to, including related research, MLOA's motion to decertify;

bb. Analyzing and responding to, including related research, MLOA's motion to exclude Plaintiffs' expert economist;

cc. Begin preparing for trial (originally set for February 2021) by:

   •   outlining issues for motions *in limine*;

- begin drafting witness and exhibit lists including continued review of voluminous documents and ESI produced by MLOA to identify representative plaintiffs to testify at trial;

- identifying impeachment evidence for key defense witnesses;

- gathering after-hours e-mails sent by each Loan Officer Opt-in Plaintiff and compare against electronic time punch data to further support claims of off-the-clock and overtime work.

dd. Attending status conference with Judge Holly L. Teeter to discuss implications of Covid and reschedule trial date;

ee. Communications with Plaintiff and Opt-in Plaintiffs regarding case developments and status.

30.  During 2021, DGM performed 527.6 hours of work on this case.  This work included:

a.  Analyzing order denying MLOA's motion to decertify;

b.  Analyzing order denying MLOA's motion to strike Plaintiffs' expert economist;

c.  Collective-wide communications regarding case developments;

d.  Continue preparing for trial by:

- continuing review of 2.5 million+ ESI pages produced by MLOA to identify representative plaintiffs to testify at trial and documentary evidence to support each element of claims;

- working with Plaintiff Charbonneau and select Opt-in Plaintiffs to identify likely trial witnesses from Opt-in collective;

- creating compilation exhibits of Loan Officers' after-hours emails sent when electronic time punch data confirms employee was off the clock;

- researching and identifying issues for motions *in limine*;

- working on witness and exhibit lists;

- compiling impeachment evidence for each key defense witness;

- researching recently approved FLSA jury instructions, verdict directors, and verdict forms to organize presentation of evidence;

- identifying factual and evidentiary issues for proposed stipulations in an effort to shorten trial time.

e.  Drafting mediation statement and providing materials to Magistrate Judge James P. O'Hara, in advance of third mediation;

f.  Preparing for and attending third and final mediation;

g.  Receiving and reviewing 167 separate Rule 68 offers of judgment and comparing each offer with Dr. Krueger's individually calculated damages to evaluate the offer before communicating with clients;

h.  Negotiating a settlement favorable and equitable to all Collective Members;

i.  Extensive communications with Plaintiff and Opt-in Plaintiffs regarding offers of judgment and proposed settlement and material terms;

j.  Creating settlement allocation formula for equitable, pro rata distribution of settlement funds;

k.  Reviewing, revising and finalizing the Settlement Agreement;

l.  Briefing the Settlement Approval Motion, including related research and drafting declarations in support;

m.  Briefing the Fee Approval Motion, including related research and drafting declarations in support.

31.     The following chart reflects, for each year and each attorney, DGM's hours devoted to the litigation tasks detailed in the preceding paragraphs:

| Attorney | 2018 | 2019 | 2020 | 2021 | Total |
|---|---|---|---|---|---|
| Brett Davis | 69.2 | 176.7 | 833.5 | 125.5 | 1204.9 |
| Tracey George | 160.3 | 106.1 | 471.6 | 59.3 | 797.3 |
| Nick Walker | 0[3] | 329.1 | 1087.0 | 342.8 | 1758.9 |
| Totals | 229.5 | 611.9 | 2392.1 | 527.6 | 3761.1 |

32.     Plaintiffs' counsel staffed and managed this case efficiently.  Responsibilities were not duplicated, and much of the work – such as document and ESI review, collective data management, and initial drafts of discovery requests, pleadings, motions and memoranda – was performed by the lowest billing attorney.

33.     All of the time submitted by Plaintiffs' counsel to the Court for compensation is (i) of the kind and character that Plaintiffs' counsel (and other attorneys) would normally bill to paying clients, (ii) time that counsel normally tracks and seeks to be paid for at the conclusion of successful contingency litigation, and (iii) added value to the case and was reasonably necessary to give the FLSA Opt-in Plaintiffs the best possible chance for a favorable outcome.

_____

[3] Nick Walker did not join DGM until April 2019.

