IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

BEAU CHARBONNEAU, on behalf of himself and others similarly situated,

Plaintiff,

v.

Case No. 2:18-cv-02062-HLT

MORTGAGE LENDERS OF AMERICA L.L.C., et al.,

Defendants.

## MEMORANDUM AND ORDER

This is a Fair Labor Standards Act ("FLSA") case that the parties settled after three years of contentious litigation. The parties agree in the settlement agreement that Defendants should pay Plaintiffs' reasonable attorneys' fees and costs, but they disagree on that amount. Plaintiffs thus move for an award of about $2.2 million in attorneys' fees and about $131,000 in costs. Doc. 218. Defendants contend the proper amount is less than $1.0 million in attorneys' fees and about $30,000 in costs.

The Court recognizes that this was a long and hard-fought lawsuit that justifies a substantial fee award. But the Court finds that Plaintiffs' requested attorneys' fees are not reasonable. The rates are excessive, and the hours billed do not demonstrate billing judgment. But Plaintiffs' requested costs are appropriate and reasonable. Thus, after a careful and detailed review, the Court exercises its discretion and awards $1,298,006.13 in attorneys' fees and $131,128.15 in costs and expenses for a total award of **$1,429,134.28**.[1]

---

[1] The Court also grants Defendants' motion for leave to file sur-reply. Doc. 228. The Court considered the sur-reply in resolving the motion.

**I.      BACKGROUND**

This case has been heavily litigated. Plaintiff Beau Charbonneau filed this lawsuit in February 2018 against Defendant Mortgage Lenders of America, LLC ("MLOA") alleging that: (1) he and other Team Leads were unlawfully classified as FLSA "exempt" and unlawfully denied overtime pay, and (2) he and other Loan Officers were unlawfully denied overtime pay for off-the-clock work. He also alleged wage and contract claims under Kansas law. Throughout the lawsuit Davis George Mook, LLC ("DGM") represented Plaintiffs and staffed the case with partners Brett Davis, Tracey George, and Nick Walker.[2]

There was some initial motion practice. The then-assigned judge denied MLOA's partial motion to dismiss and granted Charbonneau's contested motion to conditionally certify two FLSA collectives. Charbonneau then used a third-party administrator to send the notices to approximately 450 employees. Twenty-five employees consented to join the Team Lead collective and an additional 142 employees consented to join the Loan Officer collective.[3] Thus, there were 167 total plaintiffs.

The parties then started discovery. They initially disputed the scope of discovery. MLOA requested discovery from all Plaintiffs while Plaintiffs proposed representative discovery. The magistrate judge authorized written discovery to all Plaintiffs but on a smaller scale than requested by MLOA. The parties then engaged in written discovery and depositions. The following facts about discovery are notable.

- Plaintiffs added Bradley Ives and Philip Kneibert as defendants based on MLOA's discovery responses.

---

[2]   Walker started at DGM in April 2019.

[3]   Initially 145 employees consented to join the Loan Officer collective but three withdrew consent during the litigation.

- Plaintiffs served about 1,800 requests for admission targeting Defendants' affirmative defenses.

- Plaintiffs received over 432,000 documents (or 2.5 million pages) after the parties negotiated electronic discovery search terms, which required Plaintiffs to use a hosting service.

- Plaintiffs' counsel responded to individualized interrogatories and requests for production and reviewed time, pay, and personnel records and documents for about 160 employees.

- Plaintiffs retained and disclosed an expert economist.

- Plaintiffs took the deposition of seven defense witnesses and a Rule 30(b)(6) deposition.

- Defendants took ten depositions (Charbonneau, eight other plaintiffs, and an expert economist).

The parties also engaged in more motion practice. This motion practice included Charbonneau's motion for Rule 23 class certification for the state-law claims (denied as moot), Defendants' motion for summary judgment on the state-law claims (granted), Plaintiffs' partial summary-judgment motion (granted), Defendants' motion to amend answer (denied), Defendants' motion to decertify the FLSA claims (denied), and Defendants' motion to exclude Plaintiffs' expert (denied). The Court resolved the motions, and the parties prepared for and attended the final pretrial conference and later participated in a status conference with the undersigned.[4]

The Court did several things at the status conference. It moved trial to June 2021 and ordered mediation with a magistrate judge because the parties had previously engaged in two failed rounds with a private mediator. The parties participated in a mediation with Chief Magistrate Judge O'Hara in March 2021 and made significant settlement progress. They later settled, and the Court approved the settlement in June 2021. The settlement agreement states that Defendants will pay a collective gross total of over $3.9 million, which includes payments to all 167 plaintiffs and

---

[4] This case was reassigned to the undersigned in February 2020.

explains that the Court will determine Plaintiffs' attorneys' fees and costs. Thus, the sole remaining issue is attorneys' fees and costs.