18

34.     Moreover, Defendants are represented by competent and aggressive counsel who handle FLSA cases nationally.  Defendants fought hard from the outset, filing multiple motions to dismiss, opposing collective FLSA certification and later seeking decertification, initially refusing to produce complete pay and time data, insisting on individualized written discovery of every Opt-in Plaintiff, protracting ESI production, refusing to concede their failure to pay Team Leads on a salary basis and necessitating Plaintiffs' service of over 1,800 requests for admissions, vehemently opposing Plaintiffs' partial summary judgment on the Team Lead exemption defenses, steadfastly maintaining those purported exemption defenses through the Pretrial Order and conference, moving to exclude Plaintiffs' damages expert, and filing nearly every conceivable motion and making virtually every possible argument before ultimately agreeing to the present settlement.

35.     My standard hourly rate for class and collective action work is $600, my partner Brett Davis has an hourly rate of $675, and my partner Nicholas Walker has an hourly rate of $525. These rates are abundantly reasonable and readily justified by our skill, experience (particularly in the field of complex wage and hour litigation), and excellent reputations in the legal community.

36.      The "blended" hourly rate for Plaintiffs' counsel is reasonable and supports the requested fee award.  Here, taking the fee requested ($2,200,380) and dividing it by the total time in the case (3,760 hours) results in a blended rate of $585/hour for all attorney time.  When accounting for $42,925 in out-of-pocket, unrecoverable expenses (i.e., expert witness fees), the effective blended hourly rate drops to $574/hour (i.e., total fee requested ($2,200,380), less non-recoverable expenses ($42,925), divided by total time (3,760 hours)).

37.     I graduated with honors from the University of Missouri – Columbia in 1997, earning two B.S.B.A. degrees in Finance & Banking and Real Estate.   In 2000, I earned my J.D.

from University of Kansas School of Law, where I was a member of the Kansas Law Review and graduated in the top 10% of my law school class.  I first practiced law at Shook, Hardy & Bacon L.L.P., in Kansas City, Missouri.  Since 2002, I have practiced almost exclusively wage and hour, employment, and class and collective action litigation.  I was trained by class action and employment law attorneys in national defense law firms Bryan Cave, Greenberg Traurig, and Ogletree Deakins.  My former clients included Walmart, AT&T, Honeywell, Tyco, U-Haul, Sara Lee, and Kansas City Power & Light.

38.     In 2011, I changed my focus from defense-side to plaintiff-side litigation.  Since that time, I have served as class counsel in numerous wage and hour cases, successfully achieving over $40 million in overtime settlements for tens of thousands of employees.

39.     I have extensive experience litigating wage and hour class and collective actions both in the Kansas City area and nationwide.  Since 2011, I have been the lead or co-lead lawyer in numerous wage and hour cases filed in state and federal courts, including cases in Kansas, Missouri, Illinois, North Carolina, South Carolina, Colorado, Montana, Oklahoma, Tennessee, Virginia and the Court of Federal Claims. A representative sample of these wage and hour cases include:

> a.  *Thompson, et al. v. CenturyLink Communications, LLC*, D. Colo., 17-cv-1745-WJM-KMT (nationwide FLSA collective action on behalf of Video Engineer II employees allegedly misclassified as exempt from overtime; settlement approved)

b. *Speer, et al v. Cerner Corporation,* W.D. Mo., 14-cv-0204-FJG (nationwide FLSA collective action and Missouri statewide Rule 23 certified class action for late payment and miscalculation of overtime; settlement approved)

c. *Sanchez, et al. v. United States*, Ct. Fed. Cl., 15-cv-1483 (conditionally certified collective action involving misclassification of Supervisory Police Officers employed with the National Geospatial-Intelligence Agency; FLSA settlement accepted)

d. *Jarrett, et al. v. GGNSC Holdings, LLC et al*, W.D. Mo., 12-cv-4105-BP (conditionally certified nation-wide notice class of 85,000+ hourly employees from 322 nursing homes; FLSA settlement approved)

e. *McClean et al. v. Health Systems, Inc. et al*, W.D. Mo., 11-cv-3037-DGK (certified FLSA collective action and Rule 23 class action on behalf of 28,000+ hourly nursing home employees working in 60+ facilities throughout Missouri; Rule 23 & FLSA settlement approved)