## II. ANALYSIS

The Court must determine the amount of attorneys' fees and the amount of costs. The Court starts with the amount of fees and then turns to costs.

### A. Attorneys' Fees

The FLSA states that a court "shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant and the costs of the action." 29 U.S.C § 216(b). The amount of attorneys' fees is determined by the lodestar, which is the product of the reasonable hourly rate and the number of hours the plaintiff's counsel reasonably spent on the litigation.[5] *Case v. Unified Sch. Dist. No. 233*, 157 F.3d 1243, 1249 (10th Cir. 1998). The party seeking fees has the burden of establishing entitlement to them. *Id.*

#### 1. Reasonable Hourly Rate

The Court determines a reasonable hourly rate by deciding "what lawyers of comparable skill and experience practicing in the area in which the litigation occurs would charge for their time." *Id.* at 1256 (internal quotation omitted).

Plaintiffs seek the following rates for their counsel: $675/hour for Davis, $600/hour for George, and $525/hour for Walker. These rates yield a blended rate of $585/hour. Plaintiffs principally contend these rates are reasonable because their counsel are highly experienced and litigate complex wage-and-hour cases throughout the country, their counsel took this case on a contingency fee basis, and these rates are like those charged by firms with comparable expertise

---

[5] Defendants suggest that this is a common-fund settlement and should limit recovery to a percentage of the benefit. The Court disagrees. This is not a common-fund settlement. The parties settled the substantive component and left the determination of fees and costs to the Court. The Court is cognizant of the result obtained in this case but will determine the appropriate fees based on the lodestar method.

4

in class and collective actions and approved by courts in the Kansas City metropolitan area. Plaintiffs cite several cases and offer the declarations of Davis, George, and Walker to support these rates. They also offer the declarations of three other attorneys in the area (Rowdy Meeks, George Hanson, and Brendan Donelon), the 2011 declaration of Sara Anthony filed in a different case, and the 2020 edition of the Corporate Counsel Desk Book.

Defendants contend the requested rates are unreasonable. They argue that Plaintiffs failed to provide evidence of the prevailing market rate, which is their burden. They also contend the prevailing market rates are lower. Defendants note that the rates for their counsel have ranged from $400 to $485 during this litigation even though their counsel respectively have more experience. Defendants cites several cases, submit the declarations of their attorneys Chris Pace[6] and Justin Dean,[7] and offer the declaration of another attorney in the area (Elaine Koch). Defendants suggest that reasonable rates are $525-$550/hour for Davis, $475-$500/hour for George, and $425-$450/hour for Walker.

The Court has carefully reviewed the submitted evidence and finds that Plaintiffs' requested rates are unreasonable. The Court will discuss each rate individually but initially offers four overarching observations. First, many of the cases cited by the parties are distinguishable and

---

[6] Pace graduated from the University of Kansas School of Law in 1995. He initially worked at two different law firms and then took a position with Sprint's law department. He joined Ogletree Deakins in December 2008 and has focused exclusively on defending employment law matters focused primarily on wage-and-hour class and collective actions. He is a Shareholder with his firm and has served as lead, co-lead, or as his firm's strategic advisor in more than 70 class or collective action matters in the last 10 years alone. Since inception of this case, his standard billing rate has ranged from $445/hour to $485/hour.