f. *Hamilton et al. v. NHS Management, LLC et al.*, W.D. Mo., 12-cv-5044-BCW (certified FLSA collective action on behalf of hourly employees working in nursing homes in four states; settlement approved)

g. *Pond v. Primary Capital Advisors LC*, W.D.N.C., 11-cv-156-RJC-DSC (FLSA action on behalf of mortgage loan originators; settlement accepted)

h. *Pond v. Graystone Tower Bank*, D.S.C., 11-cv-92-CMC (FLSA collective action brought on behalf of current and former mortgage loan officers; confidential settlement)

i. *Pick v. DAS Acquisition Company LLC*, E.D. Mo., 13-cv-51-JAR (certified FLSA action on behalf of mortgage loan processors; settlement approved)

j. *Bjorn et al. v. Jerry Erwin Associates, Inc*. et al, D. Kan., 13-cv-2419-JWL-JPO (FLSA collective and Rule 23 class action on behalf of nursing home employees; confidential settlement)

k. *Cameron v. Eldercare Management Services, Inc. et al*., W.D. Mo., 10-cv-4219-NKL, (FLSA collective action on behalf of nursing home employees; confidential settlement)

l. *Colbert et al. v. Monarch Transportation, LLC*, et al, D. Kan., 13-cv-4126-JTM-JPO (FLSA collective action on behalf of transportation aides and nursing home employees in five states; confidential settlement)

m. *Williams v. DH Pace et al*., W.D. Mo., 14-cv-161-HFS (FLSA collective action on behalf of account coordinators; settlement approved)

n. *Deal v. NPC International, Inc. et al*., D. Kan., 15-cv-9206-JAR (FLSA collective action brought on behalf of fast food employees required to perform off-the-clock work; confidential settlement)

o. *Oliver et al. v. Oklahoma Nursing Homes, Inc. et al*., N.D. Okla. (FLSA conditionally certified collective action brought on behalf of hourly nursing home employees across Oklahoma; settlement accepted)

p. *Grady et al. v. CenturyLink Communications, LLC*, D. Mont., 15-cv-0085-BMM (nationwide, conditionally certified FLSA collective action on behalf of

Engineer I & II employees allegedly misclassified as exempt from overtime; two settlements approved)

q. *Kirkpatrick v. Cardinal Innovations Healthcare Sols*., M.D.N.C., 1:16-CV-01088-TDS (conditionally certified FLSA collective action brought on behalf of I/DD Care Coordinators misclassified as exempt from overtime and working throughout the State of North Carolina; settlement approved)

r. *French v. Midwest Management, Inc.,* D. Kan., 2:14-cv-02625-JAR-GEB (FLSA collective action on behalf of hundreds of hourly nursing home employees; confidential settlement approved)

s. *Twohill v. First Acceptance Corp..*, M.D Tenn. 3:17-cv-00284-JSF-WLC (FLSA collective action brought on behalf of 138 insurance agents; settlement approved)

t. *Terri Powell v. IKEA Industry Danville, LLC*, E.D. Vir. 4:18-cv-0058-PMS-JPJ (FLSA collective action brought on behalf of team captains; settlement approved)

u. *Seiffert v. Qwest Corporation et al.*, D. Mont., 4:18-cv-00070-BMM (conditionally certified, FLSA nation-wide collective action on behalf of Engineer Is and IIs misclassified as exempt from overtime; settlement approved)

40.    In addition to class and collective wage and hour litigation, I handle complex, multi-district mass tort litigation.  In February 2020, co-counsel and I tried and secured a $265 million jury verdict in *Bader Farms, Inc. v. Monsanto Company et al.*,1:16-cv-00299-SNLJ (E.D. Mo.),

the bellwether trial in *In re: Dicamba Herbicides Litigation*, 1:18-md-2820-SNLJ, also pending in United States District Court for the Eastern District of Missouri.  This was Missouri's largest jury verdict last year.   That verdict allowed MDL plaintiffs to separately secure a $400 million dollar class settlement on behalf of thousands of soybean farmers, including DGM's clients, across the United States—also Missouri's largest settlement in 2020.

41.     I am recognized as a Missouri and Kansas Super Lawyer in the areas of class and mass-tort litigation.

42.     Because DGM litigates across the country, we routinely monitor the prevailing rates for experienced litigators in various forums nationwide.