[7] Dean graduated from the University of Missouri-Columbia School of Law in 1999 where he served as the Editor-in-Chief of the Missouri Law Review. He practiced at a firm and then clerked for a federal judge. After clerking, he returned to practice at a firm and then in-house at the Federal Reserve Bank handling all employment law matters. He joined Ogletree Deakins in March 2011 and is now a Shareholder. He exclusively focuses on defending employment cases of various types. Since March 2011, he has handled at least 25 class and collective action cases. His rates during this case have ranged from $400/hour to $445/hour.

not probative of an appropriate rate for these attorneys or this case.[8] Second, Meeks, Hanson, and Donelon are not disinterested because they represent plaintiffs in wage-and-hour litigation and have an interest in courts approving higher hourly rates.[9] Conversely, Koch is a defense attorney who has an interest in courts approving lower hourly rates.[10] Third, the Desk Book has limited probative value because the rates are collected from a variety of lawsuits, do not detail the attorney's qualifications, reflect the attorney's "standard or customary rates, rather than the rate the court applied or discounted rates offered to a particular client," and expressly recognizes that the "rates can vary according to the case or client, so one listed rate for an attorney might not apply in other cases." Doc. 218-8 at 3. Fourth, Davis, George, and Walker all state their customary rate in the declarations but do not state that clients have actually or recently paid these rates.

Turning to each attorney, Plaintiffs seek a rate of $675/hour for Davis. Davis is an attorney with 28-years litigation experience who enjoys a good reputation in the legal community. He graduated with honors in 1992 from the University of Missouri – Kansas City School of Law. He initially practiced defense work but shifted to plaintiff work in 1995. In 2014, he founded DGM with George. He exclusively represents plaintiffs with an emphasis on wage-and-hour class and

---

[8]  *See, e.g.*, *Hoffman v. Poulsen Pizza LLC*, No. 15-2640-DDC at Docs. 71-1 and 73 (D. Kan. 2017) (involving different attorneys and a settlement agreement that distributes 1/3 of the settlement amount to the plaintiffs' counsel as attorney's fees); *Garcia v. Tyson Foods, Inc.*, 2012 WL 5985561 (D. Kan. 2012) (involving different attorneys and a blended rate of $302.29); *Bruner v. Sprint/United Mgmt. Co.*, 2009 WL 2058762 (D. Kan. 2009) (involving different attorneys, a settlement agreement, a blended rate reduction from $1,487.54/hour to $590.91/hour, and a statement that the "award is generous, given the nature of the litigation and the fact that billing rates in this region, even for the most experienced attorneys do not typically exceed this hourly rate").

[9]  *See, e.g.*, Doc. 218-4 at ¶ 6 (noting that Meeks litigates "high value collective and class action wage and hour cases on a fully contingent basis"); Doc. 218-5 at ¶ 2 (explaining that Hanson has "focused my practice on representing plaintiffs in wage and hour class and collective actions and complex commercial litigation"); Doc. 218-6 at 1, 8-10 (noting that Donelon's practice for the last twelve years has been devoted to wage and hour class and collective claims and outlining representative cases where he served as class counsel).

[10] *See, e.g.*, Doc. 222-3 at 1 (explaining that Koch has "practiced law for over 35 years and [has] experience in the defense of labor and employment matters, including numerous wage and hour class/collective action cases, in the Kansas City area primarily").

collective actions and other complex litigation. Interestingly, his affidavit does not identify any other representative FLSA cases, so his specific experience with FLSA litigation is unclear.

Plaintiffs seek a rate of $600/hour for George. George co-founded DGM with Davis and graduated from the University of Kansas School of Law in 2000. She was a member of the Kansas Law Review and graduated in the top 10% of her class. She initially practiced defense work for a law firm but changed her focus to plaintiff work in 2011. George has served as lead or co-lead counsel in numerous wage and hour cases and lists over 20 representative cases since 2011. She also handles multi-district litigation and secured a $265 million jury verdict last year.

Lastly, Plaintiffs seek $525/hour for Walker. Walker is a partner at DGM and graduated from the University of Missouri Law School in 2004 where he was a member and editor of the Missouri Law Review. He began working at Ogletree Deakins in 2006 and was elected partner in 2012. He left that firm the following year and worked at other law firms. While a partner at these firms, he was responsible for leading the defense in both high profile/high damage single-plaintiff lawsuits and high-stake complex multi-plaintiff litigation. He joined DGM in April 2019 and over the next two years handled and resolved three other collective actions.