43.     As already detailed, this case has been hotly contested, complex and protracted. DGM spent over 3,760 hours prosecuting the case (after reduction in the exercise of billing judgment) for nearly three and half years.

44.     Moreover, the work on this case is not done, and we will spend many hours – not included in the fee request – further briefing the present motion, overseeing settlement administration and the payment process, and communicating with Plaintiff and the Opt-in Plaintiffs.

45.     This litigation involved a myriad of legal issues that Defendants argued throughout the case, including; (i) the contours and scope of the "white collar" FLSA exemptions and regulations, and whether Defendants satisfied the salary and/or fee basis test to invoke these exemptions;  (ii) whether the 7(i) "retail establishment" exemption defense – which Defendants belatedly sought to assert – applied to the collective action Plaintiffs in light of the DOL's withdrawal of certain interpretive guidance during the pendency of this lawsuit;  (iii) the

application of the *de minimus* defense; (iii) the potential impact of MLOA's prior settlement with the DOL; and (iv) the proper threshold and standards for representative evidence in the trial of an FLSA collective action—among others.

46.     In my experience, FLSA collective cases require more than the average skill set needed to litigate a single-plaintiff case.

47.     As addressed previously, this case required an immense, continuous time commitment and will require still more work.

48.     I estimate that, in the 3,760 hours and nearly three and a half years my firm has litigated this case, DGM could have accepted 3 to 4 wage-and-hour cases of typical size and complexity, without incurring the exceptional out-of-pocket expenses associated with this case.

49.     DGM typically only accepts contingency fee cases, and the rates charged in this case are customary to and typical of our rates charged in other cases.  In this case, Plaintiffs agreed to pay DGM a contingency fee equal to the greater of (a) Court-awarded attorneys' fees, or (b) 35% of the total judgment or settlement amount, after adding in Court-awarded attorneys' fees and expenses.  Here, Plaintiffs' $2,200,353 fee request happens to be within a few thousand dollars of 35% of the total settlement amount after adding in the requested attorneys' fees and expenses (e.g., ($3,900,353 + $2,200,353 + $131,128) * .35 = $2,181,309).

50.     DGM undertook this collective action representation on a fully contingent basis and would recover none of its out-of-pocket expenses or time billed unless the case succeeded.  In this case, DGM invested over three years and more than $173,000 (including unreimbursed expert witness fees) with the chance of never recovering a dime.

51.     This case did not present any unusually compressed time periods, but it did involve an enormous time commitment over many years, which inevitably imposed personal and professional constraints on Plaintiffs' counsel's time.

52.     This settlement provides significant, certain and imminent relief to the collective action Plaintiffs, with an average settlement payment of over $23,000 per Plaintiff and over $264 per eligible workweek.

53.     During the course of this litigation, Opt-in Plaintiffs reported MLOA began paying Team Leads a guaranteed salary and it also implemented a mobile app which allowed loan producers to report – and be paid for – time worked outside the office.

54.     In my experience, few plaintiffs' firms are even equipped to handle a case of this magnitude and/or would elect not to undertake the representation because it would preclude the acceptance of several other cases requiring less time and substantially less than the $173,000+ in out-of-pocket expenses DGM necessarily incurred here.

55.     DGM spent many hours with Plaintiff discussing the claims in this case, attending three separate mediations, and preparing and producing him for deposition.  Plaintiffs' counsel also spent substantial time with several other collective action Plaintiffs, discussing the claims and factual issues in this case and preparing and producing them for deposition. Moreover, Plaintiffs' counsel routinely communicated throughout this case with numerous collective action Plaintiffs who often inquire about status updates and other case issues.  Our relationship with the collective action Plaintiffs has been an extensive and significant responsibility over several years.  However, Plaintiffs' counsel consider this part of their normal responsibilities of class and collective action work, and there was nothing out of the ordinary about their client relationships in this case.

I declare under penalty of perjury pursuant to 28 U.S.C. § 1746 that the foregoing is true and correct to the best of my knowledge.

Executed on this 12th day of May, 2021.

_/s/ Tracey F. George_____

Tracey F. George