The Court carefully considered the evidence and is cognizant of the contingency-fee nature of the representation (which injected some risk and delayed potential payment for several years),[11] the results achieved, and the time and labor required to litigate this protracted case. The Court likewise does not question the reputation or skill of Davis, George, and Walker. But the Court finds that Plaintiffs have not justified the requested rates. The Court instead finds that these lawyers

---

[11] The Court acknowledges that the contingent-fee nature should be reflected in the form of a higher hourly rate. *See, e.g.*, *City of Burlington v. Dague*, 505 U.S. 557, 563-67 (1992). But the Court also notes the comments about the risk associated with FLSA litigation in *Bruner*. *See Bruner*, 2009 WL 2058762, at *7 ("Very few FLSA collective actions are dismissed on their merits. Almost none proceed to trial. These numbers suggest that as a general rule . . . FLSA collective actions have substantial settlement value and relatively low risk of complete failure.").

would receive the following rates if selling their services in the market: $600/hour for Davis, $550/hour for George, and $475/hour for Walker. The Court finds these rates to be on the high-end of a reasonable range even though lower than the requested rates.

## 2. Reasonable Number of Hours

The Court next determines the hours reasonably spent by counsel litigating this case. *Case*, 157 F.3d at 1250. Plaintiffs have the burden of proving hours by "submitting meticulous, contemporaneous time records that reveal, for each lawyer for whom fees are sought, all hours for which compensation is requested and how those hours were allotted to specific tasks." *Id.* Once the Court has adequate records before it, the Court "must then ensure that the winning attorneys have exercised billing judgment." *Id.* (internal quotation omitted). After examining billing judgment, the Court "should look at the hours expended on each task to determine if they are reasonable." *Id.*

### a. Sufficient Records

The initial issue for determining reasonable hours is whether the party seeking fees submitted sufficient records. Plaintiffs' opening motion is supported by only generalized affidavits outlining categories of tasks completed by DGM. *See, e.g.*, Doc. 218-1 at 7-18 (stating that "DGM performed" work and listing tasks like "Drafting the initial complaint" and "Analyzing pay, time, personnel, and email information for each Opt-in deponent in preparation for their depositions" and "Analyzing and responding to, including related research, MLOA's motion for partial summary judgment"). The affidavits do not attribute a specific amount of time to specific tasks, nor do they expressly state who completed each task. *See generally* Doc. 218-1 at 7-18 and Doc. 218-2 at 4-15. They conclude with the assertion that counsel staffed and managed this case efficiently and that all 3,761 hours are reasonable and necessary (i.e., 1,204.9 hours for Davis,

8

797.3 hours for George, and 1,758.9 hours for Walker). Not surprisingly, Defendants challenge this approach as speculative and contend a large reduction is reasonably required. Plaintiffs initially attempt to defend the affidavit-only approach in the reply by noting the local rules and privilege and trial-strategy concerns but eventually submitted their detailed billing records for in camera review.

The Court cautions Plaintiffs that their initial approach is quite risky.[12] It is their job to support their requested fees (not the Court's job to ask for evidence to support their request), and the affidavits fall far short. The Court considers the time records in resolving the fee motion even though they are submitted with the reply because they provide a more thorough understanding of this case. The Court is cognizant that Defendants submitted their opposition without the benefit of these records, but the Court also notes that Defendants never moved to compel production of the time records as allowed by D. Kan. Rule 54.2(f) and did not raise the late submission of the time records as the basis for filing their sur-reply.[13] Thus, the Court exercises its discretion to consider the time records and concludes they are sufficient. With these time records, the Court has an adequate time record before it.

### b. Billing Judgment

The Court next determines whether Plaintiffs' counsel exercised billing judgment. Billing judgment involves "winnowing the hours actually expended down to the hours reasonably expended." *Case*, 157 F.3d at 1250. Stated differently, the Court considers whether the hours requested would be properly billed to counsel's client. *Id.*

---

[12] The Court notes that the cases from this District that Plaintiffs rely on to support this approach involve non-contested fee applications.

[13] Had they made such requests, the Court very likely would have granted it.

Plaintiffs principally contend their requested hours represent billing judgment because they removed time entries for non-essential or duplicative tasks (e.g., not billing for Walker's mediation attendance, not billing for a second attorney's attendance at certain depositions) and because much of the work was performed by the lower billing attorney (Walker). Defendants counter that Plaintiffs seek to recover for duplicative work, excessive time spent on tasks (although recognizing that the lack of records makes it difficult for them to make this argument with precision), inefficient use of time, and time spent performing tasks that could have been performed by less experienced professionals.

The Court recognizes that Plaintiffs exercised some billing judgment by removing certain entries and having Walker perform the most work. And some of Defendants' arguments lack merit.[14] But the Court remains very concerned about the unreasonable allocation of work in this case. Plaintiffs' counsel staffed this case with three partners. All the work performed in this case was performed by partners at partner rates. This roughly includes over 450 hours of document review by Walker,[15] over 90 hours for preparation of requests for admission by Walker, and over 350 hours of motion practice by Davis.[16] The request also includes over 330 hours to oppose the decertification motion (70 hours by Davis, 75 hours by George, and 185 hours by Walker).

The Court recognizes that DGM is at liberty to decide how to staff cases and utilize attorney time. DGM decided to staff this case with three partners who at times performed tasks that senior

---

[14] As an example, Defendants contend it was unreasonable to have more than one attorney at some of the key depositions and conferences. The Court disagrees. It is reasonable for two attorneys to attend the key depositions in this case and to appear at conferences with the Court.

[15] The time entries making up this number generally include about 25 hours for reviewing 20,000+ pages, 40 hours for reviewing 2.5 million pages, 22 hours for reviewing non-email production, 50 hours for reviewing emails for plaintiffs who were being deposed, 50 hours for reviewing 50,000+ documents, 29 hours for a meticulous review of personnel files and pay and time data, 100 hours for reviewing emails to determine witnesses for trial, and 140 hours for a secondary review of documents for witnesses for trial.

[16] A few examples include 85 hours preparing most of the opposition to the partial motion for summary judgment and 70 hours preparing a portion the opposition to the motion to decertify.

counsel, associate attorneys, paralegals, and non-professional staff might have otherwise performed. This decision is its right. But that does not render the corresponding billing reasonable. This is particularly true when the fee request seeks thousands of dollars for partners to perform mundane and elementary tasks like document review, discovery drafting, brief drafting, and legal research.[17] *See, e.g.*, *Beastie Boys v. Monster Energy Co.*, 112 F. Supp. 3d 31, 51 (S.D.N.Y. 2015) (explaining that "lopsidedly partner-heavy bills are quite unusual in the context of litigation work" because it "is common, particularly with respect to discovery and other pretrial tasks, that associates shoulder much of the work, under the active supervision of partners, and that partners take lead roles as to projects for which their expertise adds value"); *Gilead Sciences, Inc. v. Merck & Co., Inc.*, 2017 WL 3007071, at *7 (N.D. Cal. 2017) (reducing 40% of the hours a partner billed for document review because "[w]hile it is desirable for a senior attorney to draft document review protocols and to supervise document review, over 500 hours billed by a partner in this document review category is excessive"); *Guo v. Tommy's Sushi, Inc.*, 2016 WL 452319, at *6 (S.D.N.Y. 2016) (citing cases and reducing hours billed by a partner by 40% in part because his timesheets reflected not only partner-level work but also associate and even paralegal work); *Lane Crawford LLC v. Kelex Trading, Inc.*, 2013 WL 6481354, at *9-10 (S.D.N.Y. 2013) (reducing fee award by 15% because "[m]any of the entries billed at $350 per hour reflect work that should have been billed at a lower associate or paralegal rate"); *Microsoft Corp. v. Computer Care Ctr.*, 2008 WL 4179653, at *15-16 (E.D.N.Y. 2008) (reducing award based on unreasonable allocation of litigation tasks because in the first year of the case the litigation was "handled virtually single-handedly" by a partner who "performed nearly all the routine daily litigation tasks"); *Tlacoapa v.*

---

[17] These tasks even include partner rates for reviewing and filing consents to join, filing the third amended complaint, and researching and drafting the standard of review for a partial summary-judgment motion.

*Carregal*, 386 F. Supp. 2d 362, 372 (S.D.N.Y. 2005) (citing cases and applying a 35% reduction in hours billed where senior attorney performed tasks that could have been more economically performed by low-level associate).

The unreasonable allocation of work in this case results in a request that is disproportionate to work performed. To be clear, the Court does not take issue with the overall number of hours worked for the reasons explained below. Rather, it takes issue with all hours worked being billed at a partner rate. It is reasonable to spend over 95 hours drafting about 1,800 requests for admission on the specific facts of this case. But it is <u>not</u> reasonable for <u>all</u> 95 hours to be billed at the partner rate.[18] The Court easily finds that counsel would not bill these hours at these rates to a paying client and, therefore, it is unreasonable and a lack of billing judgment to expect Defendants to pay these amounts. To account for this lack of billing judgment, the Court reduces the fee request by 35% from amount calculated using the new rates.

### c. Hours Expended

The final step for calculating the lodestar requires the Court to look at the hours expended on each task to determine if they are reasonable. *Case*, 157 F.3d at 1250. Several arguments by the parties about billing judgment overlap with arguments on the reasonableness of hours expended (e.g., duplicative work, work capable of being performed by other professional staff). But Plaintiffs also contend their requested hours are reasonable given the aggressive tactics taken by defense counsel, the volume of discovery, the number of plaintiffs, and the extensive motion practice. They note the 220 docket entries and the protracted nature of the litigation. Defendants respond that the hours remain unreasonable because Plaintiffs are not entitled to fees for the state-law claims

---

[18] By way of comparison, over 60% of the hours billed by defense counsel stemmed from hours billed by non-shareholder attorneys or professional staff. Defense counsel billed about 2,623 hours total, which includes about 1,674 non-shareholder attorney or professional staff hours (with paralegal hours accounting for about 700 of those).

dismissed at summary judgment or to fees spent preparing for trial after Defendants sent offers of judgment for each plaintiff.

The Court disagrees with Defendants' specific arguments. The state-law claims were related to the successful FLSA claims and were not distinct from those claims in all respects. The overarching issues throughout the litigation were whether Plaintiffs were paid for all hours worked and, if not, how many hours went unpaid and at what rate. There are nuances to each claim and theory, but the overall evidence (e.g., pay records, time records, and agreements) and litigation issues stem from related facts about the failure to pay for compensable time. The Court finds that fees attributed to the state-law claims are reasonably requested. *See Garcia v. Tyson Foods, Inc.*, 770 F.3d 1300, 1310-11 (10th Cir. 2014) (finding that the district court had discretion to view the FLSA and state claims as interrelated because it could reasonably conclude that the similarities justified an award for the time on the state-law claims even though the claims had some factual and legal differences).

The Court also finds Plaintiffs do not seek fees for unreasonable trial preparation time after Defendants made the offers of judgment. Walker spent considerable time reviewing documents and identifying representative witnesses for trial between December 2020 and March 8, 2021.[19] But those time entries ended after March 8, 2021, and the remaining entries principally focus on the offers of judgment, communications with Plaintiffs, the settlement documents, and the instant motion.

The Court now turns to the overall reasonableness of the requested hours. Plaintiffs request fees for many hours. And the Court would only expect to see this number of hours in a rare, protracted, document intense, and heavily litigated case. But this case appears to be such a case. It

---

[19] Trial was originally set for February 2021 but moved to June 2021 for several reasons.

spanned three years. It involved individualized discovery for 167 Plaintiffs at Defendants' insistence. And it was aggressively defended and very heavily litigated with multiple claims, several defenses, and numerous motions. *See City of Riverside v. Rivera*, 477 U.S. 561, 580 n.11 (1986) (explaining that "the defendant cannot litigate tenaciously and then be heard to complain about the time necessarily spent by the plaintiff in response"). Absent the billing-judgment reduction above, the Court may have had some concerns with the overall number of hours billed. But the Court finds that the total number of hours billed is reasonable had the work been dispersed between multiple professionals.[20] Thus, the Court calculates the lodestar as follows:

| **Attorney** | **Total Hours** | **Rate** | **Initial Fee** | **Fee with 35% Reduction** |
| --- | --- | --- | --- | --- |
| Davis | 1204.9 | $600/hour | $722,940.00 | $469,911.00 |
| George | 797.3 | $550/hour | $438,515.00 | $285,034.75 |
| Walker | 1758.9 | $475/hour | $835,477.50 | $543,060.38 |
| Total | | | | **$1,298,006.13** |

The Court calculates the lodestar as $1,298,006.13. The parties finally argue that an adjustment to the lodestar is appropriate based on the *Johnson* factors. *See Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974).[21] The Court disagrees. It either considered those factors in determining the lodestar or finds that the factors do not require an adjustment. The Court already accounted for the time and labor required in this protracted case, the multi-year time commitment, the contingent-fee basis for representation, the reputation of counsel, the length of relationship, and counsel's skill. The Court recognizes that the time commitment for this case

---

[20] Stated differently, the Court questions whether it is reasonable for three partners to bill over 3,700 hours to this case. But the Court finds it reasonable that a case staffed with partners, non-partner attorneys, and other professional staff would require this number of hours when inefficiencies and lower-skill level are considered. That is why the Court reduces the requested fee based on billing judgment and not for an unreasonable number of hours.

[21] The Court questions whether these factors more directly relate to the reasonable hourly rate, but both parties discuss them as factors for adjusting upward or downward the lodestar. So the Court considers them in that capacity.

likely precluded other work but not to an unusual or excessive degree warranting an adjustment to the lodestar. Indeed, George was able to litigate and take to trial a multidistrict lawsuit at the same time. This case did not involve complex or difficult questions. Rather it stemmed from relatively straightforward FLSA law. Counsel did secure a favorable settlement, but not one justifying a modification to the lodestar. And this case does not appear to be particularly undesirable. It did take time and upfront expense to litigate this case, but the Court accounted for that issue and the inherent risk in setting the hourly rates. Plaintiffs' final argument about customary fees ties into its contingency fee arrangement with counsel. The Court notes the uncanny relationship between Plaintiffs' fee request in this motion and the otherwise-due contingency fee[22] but finds that an adjustment is not necessary based on this factor.

The Court has carefully considered the record and commends Plaintiffs and counsel for their success in this case. They undoubtedly secured a victory for their clients after a hard-fought case. But the Court is charged with awarding a reasonable fee. And the Court finds that a reasonable fee based on the record, the arguments, and the law is $1,298,006.13.

**B.    Costs and Expenses**

Plaintiffs also seek their costs and expenses in the amount of $131,128.15. Plaintiffs explain that this amount principally stems from the costs incurred to host and review the 2.5 million pages of ESI produced in this case ($101,586.73). They also note that they do not include the expenses incurred for the expert damage calculations ($42,925) or for meals and other incidentals such as Westlaw and internal copying. Plaintiffs again support this request with conclusory affidavits in the opening motion and then add documentary support with the reply to counter

---

[22]    Plaintiffs note in their motion that their "$2,200,353 fee request happens to be within a few thousand dollars of 35% of the total settlement amount after adding in the requested attorneys' fees and expenses."

Defendants' principal argument that the request lacks support. The Court again cautions Plaintiffs about this approach. Defendants did not move to compel these documents or seek leave to file their sur-reply on this basis. And the documents supply a much more thorough basis for review, so the Court considers them.

The FLSA and Fed. R. Civ. P. 54 authorize the recovery of costs. Recoverable costs are defined in 28 U.S.C. § 1920. This statute outlines various taxable costs such as fees of the clerk, fees for printed and electronically recorded transcripts, and fees and disbursements for printing and witnesses. *Id.* The main dispute between the parties is whether § 1920 includes ESI hosting costs. Plaintiffs contend this cost is covered by the statute, has been taxed by courts in other FLSA cases, and is one customarily billed to a client. Defendants counter that "this type of expense is not included in the list of recoverable costs" in § 1920. Doc. 222 at 33-34.

Neither party does an exceptional job briefing this issue. They do not analyze the statutory language or provide detailed argument or analysis. And the Court is not inclined to undertake this rigorous analysis when the parties did not see fit to do so. Plaintiffs at least cite some cases indicating that this type of cost is recoverable in an FLSA case. In contrast, Defendants fail to cite a single case. On this record, the Court concludes that Plaintiffs' requested cost for ESI hosting is taxable, is reasonable, and is supported by the documentary evidence. The Court thus awards $131,128.15 in costs and expenses.

## III.   CONCLUSION

The Court has carefully reviewed the record and law. The Court finds Plaintiffs are entitled to $1,298,006.13 in attorneys' fees and $131,128.15 in costs and expenses for a total award of **$1,429,134.28**.

THE COURT THEREFORE ORDERS Plaintiffs' motion (Doc. 218) is GRANTED IN PART. The Court awards $1,298,006.13 in attorneys' fees and $131,128.15 in costs and expenses. The Court DENIES Plaintiffs' request for a hearing as the Court finds the record is sufficiently developed and a hearing would not meaningfully advance resolution.

THE COURT FURTHER ORDERS that Defendants' motion for leave (Doc. 228) is GRANTED. The Court considered the sur-reply is resolving Plaintiffs' motion.

IT IS SO ORDERED.

Dated: October 13, 2021              /s/ *Holly L. Teeter*
                                     HOLLY L. TEETER
                                     UNITED STATES DISTRICT JUDGE